UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEXPOINT STRATEGIC OPPORTUNITIES FUND,

               Plaintiff,

       -against-

ACIS CAPITAL MANAGEMENT, L.P., U.S.
BANK, N.A., JOSHUA N. TERRY, AND
BRIGADE CAPITAL MANAGEMENT, L.P.,

             Defendants,

       -and-

HIGHLAND CLO FUNDING LTD.

           Proposed Intervenor-Defendant.

Case No. 21-cv-04384

---

**MEMORANDUM OF LAW IN SUPPORT OF
HIGHLAND CLO FUNDING LTD.'s MOTION TO INTERVENE**

KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

*Attorneys for Proposed Intervenor Highland
CLO Funding, Ltd.*

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ............................................................................................ ii

**PRELIMINARY STATEMENT** ...................................................................................... 1

**RELEVANT FACTS** ........................................................................................................ 3

    I.    The Acis Bankruptcy and Reorganization ................................................................ 3

    II.   The HCMLP Bankruptcy and HCLOF ..................................................................... 4

    III.  The ACIS-6 CLO and HCLOF'S Interests ............................................................. 5

    IV.  The Applicable Contract Provisions ........................................................................ 6

    V.   NSOF's Suit Is Holding Up The ACIS-6 Distributions ........................................... 7

**ARGUMENT** .................................................................................................................... 8

    I.    HCLOF IS ENTITLED TO INTERVENE AS OF RIGHT ..................................... 8

          A.   HCLOF Has A Material Interest In The Subject Matter Of This Case ................. 9

          B.   HCLOF's Interests Are Not Adequately Represented By Any Other Party ........ 10

          C.   This Motion Is Timely And Intervention Will Not
              Result In Prejudice To Any Existing Party ......................................................... 11

    II.   ALTERNATIVELY, THE COURT SHOULD
         PERMIT HCLOF TO INTERVENE ...................................................................... 12

    III.  HCLOF'S PROPOSED MOTION TO DISMISS ................................................. 13

          A.   NSOF's Failure To Comply With The No-Action Clause
              Is Fatal To Its Claims Against Acis, Brigade, And Terry ................................... 14

          B.   NSOF's Claims Against The Trustee Also Fail .................................................. 15

**CONCLUSION** ............................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ace Sec. Corp. v. DB Structured Prod., Inc.*,
  52 Misc. 3d 343 (Sup. Ct. N.Y. Cty.), *aff'd sub nom. U.S. Bank Nat'l Ass'n v.
  UBS Real Est. Sec., Inc.*, 177 A.D.3d 493 (1st Dep't 2019), *leave to appeal
  dismissed*, 35 N.Y.3d 1063 (2020) .......................................................................................15

*In re Acis Capital Mgmt., L.P.*,
  584 B.R. 115 (Bankr. N.D. Tex. 2018) ....................................................................................4

*In re Acis Capital Mgmt., L.P.*,
  Case No. 18-30264-sgj, 2019 WL 417149 (Bankr. N.D. Tex. Jan. 31, 2019) ......................3, 4

*AG Capital Funding Partners, L.P. v. State Street Bank & Tr. Co.*,
  11 N.Y.3d 146 (N.Y. 2008) ....................................................................................................16

*AG Oncon, LLC v. Ligand Pharmaceuticals Inc.*,
  C.A. No. 2018-0556, 2019 WL 2245976 (Del. Ch. May 24, 2019), *aff'd*, 224
  A.3d 963 (Del. 2020) ..............................................................................................................16

*Barry's Cut Rate Stores Inc. v. Visa Inc.*,
  No. 05-MD-1720 (MKB), 2021 WL 2646349 (E.D.N.Y. June 28, 2021) ............................13

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992) ..................................................................................................13

*Bridgeport Guardians, Inc. v. Delmonte*,
  602 F.3d 469 (2d Cir. 2010)......................................................................................................9

*Building & Realty Inst. v. State of New York*,
  No. 19-cv-11285, 2020 WL 5658703 (S.D.N.Y. Sept. 23, 2020) ..........................................11

*City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
  No. 20-cv-06885, 2021 WL 1051625 (S.D.N.Y. Mar. 19, 2021)..............................................9

*Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Tr.*,
  No. 17-cv-1323, 2018 WL 5095666 (D. Del. Oct. 19, 2018)............................................10, 11

*Delaware Tr. Co. v. Wilmington Tr., N.A.*,
  534 B.R. 500 (S.D.N.Y. 2015)................................................................................................10

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
  837 F. Supp. 2d 162 (S.D.N.Y. 2011).................................................................................9, 14

*Elliot Assocs. v. J Henry Schroeder Bank & Trust Co.*,
    838 F.2d 66 (2d Cir. 1988) ............................................................................16, 17

*Exp.-Imp. Bank of the Republic of China v. Grenada*,
    No. 13 CIV. 1450 HB, 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013) ....................................10

*Glancy v. Taubman Ctrs., Inc.*,
    373 F.3d 656 (6th Cir. 2004) ............................................................................11

