UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NEXPOINT STRATEGIC OPPORTUNITIES FUND,

        Plaintiff,

      -against-

ACIS CAPITAL MANAGEMENT, L.P., U.S.
BANK, N.A., JOSHUA N. TERRY, AND
BRIGADE CAPITAL MANAGEMENT, L.P.,

        Defendants,

      -and-

HIGHLAND CLO FUNDING LTD,

        Intervenor-Defendant.

1:21-cv-04384-GHW

---

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>HIGHLAND CLO FUNDING LTD.'s MOTION TO DISMISS</u>

KASOWITZ BENSON TORRES LLP

1633 Broadway
New York, New York 10019
Tel.:  (212) 506-1700
Fax:  (212) 506-1800

PACHULSKI STANG ZIEHL & JONES LLP

780 Third Avenue, 34th Floor
New York, New York 10017
Tel.  (212) 561-7700
Fax:  (212) 561-7777

*Attorneys for Highland CLO Funding, Ltd.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT FACTS .................................................................................................2

   I.    The Origins Of This Action ...........................................................................2

   II.   The ACIS-6 CLO ........................................................................................4

   III.  The Applicable Indenture Provisions ...........................................................5

   IV.  NSOF's Allegations In The Complaint ........................................................7

   V.   HCLOF's Intervention In This Case .............................................................8

ARGUMENT .........................................................................................................8

   I.    The No-Action Clause Bars Any Claims Against The RIA Defendants.........................9

   II.   NSOF's Claims Against U.S. Bank Are Also Barred ...................................12

   III.  The Court Should Exercise Its Jurisdiction To Dismiss All Claims In The Case ..........14

   IV.  NSOF Should Bear The Fees And Expenses Of This Action .......................15

CONCLUSION .....................................................................................................16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ace Sec. Corp. v. DB Structured Prods., Inc.*,
52 Misc. 3d 343 (Sup. Ct. N.Y. Cty. 2016) ...................................................11

*In re Acis Capital Mgmt., L.P.*,
Case No. 18-30264-sgj, 2019 WL 417149 (Bankr. N.D. Tex. Jan. 31, 2019) ...................3, 15

*AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*,
11 N.Y.3d 146 (2008).....................................................................................13

*Am. Int'l Grp., Inc. v. Bank of Am. Corp.*,
No. 11 CIV. 6212 BSJ, 2011 WL 6778473 (S.D.N.Y. Dec. 20, 2011)..................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................9

*In re Chowaiki & Co. Fine Art Ltd.*,
593 B.R. 699 (Bankr. S.D.N.Y. 2018) ...........................................................8

*DiFolco v. MSNBC Cable LLC*,
622 F.3d 104 (2d Cir. 2010) ..........................................................................9

*EC v. Northshore Asset Mgmt.*,
No. 05 Civ. 2192(WHP), 2008 WL 1968299 (S.D.N.Y. May 5, 2008)................................12

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011) ..........................................................10

*Elliot Assocs. v. J Henry Schroeder Bank & Trust Co.*,
838 F.2d 66 (2d Cir. 1988) ............................................................................13

*Fed. Housing Fin. Agency v. Novation Cos., Inc.*,
No. 650693/2013, 2017 WL 6025527 (Sup. Ct. N.Y. Cty. Nov. 30, 2017)..........................11

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir. 2006)........................................................................12

*In re Highland Cap. Mgmt., L.P.*,
No. 19-34054-SGJ11, 2021 WL 3418657 (Bankr. N.D. Tex. Aug. 4, 2021) ....................2, 15

*House of Eur. Funding I., Ltd. v. Wells Fargo Bank, Nat'l Ass'n*,
No. 13 Civ. 519(RJS), 2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014)..................................10

*Ibrahim v. Pena*,
No. 16-cv-7774 (VEC), 2017 WL 3601246 (S.D.N.Y. Aug. 21, 2017) .................................9

*Manier v. L'Oreal USA, Inc.*,
No. 2:16-CV-06886-ODW-KS, 2017 WL 59066 (C.D. Cal. Jan. 4, 2017) ...........................8

*Mauro v. S. New England Telecomms., Inc.*,
208 F.3d 384 (2d Cir. 2000) ............................................................................................14

*MGM Glob. Resorts Dev., LLC v. United States Dep't of the Interior*,
No. CV 19-2377 (RC), 2020 WL 5545496 (D.D.C. Sept. 16, 2020)......................................8

*Pacific Life Ins. Co. v. Bank of N.Y. Mellon*,
No. 17 Civ. 1388 (KPF), 2018 WL 1382105 (S.D.N.Y. Mar. 16, 2018) ............................13

*Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*,
No. 17 CIV. 241 (ER), 2018 WL 1605985 (S.D.N.Y. Mar. 29, 2018) ................................11

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
23 N.Y.3d 549 (2014)........................................................................................................9