*Goldstein v. SEC*,
    451 F.3d 873 (D.C. Cir. 2006) ............................................................................14

*Hartford Fire Ins. Co. v. Mitlof*,
    193 F.R.D. 154 (S.D.N.Y. 2000) ............................................................................11

*In re Highland Cap. Mgmt., L.P.*,
    No. 19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021) ...........................1

*Mortg. Lenders Network, Inc. v. Rosenblum*,
    218 F.R.D. 381 (E.D.N.Y. 2003) ............................................................................12

*Olin Corp. v. Lamorak Ins. Co.*,
    325 F.R.D. 85 (S.D.N.Y. 2018) ............................................................................12

*Pacific Life Ins. Co. v. Bank of N.Y. Mellon*,
    No. 17 Civ. 1388 (KPF), 2018 WL 1382105 (S.D.N.Y. Mar. 16, 2018) ...............................16

*Peak Partners, LP v. Republic Bank*,
    191 F. App'x 118 (3d Cir. 2006) ............................................................................14

*Peterson v. Islamic Republic of Iran*,
    290 F.R.D. 54 (S.D.N.Y. 2013) ............................................................................12

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
    23 N.Y.3d 549 (N.Y. 2014) ............................................................................9

*Republic of the Philippines v. Abaya*,
    312 F.R.D. 119 (S.D.N.Y 2015) ............................................................................12

*RJ Cap., SA v. Lexington Cap. Funding III, Ltd.*,
    No. 10 Civ. 25, 2011 WL 3251554 (S.D.N.Y. July 28, 2011) ...............................14

*Scaminaci v. Jaffrey*,
    No. 21-cv-321, 2021 WL 230203 (S.D.N.Y. Jan. 22, 2021) ...............................13

*SEC v. Northshore Asset Mgmt.*,
    No. 05 Civ. 2192 (WHP), 2008 WL 1968299 (S.D.N.Y. May 5, 2008) ...............................14

*SEC v. Trabulse*,
    526 F. Supp. 2d 1008 (N.D. Cal. 2007) .................................................................14

*Tachiona ex rel. Tachiona v. Mugabe*,
    186 F. Supp. 2d 383 (S.D.N.Y. 2002) ...................................................................13

*Tennenbaum Living Tr. v. TGLT S.A.*,
    20 Civ. 6938, 2021 WL 3863117 (S.D.N.Y. Aug. 30, 2021) ................................16

*Transamerica Mtg. Advisors, Inc. v. Lewis*,
    444 U.S. 11 (1979) ................................................................................................14

**Statutes**

15 U.S.C. § 77ddd(b) .................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 24 ................................................................................... *passim*

Proposed Intervenor Highland CLO Funding, Ltd. ("HCLOF") respectfully submits this memorandum of law, along with the declaration of Uri A. Itkin ("Itkin Decl.") and the exhibits annexed thereto, in support of its motion to intervene in this action, pursuant to Rule 24 of the Federal Rules of Civil Procedure ("FRCP").

## PRELIMINARY STATEMENT

This case arises from a bitter, long-running dispute between James Dondero and defendant Joshua Terry.  Until January 2020, Mr. Dondero was the CEO of Highland Capital Management, L.P. ("HCMLP").  Defendant Acis Capital Management, L.P. ("Acis") was founded as a subsidiary of HCMLP, and managed HCMLP's portfolio of collateralized loan obligations (CLOs), including the ACIS 2015-6 CLO at issue in this case ("ACIS-6").  Mr. Terry was employed by Acis and HCMLP until 2016, when Mr. Dondero terminated him.  Ultimately, Mr. Terry filed an involuntary bankruptcy petition against Acis, which led to Mr. Terry taking control of Acis and its CLO management business away from Mr. Dondero.  The Acis bankruptcy was marked by extreme acrimony between Mr. Dondero, directly and through proxies, and Mr. Terry.  The claims filed in this case by plaintiff NexPoint Strategic Opportunities Fund ("NSOF"), another of Mr. Dondero's proxies,[1] are yet another iteration of Mr. Dondero's ongoing feud with Mr. Terry.  HCLOF, which holds 87% of the outstanding notes in ACIS-6, is now caught in the middle of this feud.

HCLOF's interest in this case is significant, and it is impaired each day that this case is not dismissed.  HCLOF owns the vast majority of the remaining interest in ACIS-6.  In early May 2021, it directed the redemption of notes issued by ACIS-6.  The $18 million balance

---

[1]  NSOF is managed and controlled by NexPoint Advisors, L.P. ("NexPoint"), which in turn is owned and controlled by Mr. Dondero. *See In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2021 WL 3418657, at *9 (Bankr. N.D. Tex. Aug. 4, 2021).

remaining after the redemption was supposed to be distributed to the rest of the ACIS-6 noteholders, including, principally, HCLOF. But that did not happen due to this case. The distributions did not take place because defendants Acis and U.S. Bank, National Association ("US Bank") — the portfolio manager and the trustee of ACIS-6, respectively — reserved the entire $18 million to defend themselves against NSOF's meritless claims in this case. The distributions now hang in limbo and will not be made so long as NSOF's meritless claims in this case remain outstanding. As a result, HCLOF is compelled to intervene to be heard in opposition to NSOF's meritless claims, which are precisely the sort of wasteful minority action that the ACIS-6 indenture was designed to prevent.