*STS Partners Fund, LP v. Deutsche Bank Sec., Inc.*,
149 A.D.3d 667 (1st Dep't 2017) ....................................................................................12

*Tennenbaum Living Tr. v. TGLT S.A.*,
No. 20-cv-6938, 2021 WL 3863117 (S.D.N.Y. Aug. 30, 2021) ........................................13

*In re Trusts Established under the Pooling and Servicing Agreements Relating to
the Wachovia Bank Commercial Mortg. Tr. Comm. Mortg. Pass-Through
Certificates, Series 2007-C30*,
375 F. Supp. 3d 441 (S.D.N.Y. 2019) ............................................................................8, 9

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
No. 16-CV-8507 (AJN), 2019 WL 9511402 (S.D.N.Y. Sept. 16, 2019) ............................14

*Waxman v. Cliffs Nat. Res. Inc.*,
222 F. Supp. 3d 281 (S.D.N.Y. 2016) ..............................................................................10

*Winn v. Schafer*,
499 F. Supp. 2d 390 (S.D.N.Y. 2007) ..............................................................................10

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
No. 17-cv-307(PKC), 2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021)..................................10

**Statutes**

12 U.S.C. § 632 .......................................................................................................................14

15 U.S.C. § 77ooo ...................................................................................................................13

28 U.S.C. § 1331 ................................................................................................................. 14

28 U.S.C. § 1367 ................................................................................................................. 14

**Other Authorities**

Federal Rule of Civil Procedure 12 ............................................................................... 1, 8

Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland
   Capital Management, L.P. (as Modified) and (ii) Granting Related Relief, *In
   re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, at 55-57
   (Bankr. N.D. Tex. Feb. 22, 2021), ECF No. 1943 ................................................. 3

Intervenor-Defendant Highland CLO Funding, Ltd. ("HCLOF") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice plaintiff NexPoint Strategic Opportunities Fund's ("NSOF") Second Amended Complaint, ECF No. 42 (the "Complaint" or "SAC"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP").[1]

## PRELIMINARY STATEMENT

NSOF's lawsuit is based on threadbare allegations with no legitimate legal theory or factual basis and should be dismissed with prejudice.  This lawsuit is barred by clear contractual provisions designed to protect other investors, including HCLOF.

As explained in HCLOF's motion to intervene, NSOF's lawsuit is yet another front in the long-running war between James Dondero, who controls NSOF, and Joshua Terry, Mr. Dondero's former employee who wrestled control of Acis Capital Management, L.P. ("Acis") from Mr. Dondero in 2019.  Mr. Dondero wants revenge — which is why Mr. Terry and Acis are being baselessly sued in this action.  U.S. Bank, N.A. ("U.S. Bank"), Brigade Capital Management, L.P. ("Brigade"), and HCLOF are merely collateral damage.

NSOF's claims arise from its ownership of approximately 13% of the remaining notes issued by ACIS CLO 2015-6 ("ACIS-6" or the "CLO").  Relying on this minority position, NSOF alleges that Acis, Mr. Terry, and the other defendants "mismanaged" and harmed the CLO.  These claims are barred as a matter of law by the Indenture's no-action clause.  No Event of Default has been declared, and NSOF lacks the 25% of the notes required to assert CLO-

---

[1]  Capitalized terms used but not defined herein have the meanings given in the governing indenture (the "Indenture").  HCLOF filed a copy of the Indenture with its motion to intervene. *See* Exhibit A to the Declaration of Uri A. Itkin, ECF No. 45 (the "Itkin Declaration" or "Itkin Decl.").

related claims against third parties.  Thus, the claims against Acis, Brigade, and Mr. Terry are barred by the Indenture's no-action clause and fail as a matter of law.

NSOF's claims against U.S. Bank fail for largely the same reasons.  Because no Event of Default has been declared (and NSOF lacks the requisite 51% holdings to unilaterally declare one anyway), U.S. Bank owes no fiduciary or other non-ministerial duties to NSOF.  Yet, NSOF needs those duties to be triggered in order to support its claims against U.S. Bank for "mismanaging" the CLO.  There is thus no way for NSOF to succeed on any of its claims.

Although its claims are illegitimate, the costs of NSOF's lawsuit are real.  In May 2021, all of the senior notes in the CLO were redeemed in full at HCLOF's direction.  The remaining cash — totaling approximately $18 million — was slated to be distributed to the CLO's remaining noteholders, including, principally, to HCLOF, which owns 87% of the remaining notes.  But because of this lawsuit, none of those funds have been distributed.  Instead, they are being held back and used by Acis and U.S. Bank to defend themselves against NSOF's meritless claims.  This unnecessary waste is exactly what the Indenture was designed to prevent.