HCLOF's intervention should be granted as of right. This motion is timely: this case had been stayed until NSOF filed the amended complaint on November 22, 2021 (and NSOF just filed its second amended complaint on November 23, 2021). HCLOF's interest in this case is beyond dispute: it holds 87% of the outstanding notes and is thus by far the largest stakeholder in ACIS-6. And HCLOF's interest is being impaired each day this case continues: NSOF's claims are meritless and usurp contractual rights that can only be exercised by HCLOF, as the majority noteholder. Worse, the mere filing of NSOF's claims is directly harming HCLOF, as Defendants have held up the ACIS-6 distributions and are using the funds to defend themselves against NSOF instead of distributing them to HCLOF.

Defendants do not adequately represent HCLOF's interests. While Defendants may be nominally aligned with HCLOF with respect to NSOF's complaint, their interests diverge sharply with respect to the ACIS-6 funds being held up by NSOF's suit. In simple terms, Defendants have reserved the ACIS-6 funds, whereas HCLOF believes the reserves are improper

2

and wants the reserved funds to be released immediately.  These circumstances compel granting HCLOF's intervention as of right.

Moreover, the Court has broad discretion to permit HCLOF to intervene.  The Court should exercise its discretion to grant HCLOF's motion because HCLOF has a direct interest in this suit and its intervention will neither prejudice nor delay the resolution of NSOF's claims.  To the contrary, HCLOF's participation will aid the Court's adjudication of this case because the Court should hear from the other 87% of the ACIS-6 noteholders (*i.e.*, HCLOF) and understand that they oppose and are continuously harmed by NSOF's claims.

Accordingly, HCLOF respectfully requests that the Court grant its motion to intervene.

## RELEVANT FACTS

## I.   THE ACIS BANKRUPTCY AND REORGANIZATION

HCMLP was founded in 1993 by Mr. Dondero and his partner.  Because of a series of well-publicized and contentious lawsuits involving HCMLP, it sought to re-brand its CLO management business and chartered Acis to manage its CLOs.  Mr. Terry, Acis's current owner, was a key employee of Acis and HCMLP.  *See In re Acis Capital Mgmt., L.P.*, Case No. 18-30264-sgj, 2019 WL 417149, at *4 (Bankr. N.D. Tex. Jan. 31, 2019).  However, Mr. Terry and Mr. Dondero had a falling out in 2016, which resulted in Mr. Terry's termination.  *See id.*

Mr. Terry subsequently sought arbitration and received an approximately $8 million arbitration award against Acis.  *See id.*  Instead of satisfying that award, Mr. Dondero, through his proxies, "orchestrated a systemic transfer of value away from" Acis.  *Id.* at *8, *12.  To stop that from happening, Mr. Terry filed an involuntary bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division.  *In re Acis Capital Management, L.P., et al.*, Case No. 18-30265-sgj11 (Bankr. N.D. Tex.) (the "Acis Bankruptcy").

The involuntary petition in the Acis Bankruptcy was granted, but because of concerns about Mr. Dondero's ability to function as a fiduciary of Acis's bankruptcy estate and his prior efforts to strip Acis of assets, a chapter 11 trustee was appointed. *See In re Acis Capital Mgmt., L.P.*, 584 B.R. 115, 132, 149-50 (Bankr. N.D. Tex. 2018) ("[T]he court is wholly convinced . . . that conflicts of interest among [HCMLP] and [Acis] abound, and no one is looking out for the interests of [Acis] as a fiduciary should."). In the words of the presiding judge, the Acis Bankruptcy was "astonishingly contentious." *In re Acis Capital Mgmt., L.P.*, 2019 WL 417149, at *2.[2] Mr. Dondero caused his controlled proxies, including, at that time, HCMLP, to litigate and appeal nearly every issue raised in the Acis Bankruptcy in a coordinated effort to exact revenge for Mr. Terry's perceived disloyalty. *See id.* at *2.

In January 2019, a plan of reorganization was confirmed in the Acis Bankruptcy. *See id.* at *1. The Acis Bankruptcy plan provided for the transfer of ownership of Acis from HCMLP to Mr. Terry and included an injunction engineered to allow Acis sufficient breathing room to successfully reorganize. *See id.* at *9-10. On May 7, 2021, Acis filed a notice disclosing that the injunction had expired,[3] and almost immediately thereafter, Mr. Dondero, through NSOF, commenced this lawsuit.

## II.     THE HCMLP BANKRUPTCY AND HCLOF

Mr. Dondero's litigiousness ultimately resulted in HCMLP filing for bankruptcy as well. *See In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11 (Bankr. N.D. Tex.) (the

---

[2] HCMLP, then still under the control of Mr. Dondero, tried to pursue Mr. Terry in many ways, including by trying to take his and his wife's retirement accounts. *See generally Joshua and Jennifer Terry v. Highland Capital Management, L. P., et al*, Case No. DC-16-11396 (162nd District Court of Dallas County, Texas).