In sum, because NSOF's claims utterly lack merit and violate crucial binding contractual safeguards in the Indenture, the Court should dismiss the Complaint with prejudice.[2]

## **RELEVANT FACTS**

### I.    **THE ORIGINS OF THIS ACTION**

NSOF is managed and controlled by NexPoint Advisors, L.P., which in turn is owned and controlled by Mr. Dondero.  *See In re Highland Cap. Mgmt., L.P.*, No. 19-34054-SGJ11, 2021

---

[2]  NSOF claimed in its pre-motion letters that HCLOF is "colluding" with defendants against NSOF.  ECF No. 58 at p. 3.  This is baseless nonsense.  Aside from coordinating with the defendants, at the Court's instruction, to avoid duplicating arguments, the desire HCLOF shares with the defendants for an expeditious release of the held-back funds and prevention of value-destructive and meritless litigation is based on common sense, not collusion.

WL 3418657, at *9 n.68 (Bankr. N.D. Tex. Aug. 4, 2021).  Until January 2020, Mr. Dondero

was the CEO of Highland Capital Management, L.P. ("HCMLP").  Acis was founded as a

subsidiary of HCMLP, and managed HCMLP's portfolio of collateralized loan obligations,

including ACIS-6.  Mr. Terry was employed by Acis and HCMLP until 2016, when Mr.

Dondero terminated him.  *See In re Acis Capital Mgmt., L.P.*, Case No. 18-30264-sgj, 2019 WL

417149, at *4 (Bankr. N.D. Tex. Jan. 31, 2019).  Mr. Terry subsequently received a multi-million

dollar arbitration award against Acis, but, instead of paying it, Mr. Dondero, through his proxies,

"orchestrated a systemic transfer of value away from" Acis.  *Id.* at *4, *8, *12.  To prevent this,

Mr. Terry filed an involuntary bankruptcy petition against Acis, which ultimately led to the

appointment of a trustee and the transfer of Acis and its CLO management business to Mr. Terry.

*See id.* at *9-10.  Acis subsequently retained Brigade as a sub-advisor to the CLO.  The Acis

bankruptcy was "astonishingly contentious," with Mr. Dondero, directly and through proxies,

litigating and appealing nearly every issue raised in the case to exact revenge against Mr. Terry.

*See id.* at *2.

Similar scorched-earth litigation tactics ultimately resulted in HCMLP filing for

bankruptcy as well.  *See In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11

(Bankr. N.D. Tex.).  During the HCMLP bankruptcy, Mr. Dondero was again ousted from

control and an independent board was appointed.  True to form, after his loss of control, Mr.

Dondero launched a coordinated litigation crusade, directly and through his proxies, including

NSOF, against HCMLP and its court-appointed management.  This led to the bankruptcy court

finding that Mr. Dondero was using litigation to "harass" HCMLP to prevent a successful

reorganization and ultimately to "burn down the place."  *See* Order (i) Confirming the Fifth

Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii)

Granting Related Relief, *In re Highland Capital Management, L.P.*, Case No. 19-34054-sgj11, at 55-57 (Bankr. N.D. Tex. Feb. 22, 2021), ECF No. 1943 (the "HCMLP Confirmation Order").

## II.    THE ACIS-6 CLO

ACIS-6 was created in 2015 to invest in high yield corporate loans.  The loans were acquired by ACIS-6, which issued Secured and Subordinated Notes (collectively, the "Notes") which were collateralized by those loans.  The Notes issued to investors were administered by U.S. Bank, as trustee, and the loan collateral was managed by Acis, as portfolio manager.  Mr. Terry and Brigade are Acis's principal and sub-adviser, respectively (Acis, Mr. Terry, and Brigade are collectively referred to in the Complaint as the "RIA Defendants").  *See* SAC ¶¶ 2-5, 47-49.

The CLO, which comprises two limited liability entities incorporated in the Cayman Islands and Delaware, is a creature of contract.  The Indenture sets forth the rights and obligations of the trustee, the Noteholders, and the CLO itself with respect to the Notes and the securitized loans.  Acis's rights and obligations as the portfolio manager are set forth in the Portfolio Management Agreement ("PMA").  HCLOF filed a copy of the PMA in connection with its motion to intervene.  *See* Itkin Decl. Ex. B.

Currently, the Subordinated Notes are the only class of ACIS-6 Notes outstanding.  *See* Itkin Decl. ¶ 6; Ex. C.  This makes the Subordinated Notes the "Controlling Class" under the Indenture:

> Controlling Class:  [means] the Subordinated Notes, if there are no Class A Notes, Class B Notes, Class C Notes, Class D Notes or Class E Notes Outstanding.

Indenture § 1.1 at p. 17 (Definition of Controlling Class).  This is significant because holders of the Controlling Class are the holders of the Notes that can declare and enforce defaults related to the CLO.  In turn, the Controlling Class holders must meet the minimum ownership thresholds to

4

do so.  As shown below, HCLOF meets those thresholds; NSOF does not.