[3] *Notice Regarding Expiration of Temporary Plan Injunction, In re Acis Capital Management, L.P.*, Case No. 18-30264-sgj11, Docket No. 1217 (Bankr. N.D. Tex. May 7, 2021).

"HCMLP Bankruptcy").  To avoid the appointment of a chapter 11 trustee, Mr. Dondero agreed

to surrender control of HCMLP in favor of an independent board selected by the Official

Committee of Unsecured Creditors.  After it became clear that Mr. Dondero would not get his

way in the HCMLP Bankruptcy, he, like with the Acis Bankruptcy, launched a coordinated

litigation crusade, directly and through his proxies, including NSOF, against HCMLP and its

court-appointed management.  Mr. Dondero's litigiousness resulted in the court overseeing

HCMLP's bankruptcy finding that Mr. Dondero was using litigation to "harass" HCMLP to

prevent a successful reorganization and ultimately to "burn down the place."  *See Order (i)*

*Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P.*

*(as Modified) and (ii) Granting Related Relief* at 55-57, ECF No. 1943, *In re Highland Capital*

*Management, L.P.*, Case No. 19-34054-sgj11 (Bankr. N.D. Tex. Feb. 22, 2021).

      HCMLP is directly and indirectly HCLOF's largest shareholder and, through another

entity, acts as its portfolio manager and adviser.

## III.    THE ACIS-6 CLO AND HCLOF'S INTERESTS

      The ACIS-6 CLO at issue in this case was created in 2015 to invest in high yield

corporate loans.  The loans were deposited into a New York common law trust, and the trust

issued notes (the "Notes") that were sold to investors.  The trust and the Notes were administered

by US Bank as trustee, and the loan collateral was managed by Acis, as the portfolio manager.

      The rights and obligations of the trustee and the Noteholders are set forth in the indenture

(the "Indenture").  A copy of the Indenture is attached to the Itkin Declaration as Exhibit A.

Acis's obligations as the portfolio manager are set forth in the Portfolio Management Agreement

("PMA").  A copy of the PMA is attached as Exhibit B to the Itkin Declaration.


Currently, there is only one class of ACIS-6 Notes outstanding.  That is the Subordinated

Notes.  *See* Itkin Decl. ¶ 6; Ex. C.  As noted, HCLOF holds 87% of the Subordinated Notes.

Itkin Decl. ¶ 2.  NSOF claims to hold 13% of the Subordinated Notes.  *See* Second Amended

Complaint, ECF No. 42 ("SAC"), ¶ 38.[4]

## IV.    THE APPLICABLE CONTRACT PROVISIONS

The Indenture contains a customary no-action clause.  *See* Indenture § 5.8.  In simple

terms, the no-action clause bars any action filed by holders of less than 25% of the Subordinated

Notes.  Since HCLOF holds 87% of the Subordinated Notes, it is the only party that can comply

with the no-action clause.[5]

Specifically, the no-action clause prohibits lawsuits by investors who hold less than 25%

of the Notes of the "Controlling Class:"

> No Holder of any Note shall have any right to institute any Proceedings, judicial
> or otherwise, with respect to this Indenture . . . or for any other remedy hereunder,
> unless: (a) such Holder has previously given to the Trustee written notice of an
> Event of Default; (b) the Holders of not less than 25% of the then Aggregate
> Outstanding Amount of the Notes of the Controlling Class shall have made
> written request to the Trustee to institute Proceedings . . . (c) the Trustee for 30
> days after its receipt of such notice . . . has failed to institute any such Proceeding;
> and (d) no direction inconsistent with such written request has been given to the
> Trustee during such 30 day period by a Majority of the Controlling Class.

And, as the only tranche of the Notes still outstanding, the Subordinated Notes are the

Controlling Class under the Indenture:

> Controlling Class:  [means] the Subordinated Notes, if there are no Class A Notes,
> Class B Notes, Class C Notes, Class D Notes or Class E Notes Outstanding.

---

[4]  NexPoint allegedly holds $7.5 million of the Subordinated Class of Notes issued by ACIS-6.
SAC ¶ 38.  The Indenture provides that approximately $59.9 million of Subordinated Notes were
issued in connection with the deal.  *See* Indenture § 2.3.

[5]  In addition to being the only holder that can direct the trustee to institute proceedings, HCLOF,
as the majority Noteholder, also is the only holder that has sufficient voting rights to declare an
Event of Default under the Indenture.  *See* Indenture § 5.1(d).

Indenture § 1.1 at p. 17 (Definition of Controlling Class).  This reflects the no-action clause's

purpose to protect majority Noteholder(s) from wasteful actions by the minority.  This also

reflects the fact that NSOF cannot comply with the no-action clause.