HCLOF holds 87% of the Subordinated Notes.  *See* Itkin Decl. ¶ 2.[3]  NSOF, by contrast,

holds just 13% of the Subordinated Notes.  *See* SAC ¶ 38.  Specifically, NSOF allegedly holds

$7.5 million of the approximately $59.9 million total amount of Subordinated Notes issued by

the CLO.  *See id.*; *see also* Indenture § 2.3.

## III.    THE APPLICABLE INDENTURE PROVISIONS

The Indenture lists various circumstances that constitute an Event of Default.  *See*

Indenture §§ 5.1-5.8.  These circumstances include the CLO's (or the Issuer's) breach of any

material agreement in the Indenture that has continued for 30 days after notice of the Issuer's

breach by certain parties, including a majority of the "Controlling Class."  *See id.* § 5.1(d).

Notably, however, the "failure to meet" any "Collateral Quality Test" is not an Event of Default.

*See id.*

The Indenture also provides for certain changes in rights and remedies when an Event of

Default occurs and is continuing.  Among other things, these changes include triggering the

trustee's "prudent person" duties.  *See id.* § 6.1(b).

Notably, a supermajority of Noteholders with over 66.7% of the Controlling Class have

the ability, in their sole discretion, to waive an Event of Default.  *See id.* § 5.14.  The waiver is

binding on "the Holders of all the Notes."  *Id.*

NSOF has not pleaded that an Event of Default has occurred, and no Event of Default has

been declared to date.  Even if an Event of Default had been declared, HCLOF, which holds

more than the required 66.7% of the Controlling Class, can waive any such Event of Default on

---

[3]  HCMLP is directly and indirectly HCLOF's largest shareholder and, through another entity, acts as its portfolio manager and adviser in conjunction with its Guernsey-based board of directors.

behalf of all Noteholders.

The Indenture also contains a customary no-action clause.  *See id.* § 5.8.  In simple terms, the no-action clause bars CLO-related actions by Noteholders holding less than 25% of the Controlling Class of the Notes:

> No Holder of any Note shall have any right to institute any Proceedings, judicial or otherwise, with respect to this Indenture . . . or for any other remedy hereunder, unless: (a) such Holder has previously given to the Trustee written notice of an Event of Default; (b) the Holders of not less than 25% of the then Aggregate Outstanding Amount of the Notes of the Controlling Class shall have made written request to the Trustee to institute Proceedings . . . (c) the Trustee for 30 days after its receipt of such notice . . . has failed to institute any such Proceeding; and (d) no direction inconsistent with such written request has been given to the Trustee during such 30 day period by a Majority of the Controlling Class.

*Id.*  HCLOF, as the holder of 87% of the Subordinated Notes, is the only party that can satisfy the no-action clause.  NSOF cannot.

NSOF also cannot sue under or in connection with the PMA.  The PMA was entered into between Acis, as portfolio manager, and ACIS-6, the CLO.  ACIS-6 then expressly assigned and pledged its rights under the PMA to U.S. Bank, the trustee, as part of the trust estate.  *See Id.* at p. 9 (Granting Clause); *see also id.* § 15.1(a).  This assignment explicitly includes "the right to give all notices of termination and to take any legal action upon the breach of an obligation of the Portfolio Manager [*i.e.*, Acis] thereunder [*i.e.*, under the PMA], including the commencement, conduct and consummation of proceedings at law or in equity."  *Id.* § 15.1(a)(ii).

Critically, Section 15.1 of the Indenture explicitly prohibits the trustee from exercising any of ACIS-6's rights under the PMA, including the right to enforce Acis's breaches of the PMA, before an Event of Default occurs and after it is cured or waived:

> [N]otwithstanding anything herein to the contrary, the Trustee shall not have the authority to exercise any of the rights set forth in (i) through (iv) above or that may otherwise arise as a result of the Grant until the occurrence of an Event of Default hereunder and such authority shall terminate at such time, if any, as such Event of Default is cured or waived.

*Id.*

Consistent with these provisions, the PMA expressly provides that while the trustee is a third-party beneficiary of the PMA, *none* of the Noteholders are:

> Other than as provided below, no party, including any Holder of Notes, is a third party beneficiary of this Agreement.  The parties hereby acknowledge[] and agree[] that the Trustee will be a third-party beneficiary of this Agreement.

PMA § 31.

In sum total, Noteholders can only sue the trustee for non-ministerial duties if they declare an Event of Default, and they can only sue Acis if they declare an Event of Default and comply with the no-action clause.  NSOF, as a 13% holder of the Notes, can do neither.