NSOF also cannot sue under, or in connection with, the PMA.  The PMA was entered

between Acis, as portfolio manager, and ACIS-6, the CLO.  ACIS-6 then expressly assigned and

pledged the PMA to US Bank, the trustee, as part of the trust estate.  *See* Indenture at p. 9

(Granting Clause); *see also id.* § 15.1.  Reflecting this assignment, the PMA expressly provides

that it can be enforced by US Bank, as trustee, and none of the Noteholders are third party

beneficiaries:

> Other than as provided below, no party, including any Holder of Notes, is a third
> party beneficiary of this Agreement.  The parties hereby acknowledge[] and
> agree[] that the Trustee will be a third-party beneficiary of this Agreement.

PMA § 31.  In sum total, Noteholders only can sue Acis in place of the trustee if they comply

with the no-action clause (which NSOF is unable to do as a 13% holder).

## V.    NSOF'S SUIT IS HOLDING UP THE ACIS-6 DISTRIBUTIONS

On May 12, 2021, HCLOF, as the majority holder of the Controlling Class, directed an

optional redemption of the Notes.  *See* Itkin Decl. Ex. D.  Acis and US Bank then sold nearly all

of the ACIS-6 assets and redeemed all of the senior ACIS-6 Notes.  As noted, the Subordinated

Notes are the only Notes left.

NSOF filed this action on May 14, 2021 asserting claims against Acis and US Bank, in

their capacity as the portfolio manager and trustee, respectively; as well as Mr. Terry and

Brigade Capital Management ("Brigade"), who are Acis's principal and sub-adviser,

respectively.  SAC ¶¶ 2-5, 47-49.

After this action was filed, Acis and US Bank reserved $18 million to pay for their legal

expenses and any potential liability in connection with this suit.  *See* Itkin Decl. ¶ 6; Exs. C, E.

These funds comprise virtually all of the ACIS-6 assets.  *See* Itkin Decl. Ex. C.

The Subordinated Notes were supposed to receive a distribution of the remaining funds. But as a result of NSOF's suit, these funds are being needlessly held up by — and spent on — Defendants' defense.  In other words, as a result of NSOF's meritless suit, HCLOF is being needlessly and unfairly deprived of nearly $18 million of distributions due on the Subordinated Notes.  This is why HCLOF is seeking to intervene here.

## ARGUMENT

As explained above, HCLOF seeks to intervene in this case to stop the ongoing and increasing harm that NSOF's suit has caused and continues to cause it.  To summarize: as the holder of 87% of the outstanding Notes issued by ACIS-6, HCLOF is the largest stakeholder in ACIS-6, and thus has a direct property interest at stake in this case.  And NSOF's meritless claims are impairing HCLOF's interest.  As a result of NSOF's suit, Defendants have reserved $18 million of ACIS-6 proceeds that should have been distributed to the Subordinated Noteholders, including HCLOF, and are instead using those proceeds to fund their defense. HCLOF cannot sit idly by while NSOF tries to assert the rights that can only be exercised by HCLOF under the no-action clause, and thereby depletes investor funds for a suit that HCLOF does not support.  This is exactly the sort of harm that the no-action clause was designed to prevent.  In sum, HCLOF is entitled to intervene in this case to protect its contractual and economic interests as of right, as well as by permission of the Court.

## I.    HCLOF IS ENTITLED TO INTERVENE AS OF RIGHT

Under FRCP Rule 24(a)(2), the Court "must grant an applicant's motion to intervene . . . if (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's

ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *City of Syracuse v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, No. 20-cv-06885, 2021 WL 1051625, at *4 (S.D.N.Y. Mar. 19, 2021) (quoting *Laroe Ests., Inc. v. Town of Chester*, 828 F.3d 60, 66 (2d Cir. 2016)); *see also* FRCP 24(a)(2).

HCLOF meets each of these requirements, as (1) this motion is timely; (2) HCLOF holds the overwhelming majority interest of the ACIS-6 Notes at issue; (3) its interest is being impaired by NSOF's claims; and (4) the Defendants have withheld and are using ACIS-6 funds to pay for their defense against NSOF's claims, whereas HCLOF wants those funds immediately released.

### A.    HCLOF Has A Material Interest In The Subject Matter Of This Case

In order to intervene as of right, the intervenor must have a "direct, substantial, and legally protectable" interest in the proceeding. *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citation omitted).  HCLOF plainly satisfies this requirement.

Put simply, NSOF's suit is causing Defendants to hold up and spend money that effectively belongs to HCLOF to defend a suit that the Indenture prohibits.  As noted, HCLOF holds 87% of the outstanding ACIS-6 Subordinated Notes, which is the Controlling Class under the Indenture.  By dint of HCLOF's majority position, the no-action clause in the Indenture explicitly gives HCLOF the contractual right to be free from unwanted nuisance suits by other Noteholders.  *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 565-66 (N.Y. 2014) ("Indeed, a no-action clause makes it more difficult for individual bondholders to bring suits that are unpopular with their fellow bondholders") (internal citations and alterations omitted); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 184 (S.D.N.Y. 2011) (a no-action clause protects against the "expense of litigating an action brought

by a small group of certificateholders that most investors would consider not to be in their collective economic interest").