## IV.   NSOF'S ALLEGATIONS IN THE COMPLAINT

In the Complaint, NSOF asserts that defendants have "mismanaged" the CLO and have harmed the CLO purportedly by causing the CLO to suffer losses.  *See, e.g.*, SAC at pp. 1-2, ¶¶ 81, 174, 209.  More specifically, NSOF claims that Acis overcharged the CLO for its fees and expenses.  *See id.* ¶¶ 27-30, 61, 149, 151.  NSOF also claims that Acis caused ACIS-6 to buy collateral assets that failed various Collateral Quality Tests in the Indenture and were otherwise non-compliant with the Indenture and PMA, including best execution standards.  *See id.* ¶¶ 35, 67, 78-80, 84-94, 101-02, 108 & n.8, 111-15, 119-22.  Based on these alleged violations of the Indenture and PMA, NSOF asserts claims against Acis, Mr. Terry, and Brigade for breach of contract, violation of the Investment Advisers Act of 1940 (the "Advisers Act"), and various common law claims, including breach of fiduciary duty, negligence, and conversion.

With respect to U.S. Bank, NSOF alleges that it allowed Acis's purported mismanagement.  *See id.* ¶¶ 62, 111-116, 118-19, 123-26.  Based on these allegations, NSOF asserts claims against U.S. Bank for violation of the Trust Indenture Act of 1939 (the "TIA"), breach of fiduciary duty, and negligence.

## V.      HCLOF'S INTERVENTION IN THIS CASE

Because this lawsuit has caused Acis and U.S. Bank to improperly withhold

approximately $18 million in proceeds owed to the holders of Subordinated Notes, including,

principally, HCLOF, HCLOF moved to intervene in this action on November 24, 2021 to seek

dismissal of the Complaint.  *See* ECF No. 44.  On December 7, 2021, the Court granted

HCLOF's motion to intervene in this action as of right.  *See* ECF No. 49.  Following the January

4, 2022 pre-motion conference, the Court permitted HCLOF and the other defendants to file

motions to dismiss.  *See* ECF No. 65.[4]

## ARGUMENT

Rule 12(b)(1) requires dismissal for lack of subject matter jurisdiction where, as here,

plaintiff does not have standing to assert claims barred by a no-action clause.  *See In re Trusts*

*Established under the Pooling and Servicing Agreements Relating to the Wachovia Bank*

*Commercial Mortg. Tr. Comm. Mortg. Pass-Through Certificates, Series 2007-C30*, 375 F.

Supp. 3d 441, 446, 454 (S.D.N.Y. 2019).  Rule 12(b)(6) requires dismissal where, as here, the

complaint fails to "contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Ibrahim v. Pena*,

No. 16-cv-7774 (VEC), 2017 WL 3601246, at *1 (S.D.N.Y. Aug. 21, 2017) ("Factual allegations

---

[4]  Based on these Orders, HCLOF has the right to move to dismiss this action.  Indeed, HCLOF
has shown that NSOF's claims directly violate HCLOF's contractual right to be free from these
actions, and the violations come at a huge cost to HCLOF.  *See* ECF No. 44.  Moreover, federal
courts permit parties to intervene in an action for the purpose of moving to dismiss the case.  *See,
e.g.*, *MGM Glob. Resorts Dev., LLC v. United States Dep't of the Interior*, No. CV 19-2377
(RC), 2020 WL 5545496, at *1 (D.D.C. Sept. 16, 2020) (granting limited intervention to file a
motion to dismiss); *In re Chowaiki & Co. Fine Art Ltd.*, 593 B.R. 699, 706 n.1 (Bankr. S.D.N.Y.
2018) (noting that the court granted a motion to intervene "for the limited purpose of supporting
the motion to dismiss"); *Manier v. L'Oreal USA, Inc.*, No. 2:16-CV-06886-ODW-KS, 2017 WL
59066, at *3 (C.D. Cal. Jan. 4, 2017) (granting motion to intervene for the purpose of moving to
dismiss or transfer the case).

must be enough to raise a right to relief above the speculative level and courts are not bound to accept as true a legal conclusion couched as a factual allegation." (cleaned up)).  The court may consider "the facts alleged in the complaint," "documents incorporated by reference," and documents "'integral' to the complaint."  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).

## I.     THE NO-ACTION CLAUSE BARS ANY CLAIMS AGAINST THE RIA DEFENDANTS

All of NSOF's claims against Acis, Brigade, and Mr. Terry are barred as a matter of law because NSOF has not satisfied, and cannot satisfy, the no-action clause.

A no-action clause "prevents minority securityholders from pursuing litigation against the issuer, in favor of a single action initiated by a Trustee upon request of a majority of the securityholders."  *Quadrant Structured Prods. Co., Ltd. v. Vertin*, 23 N.Y.3d 549, 565 (2014). The "primary purpose of a no-action clause" is to protect against "the expense involved in defending [individual] lawsuits that are either frivolous or otherwise not in the economic interest of the corporation and its creditors."  *Id.* (cleaned up).  The no-action clause "achieves these goals 'by delegating the right to bring a suit enforcing rights of bondholders to the trustee, or to the holders of a substantial amount of bonds, and by delegating to the trustee the right to prosecute such a suit in the first instance.'"  *Id*. (quoting *Feldbaum v. McCrory Corp.*, Civ. A. No. 11866, 1992 WL 119095, at *6 (Del. Ch. June 2, 1992)).