In other words, as the majority holder of 87% of the Notes, only HCLOF has the right to institute litigation against other CLO parties.  *See* Indenture § 5.8.  By the same token, HCLOF has the right to be free from nuisance suits from minority holders, like NSOF.  NSOF's suit directly infringes on HCLOF's rights.  Moreover, the harms of NSOF's infringement are real and concrete, as NSOF's suit is holding up (and using up) $18 million of distributions, which would otherwise be principally distributed to HCLOF.

These facts state a sufficient interest for purposes of intervention as of right under Rule 24(a)(2).  *See Delaware Tr. Co. v. Wilmington Tr., N.A.*, 534 B.R. 500, 510 (S.D.N.Y. 2015) (permitting debt holders to intervene in a case concerning allocation of payments to debtor, which could affect payments on the intervenor's notes); *Exp.-Imp. Bank of the Republic of China v. Grenada,* No. 13 CIV. 1450 HB, 2013 WL 4414875, at *5 (S.D.N.Y. Aug. 19, 2013) (granting intervention to bondholders whose payments could be jeopardized by a judgment in the plaintiff's favor); *see also Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Tr.*, No. 17-cv-1323, 2018 WL 5095666, at *5 (D. Del. Oct. 19, 2018) (permitting noteholders to intervene where the litigation concerned their control rights).

### B.    HCLOF's Interests Are Not Adequately Represented By Any Other Party

While the Defendants may raise similar arguments in support of dismissing NSOF's claims, there is still a significant wedge between the Defendants' interests and those of HCLOF. For one, Defendants are holding up funds that, in HCLOF's view, must be immediately distributed to Noteholders, including HCLOF.  Furthermore, Defendants believe that they are entitled to reserve funds from the CLO not only for the purpose of reimbursement of their attorneys' fees, but also for any potential liability.  HCLOF disagrees.  There is no basis in the

Indenture or the law to reserve funds for Defendants' potential liability.  Even if NSOF's claims were not utterly meritless (and they are), the claims concern conduct that is not indemnifiable under the Indenture.  Indenture § 6.7(a)(iii).[6]

Courts have found that a similar divergence of interest between parties and proposed intervenors is sufficient to satisfy this element of Rule 24(a)(2).  *See Consumer Fin. Prot. Bureau*, 2018 WL 5095666, at *5 (permitting noteholders to intervene alongside trustee because of potential claims faced by the trustee in its capacity as the special servicer); *Glancy v. Taubman Ctrs., Inc.*, 373 F.3d 656, 675 (6th Cir. 2004) ("Courts have held that asymmetry in the intensity of the interest can prevent a named party from representing the interests of the absentee.").

### C.    This Motion Is Timely And Intervention Will Not Result In Prejudice To Any Existing Party

HCLOF's intervention is also timely and otherwise procedurally sound.  "It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties."  *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000).  The Court had stayed this case until NSOF filed its amended complaint, which NSOF did on November 22, 2021, just two days prior to the filing of this motion (and it filed a second amended complaint on November 23, 2021).  Thus, there can be no dispute that this motion is timely, as HCLOF seeks to intervene before any meaningful progress in this case and before Defendants have moved to dismiss.  *See, e.g.*, *Building & Realty Inst. v. State of New York*, No. 19-cv-11285, 2020 WL 5658703, at *7 (S.D.N.Y. Sept. 23, 2020) (motion to intervene three months after case was filed was timely, especially since it was made

---

[6]  In the unlikely event that NSOF's claims are not dismissed in their entirety, HCLOF intends to ask the Court to order the immediate release of the ACIS-6 funds.

"prior to any significant substantive motions") (quoting *Schaghticoke Tribal Nation v. Norton*, No. 06-CV-81, 2006 WL 1752384, at *8 (D. Conn. June 14, 2006)); *Republic of the Philippines v. Abaya*, 312 F.R.D. 119, 123 (S.D.N.Y 2015) (motion to intervene "nearly a year" after action commenced was timely); *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 58 (S.D.N.Y. 2013) (motion to intervene was timely when it was filed six months after the plaintiffs became aware of their claims); *Mortg. Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381, 383-84 (E.D.N.Y. 2003) (granting motion to intervene when filed more than six months after the proposed intervenors knew or should have known of their interest in the litigation). In other words, HCLOF's intervention will cause no prejudice to any party.

By contrast, absent intervention, only HCLOF will suffer prejudice. If intervention were denied, HCLOF would be forced to idly sit by as NSOF attempts to exercise litigation rights that belong exclusively to HCLOF under the no-action clause. Absent intervention, HCLOF would be forced to idly sit by as nearly $18 million of distributions due to HCLOF are needlessly held up. And, absent intervention, HCLOF would be forced to idly sit by as NSOF's suit needlessly depletes that $18 million instead of being used for the required distributions to HCLOF.

The Court should not permit HCLOF to be prejudiced in this manner, and should grant HCLOF's motion to intervene as of right pursuant to Rule 24(a)(2).