Courts in this District routinely dismiss suits for failure to comply with no-action clauses. *See, e.g.*, *In re Trusts Established under the Pooling and Servicing Agreements Relating to the Wachovia Bank Commercial Mortg. Tr. Comm. Mortg. Pass-Through Certificates, Series 2007-C30*, 375 F. Supp. 3d at 454 (dismissing cross-claim against special servicer for failure to comply with no-action clause); *Waxman v. Cliffs Nat. Res. Inc.*, 222 F. Supp. 3d 281, 294

(S.D.N.Y. 2016) (dismissing state law claims against issuer for failure to comply with a no

action clause); *House of Eur. Funding I., Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, No. 13 Civ.

519(RJS), 2014 WL 1383703, at *17-18 (S.D.N.Y. Mar. 31, 2014) (no-action clause barred

claims against collateral manager under related collateral management agreement).

NSOF's failure to comply with the no-action clause is beyond dispute.  NSOF does not

hold the requisite 25% of the Controlling Class — it holds only 13% — and no Event of Default

has been declared (even if declared, it could be waived by HCLOF, in its sole discretion).  *See*

Indenture §§ 5.1, 5.8(a), 5.14.  Nor has NSOF satisfied — or attempted to satisfy — any of the

other no-action clause requirements, including providing U.S. Bank the requisite direction and

adequate indemnity to sue Acis.  *Id.* § 5.8(b)-(c).

NSOF simply cannot satisfy any of these provisions.  HCLOF holds 87% of the

Controlling Class — the outstanding ACIS-6 Subordinated Notes — and therefore has the

exclusive right to satisfy the no-action clause.  *Id.* § 5.8(a).[5]  By the same token, this also means

that HCLOF has the right to be free from unwanted nuisance suits by NSOF — a core purpose of

the no-action clause.  *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.

Supp. 2d 162, 184 (S.D.N.Y. 2011) (no-action clauses protect against the "expense of litigating

an action brought by a small group of certificateholders that most investors would consider not to

be in their collective economic interest").  By causing Acis and U.S. Bank to hold back and tap

---

[5]  Because HCLOF holds 87% of the outstanding Notes, NSOF cannot assert derivative standing
under Cayman law.  Under Cayman law, the "fraud on the minority" exception to the general
rule that derivative standing does not exist applies only if the defendants in this action (*i.e.*, Acis
and U.S. Bank) controlled a majority of the Notes with voting rights.  *See Zohar CDO 2003-1,
Ltd. v. Patriarch Partners, LLC*, No. 17-cv-307(PKC), 2021 WL 4460547, at *13 (S.D.N.Y.
Sept. 29, 2021); *Winn v. Schafer*, 499 F. Supp. 2d 390, 398 (S.D.N.Y. 2007).  NSOF has not
alleged, and cannot allege, that Acis or U.S. Bank hold any Notes.

into $18 million of ACIS-6 funds that effectively belong to HCLOF, NSOF's meritless claims are inflicting the very harm that the no-action clause is designed to prevent.

NSOF cannot circumvent the no-action clause by shoehorning its flawed breach of contract claims into tort or baseless statutory claims. By NSOF's own admission, the Complaint arises out of the CLO agreements: "[t]he issue here is that . . . Defendants caused the Acis CLOs to buy and hold collateral that failed the risk parameters delineated in the Acis Indenture and the PMAs." SAC ¶ 78; *see also id.* ¶¶ 79-80, 99, 111-15, 119-20, 174 (same). To wit, all of the obligations that the RIA Defendants allegedly violated according to NSOF — collection of fees and management of the CLO collateral — arise under the PMA and the Indenture (which assigned the CLO's rights under the PMA to the trustee). *See, e.g.*, PMA §§ 3-4, 31; Indenture at p. 9; *see also id.* § 15.1. As a result, all of those claims are barred by the no-action clause.[6]

Indeed, it is the PMA that gives rise to Acis's duties as portfolio manager, and it is the CLO and U.S. Bank, as trustee after an Event of Default, that explicitly and unambiguously have the exclusive right to enforce those duties absent compliance with the no-action clause. PMA § 31; Indenture at p. 9 (Granting Clause), § 15.1; *see Ace Sec. Corp. v. DB Structured Prods., Inc.*, 52 Misc. 3d 343, 349 (Sup. Ct. N.Y. Cty. 2016) (finding that a residential mortgage-backed securities trustee had the right to enforce breaches of a related agreement assigned to the trustee for the benefit of the noteholders), *aff'd sub nom. U.S. Bank Nat'l Ass'n v. UBS Real Est. Sec., Inc.*, 177 A.D.3d 493 (1st Dep't 2019), *leave to appeal dismissed*, 35 N.Y.3d 1063 (2020); *Fed. Housing Fin. Agency v. Novation Cos., Inc.*, No. 650693/2013, 2017 WL 6025527, at *2 (Sup.