## II.     ALTERNATIVELY, THE COURT SHOULD PERMIT HCLOF TO INTERVENE

FRCP Rule 24(b) gives the Court broad discretion to permit HCLOF to intervene even if the Court finds that HCLOF is not entitled to intervene as of right. The Court should do so for all of the reasons discussed above to avoid the manifest injustice that NSOF's meritless claims would effect on HCLOF's contractual and economic interests in ACIS-6. *See Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 89 (S.D.N.Y. 2018) (granting permissive intervention and

noting that despite seeking the "same ultimate objective" as parties already in the case, the proposed intervenor would more "zealously" make arguments to that end).[7]

## III.    HCLOF'S PROPOSED MOTION TO DISMISS

FRCP Rule 24(c) provides that a motion to intervene must "be accompanied by a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  Courts in this Circuit and elsewhere have deemed this requirement met "when the proposed intervenors position is 'clearly articulated' in its motion papers."  *Barry's Cut Rate Stores Inc. v. Visa Inc.*, No. 05-MD-1720 (MKB), 2021 WL 2646349, at *13-14 (E.D.N.Y. June 28, 2021) (collecting cases and waiving the pleading requirement); *see also Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002) (approving intervention based on letter briefs setting forth intervenor's position, without a pleading, recognizing "Rule 24(c) permits a degree of flexibility with technical requirements"); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) ("Courts, including this one, have approved intervention motions without a pleading where the court was otherwise apprised of the grounds for the motion.").

HCLOF's intended arguments in support of dismissing NSOF's claims are described above, but HCLOF explains them in more detail below to ensure that they are "clearly articulated" for purposes of Rule 24(c).  In light of this description, and for the sake of efficiency, HCLOF also respectfully requests that the Court dispense with requiring HCLOF to file a pre-motion letter in anticipation of HCLOF's motion.

---

[7]  As a last resort, if the Court refuses to permit HCLOF to intervene, HCLOF seeks leave to file an *amicus curiae* brief setting out its views as a majority ACIS-6 Noteholder.  *See Scaminaci v. Jaffrey*, No. 21-cv-321, 2021 WL 230203, at *1 (S.D.N.Y. Jan. 22, 2021) (accepting the proposed intervenor's opposition as an amicus brief).

**A.      NSOF's Failure To Comply With The No-Action Clause Is Fatal To Its Claims Against Acis, Brigade, And Terry**

None of NSOF's claims against Acis, Brigade, or Terry satisfy the no-action clause. NSOF's claims against these Defendants consist of violation of the Investment Advisors Act of 1940 (Count One), breach of fiduciary duty (Count Two), breach of the PMA and Indenture (Count Three), negligence (Count Six), and conversion (Count Seven).[8]  To assert each of these claims, NSOF was required to comply with the Indenture's no-action clause, and its failure and inability to do so is fatal.  *See RJ Cap., SA v. Lexington Cap. Funding III, Ltd.*, No. 10 Civ. 25, 2011 WL 3251554, at *6-7 (S.D.N.Y. July 28, 2011) (dismissing claims against collateral manager for failure to comply with no action clause); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 185 (S.D.N.Y. 2011) (tort and contract claims against servicer and affiliates barred by a no action clause); *see also Peak Partners, LP v. Republic Bank*, 191 F. App'x 118, 126-27 (3d Cir. 2006) (applying New York law and holding that "any claim that can be enforced by the trustee on behalf of all bonds . . . is subject to the terms of a no action clause," including negligence claims against a servicer).

NSOF's failure to comply with the no-action clause is beyond dispute.  NSOF does not hold the requisite 25% of the Controlling Class — it holds only 13% — and no Event of Default

---

[8]  Even if NSOF's claims were not barred by NSOF's failure to comply with the no-action clause, its claims fail as a matter of law.  Acis has no duties to NSOF as an individual investor in ACIS-6 under the Investment Advisors Act of 1940 because an advisor owes no fiduciary or other duty to an individual investor in a fund, just to the fund itself.  *See Goldstein v. SEC*, 451 F.3d 873, 879 (D.C. Cir. 2006); *see also, e.g., SEC v. Northshore Asset Mgmt.*, No. 05 Civ. 2192 (WHP), 2008 WL 1968299, at *6 (S.D.N.Y. May 5, 2008) (dismissing a claim that an investment adviser owed a duty to a fund's investors rather than just the fund); *SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1016 (N.D. Cal. 2007) (same).  And, even if Acis did owe a fiduciary duty to NSOF (which is not true because Acis owes duties to the entire CLO, rather than any individual Noteholder), U.S. Supreme Court precedent is clear that there is no private right of action for a breach of fiduciary duty under the Investment Advisors Act of 1940.  *See*, *e.g., Transamerica Mtg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979).

has been declared (nor could it be, as that would require a majority of the Controlling Class, *i.e.*, far more than NSOF holds).  *See* Indenture §§ 5.1, 5.8(a).  Nor has NSOF satisfied — or attempted to satisfy — any of the other no-action clause requirements, including providing US Bank the requisite direction and adequate indemnity to sue Acis.  *Id.* § 5.8(b)-(c).