---

[6] For the same reasons, NSOF's tort claims are impermissibly duplicative of its contract claim. *See Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.*, No. 17 CIV. 241 (ER), 2018 WL 1605985, at *10 (S.D.N.Y. Mar. 29, 2018) (dismissing tort claims as "duplicative of [the plaintiff's] contractual claim to the extent they allege duties that are not independent of the [contract]").

Ct. N.Y. Cty. Nov. 30, 2017) (no-action clause barred certificateholders from asserting claims for breach of a related agreement assigned to the trustee for the benefit of the noteholders).[7]

Since the only way for any Noteholder to sue Acis in place of the trustee — as NSOF is trying to do here — is by first satisfying the no-action clause, NSOF's failure and incurable inability to comply with the no-action clause is fatal to its claims against Acis, Mr. Terry, and Brigade.  *See STS Partners Fund, LP v. Deutsche Bank Sec., Inc.*, 149 A.D.3d 667, 668 (1st Dep't 2017) (affirming dismissal "based on the no-action clause" because, just like here, the "plaintiffs' claims all arise out of the trust agreements").  Accordingly, NSOF's claims against Acis, Mr. Terry, and Brigade should be dismissed.

## II.   NSOF'S CLAIMS AGAINST U.S. BANK ARE ALSO BARRED

While NSOF's claims against U.S. Bank may not be barred by the no-action clause, they are still subject to dismissal as a matter of law because, as noted above, NSOF does not plead that an Event of Default has occurred, no Event of Default has been actually declared, and NSOF has no ability to declare an Event of Default.  Indeed, the right to control declaring and waiving the applicable Events of Default is reserved to the majority (51%) and supermajority (67%) of the Noteholders.  *See* Indenture §§ 5.1(d), 5.14.  These limitations, like the no-action clause, protect the majority Noteholders from having their scheduled distributions from the CLO be instead used to fund the assertion of and defense against unpopular, minority claims.  Needless to say, NSOF cannot satisfy these limitations, as only HCLOF can.

---

[7] The assignment underscores the dispositive fact that Acis owes duties to the CLO, not to any individual Noteholder, like NSOF.  *See, e.g.*, *Goldstein v. SEC*, 451 F.3d 873, 879-80 (D.C. Cir. 2006); *EC v. Northshore Asset Mgmt.*, No. 05 Civ. 2192(WHP), 2008 WL 1968299, at *6 (S.D.N.Y. May 5, 2008) (dismissing a claim that an investment adviser owed a duty to a fund's investors rather than just the fund).

These limitations are fatal to NSOF's claims against U.S. Bank.  Absent an Event of Default, U.S. Bank's duties are ministerial:  namely (i) to avoid conflicts of interest; and (ii) to perform all basic, non-discretionary tasks with due care.  *See* Indenture § 6.1(a); *see also Elliot Assocs. v. J Henry Schroeder Bank & Trust Co.*, 838 F.2d 66, 71 (2d Cir. 1988).  Absent an Event of Default, U.S. Bank owes no fiduciary or "prudent person" duties.  Indenture § 6.1(a); *see also Pacific Life Ins. Co. v. Bank of N.Y. Mellon*, No. 17 Civ. 1388 (KPF), 2018 WL 1382105, at *12 (S.D.N.Y. Mar. 16, 2018); *AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 11 N.Y.3d 146, 156-57 (2008).[8]  And, critically, absent an Event of Default, U.S. Bank has no "authority" to police Acis's management of the CLO.  Indenture § 15.1(a).

The Complaint does not come anywhere near plausibly alleging that either of U.S. Bank's ministerial duties were violated.  While the Complaint alleges that U.S. Bank negligently failed to monitor Acis and the loan collateral, these are not among the duties owed by U.S. Bank. *See, e.g.*, Indenture §§ 6.3(m), 6.3(o).  And the conclusory allegation that U.S. Bank failed to avoid conflicts of interest by failing to oversee Acis is exactly the kind of "bald assertion[] of conflict" that fails to state a claim.  *See Elliot Assocs.*, 838 F.2d at 70.  For these reasons, there is absolutely no factual or legal basis to sustain any of NSOF's claims against U.S. Bank.

---

[8]  As U.S. Bank explains in its motion to dismiss, the TIA does not apply here because the Notes were sold in a private offering.  *See Tennenbaum Living Tr. v. TGLT S.A.*, No. 20-cv-6938, 2021 WL 3863117, at *4-5 (S.D.N.Y. Aug. 30, 2021) (holding that a private debt offering was not a "qualified indenture" subject to the Trust Indenture Act).  Moreover, the TIA does not help NSOF here.  The TIA only requires an indenture trustee to provide "notice of all defaults" — "as such term is defined in [the] indenture" — "known to the trustee."  15 U.S.C. § 77ooo(b)-(c); *see* SAC ¶ 197.  But NSOF fails to allege any defaults within the meaning of the Indenture, nor could it so allege because, as explained above, NSOF would need to hold more than 25% of the Subordinated Notes to declare an Event of Default, and any such Event of Default could be unilaterally waived by HCLOF.