That NSOF's claims include tort claims does not change this calculus.  Not only are all of NSOF's tort claims duplicative of its claim for breach of the PMA, its tort claims could only be asserted by US Bank, as trustee (or a Noteholder complying with the no-action clause).  Indeed, it is the PMA that gives rise to Acis's duties as portfolio manager, and it is US Bank, as trustee, who explicitly and unambiguously has the right to enforce those duties.  PMA § 31; Indenture at p. 9 (Granting Clause), § 15.1.  *See Ace Sec. Corp. v. DB Structured Prod., Inc.*, 52 Misc. 3d 343, 349 (Sup. Ct. N.Y. Cty.) (finding that a residential mortgage-backed securities trustee had the right to enforce breaches of a related agreement assigned to the trustee for the benefit of the noteholders), *aff'd sub nom. U.S. Bank Nat'l Ass'n v. UBS Real Est. Sec., Inc.*, 177 A.D.3d 493 (1st Dep't 2019), *leave to appeal dismissed*, 35 N.Y.3d 1063 (2020).  Since the only way for Noteholders to sue in place of the trustee — as NSOF is trying to do here — is by satisfying the no-action clause, NSOF's failure to comply with the no-action clause is equally fatal to its tort claims.

Accordingly, NSOF's claims against Acis, Terry, and Brigade should be dismissed.

### B.     NSOF's Claims Against The Trustee Also Fail

While NSOF's claims against the trustee may not, arguably, be barred by the no-action clause, they are still subject to dismissal as a matter of law.  NSOF asserts three claims against the trustee:  breach of the Trust Indenture Act (Count Four), breach of fiduciary duty (Count Five), and negligence (Count Six).

The Trust Indenture Act claim is baseless.  NSOF fails to explain how it can assert a breach of the Trust Indenture Act when the Act does not apply to ACIS-6.  ACIS-6 was a private debt offering under Rule 144A and Regulation S, whereas the Trust Indenture Act applies only to publicly-issued debt instruments.  *See* 15 U.S.C. § 77ddd(b); *Tennenbaum Living Tr. v. TGLT S.A.*, 20 Civ. 6938, 2021 WL 3863117, at *4-5 (S.D.N.Y. Aug. 30, 2021) (dismissing claim for violating Trust Indenture Act on the grounds that the statute did not apply to private debt offering); *AG Oncon, LLC v. Ligand Pharmaceuticals Inc.*, C.A. No. 2018-0556, 2019 WL 2245976, at *9-10 (Del. Ch. May 24, 2019), *aff'd*, 224 A.3d 963 (Del. 2020) (same).

The fiduciary duty claim is also baseless.  In the absence of an Event of Default, the ACIS-6 Indenture only requires the trustee (i) to avoid conflicts of interest; and (ii) to perform all basic, non-discretionary tasks with due care.  *Elliot Assocs. v. J Henry Schroeder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988).  As noted above, NSOF has not alleged an Event of Default has occurred (and NSOF has no right to declare an Event of Default, as that requires a majority of the Controlling Class).  Because the trustee owes no pre-Event of Default fiduciary duties under the Indenture, and there has been no Event of Default declared (by HCLOF or otherwise), this claim fails.  *See, e.g.*, *Pacific Life Ins. Co. v. Bank of N.Y. Mellon*, No. 17 Civ. 1388 (KPF), 2018 WL 1382105, at *12 (S.D.N.Y. Mar. 16, 2018); *AG Capital Funding Partners, L.P. v. State Street Bank & Tr. Co.*, 11 N.Y.3d 146, 156-57 (N.Y. 2008).

The negligence claim fails for largely the same reasons.  This claim seeks to hold the trustee liable for failing to manage the ACIS-6 assets.  *See* SAC ¶¶ 221-23.  But managing the ACIS-6 assets is a substantive responsibility that the Indenture assigns exclusively to Acis as the portfolio manager.  *See* Indenture § 6.3(o).  It is not a "ministerial" duty owed by the trustee.

Nor is there any provision holding the trustee liable for Acis's acts or omissions.  The negligence claim is therefore also without basis.[9]

According, none of NSOF's claims against U.S. Bank have merit as a matter of law.

## CONCLUSION

For all these reasons, the Court should grant HCLOF's motion for intervention as of right or by permission to enable HCLOF to protect its financial and contractual interests in the ACIS-6 CLO at issue in this case.

Dated:  New York, New York
        November 24, 2021

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By:  _/s/ Uri A. Itkin_____
     Uri A. Itkin
     Jill L. Forster
     Andrew W. Breland

1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700

*Attorneys for Proposed Intervenor Highland CLO Funding, Ltd.*

---

[9]  NSOF's complaint includes one conclusory allegation that U.S. Bank failed to avoid conflicts of interest by failing to oversee the conduct of the Portfolio Manager.  *See* SAC ¶¶ 206-11. These kinds of "bald assertions of conflict" absent further facts are insufficient to show a conflict of interest.  *Elliot Assocs.*, 838 F.2d at 70.