**III.    THE COURT SHOULD EXERCISE ITS JURISDICTION TO DISMISS ALL CLAIMS IN THE CASE**

As explained by the other defendants, the Court has federal question jurisdiction over the Advisers Act and TIA claims and jurisdiction under the Edge Act for all claims against the trustee.  *See* 28 U.S.C. § 1331; 12 U.S.C. § 632; *U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 16-CV-8507 (AJN), 2019 WL 9511402, at *2 (S.D.N.Y. Sept. 16, 2019) (holding that the court had Edge Act jurisdiction over a case involving a Cayman Islands CDO with U.S. Bank as trustee), *aff'd*, 826 F. App'x 115 (2d Cir. 2020).  Because all of NSOF's claims are equally meritless, the Court should exercise supplemental jurisdiction to resolve — and dismiss — all of NSOF's claims for the sake of efficiency and to prevent further harm to HCLOF.  *See* 28 U.S.C. § 1367; *Am. Int'l Grp., Inc. v. Bank of Am. Corp.*, No. 11 CIV. 6212 BSJ, 2011 WL 6778473, at *2 (S.D.N.Y. Dec. 20, 2011) (exercising supplemental jurisdiction in an Edge Act case).

There is much to be gained in the way of fairness and judicial efficiency by exercising supplemental jurisdiction over all of NSOF's claims.  HCLOF is harmed each day that NSOF's meritless claims remain outstanding, as they prolong and exacerbate the holdback and waste of distributions otherwise due to HCLOF.  *See Mauro v. S. New England Telecomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000) (the exercise of supplemental jurisdiction should further "fairness" and "judicial efficiency").  Leaving some of NSOF's meritless claims to be litigated in another court would only deplete and delay the distributions owed to HCLOF.

Moreover, exercising supplemental jurisdiction over NSOF's remaining claims would help put an end to its exploitation of the courts.  This is yet another chapter in Mr. Dondero's litigation campaign to avenge his loss of control of Acis and HCMLP, and is at least the third action through which he and his proxies have asserted virtually identical claims against the defendants.  This coordinated campaign, which is described in more detail in U.S. Bank's and

14

Acis's complaint in the related action captioned *U.S. Bank N.A., et al. v. The Charitable Donor Advised Fund L.P., et al.*, No. 21-cv-11059 (S.D.N.Y.), has already resulted in sanctions of Mr. Dondero and his counsel by the Texas bankruptcy court.  *See In re Highland Cap. Mgmt., L.P.*, 2021 WL 3418657, at *12 (holding Mr. Dondero, his counsel, and others in contempt for "*wholly frivolous*" litigation against HCMLP's independent management in violation of a protective order) (emphasis in original); *see also Acis*, 2019 WL 417149, at *2; HCMLP Confirmation Order, at 55-57.

Judicial economy and fairness therefore warrant this Court's exercise of supplemental jurisdiction to resolve and, respectfully, dismiss all of NSOF's claims once and for all.

## IV.    NSOF SHOULD BEAR THE FEES AND EXPENSES OF THIS ACTION

Because NSOF's claims arise from spite rather than any actual merit, there is no reason that the CLO's Noteholders should have to foot the bill for the defense of this action.  The nearly $18 million of CLO funds that Acis and U.S. Bank have held back are being depleted with each passing day, leaving less for Noteholders, including, principally, HCLOF.  In other words, even when NSOF's claims are dismissed, the damage to HCLOF will already be done.

This should not stand.  The costs and expenses of defending this case, including by HCLOF to protect its distributions, should be borne exclusively by NSOF — out of its 13% portion of the withheld CLO funds — and not by HCLOF or any other party.  Accordingly, HCLOF respectfully requests an opportunity to brief the apportionment of legal expenses, including attorneys' fees, after the Court resolves the motions to dismiss the Complaint.

## <u>CONCLUSION</u>

For all these reasons, the Court should dismiss the Complaint with prejudice and grant

such further relief as the Court deems just and proper.

Dated:  New York, New York         Respectfully submitted,
         January 27, 2022

KASOWITZ BENSON TORRES LLP

By:   */s/ Uri A. Itkin*
       Uri A. Itkin
       Jill L. Forster
       Andrew W. Breland

1633 Broadway
New York, New York 10019
Telephone:  (212) 506-1700

PACHULSKI STANG ZIEHL & JONES LLP

John A. Morris
Gregory V. Demo
780 Third Avenue, 34th Floor
New York, New York 10017
Tel.  (212) 561-7700

*Attorneys for Highland CLO Funding, Ltd.*