**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| NEXPOINT STRATEGIC OPPORTUNITIES FUND,<br><br>    Plaintiff,<br><br> v.<br><br>ACIS CAPITAL MANAGEMENT, L.P., U.S. BANK, N.A., JOSHUA N. TERRY, BRIGADE CAPITAL MANAGEMENT, L.P.,<br><br>    Defendants. | Docket No.: 1:21-cv-04384-GHW |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT U.S. BANK, NATIONAL ASSOCIATION'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT .......................................................................................................... 8

I.      STANDARD OF REVIEW ........................................................................... 8

II.     PLAINTIFF'S CLAIM FOR BREACH OF THE TIA SHOULD BE DISMISSED BECAUSE THE ACIS INDENTURE IS NOT SUBJECT TO THE TIA ...................... 9

III.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST U.S. BANK SHOULD BE DISMISSED.................................................................. 12

      A.    U.S. Bank Owed No Fiduciary Duty to Plaintiff. ................................. 12

      B.    U.S. Bank's Extra-Contractual Duties to Avoid Conflicts of Interest and Perform All Non-Discretionary, Ministerial Tasks With Due Care Are Not Fiduciary Duties.................................................................... 14

IV.    PLAINTIFF'S NEGLIGENCE CLAIM AGAINST U.S. BANK SHOULD BE DISMISSED ............................................................................................... 15

V.     THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE GRANTING LEAVE TO AMEND WOULD BE FUTILE.................................................................................................... 19

CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AG Cap. Funding Partners, L.P. v. State St. Bank & Trust Co.*,
 11 N.Y.3d 146 (2008) .......................................................................................... 12, 15

*AG Oncon, LLC v. Ligand Pharm., Inc, LLC*,
 No. 2018-0556-JTL, 2019 Del. Ch. LEXIS 187 (Del. Ch. May 24, 2019) ........................... 11

*AG Oncon, LLC v. Ligand Pharm., Inc, LLC*,
 No. 300, 2019, 2020 Del. LEXIS 11 (Del. Jan. 10, 2020)...................................................... 11

*Alexandra Glob. Master Fund, Ltd. v. Ikon Office Sols., Inc.*,
 No. 06 Civ. 5383, 2007 U.S. Dist. LEXIS 52546 (S.D.N.Y. July 19, 2007) ........................... 9

*Argonaut P'ship., L.P. v. Bankers Tr. Co.*,
 Nos. 96 Civ. 1970, 00 Civ. 4244, 2001 U.S. Dist. LEXIS 7100
 (S.D.N.Y. May 30, 2001)..................................................................................... 18, 19

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................. 8

*Bakal v. U.S. Bank Nat'l Ass'n*,
 No. 15-cv-6976, 2018 U.S. Dist. LEXIS 56950 (S.D.N.Y. Apr. 2, 2018) ............................. 14

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................. 8

*Blackrock Allocation Target Shares v. Bank of N.Y. Mellon*,
 180 F. Supp. 3d 246 (S.D.N.Y. 2016)............................................................................ 17

*Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*,
 247 F. Supp. 3d 377 (S.D.N.Y. 2017)............................................................................ 14

*CFIP Master Fund, Ltd. v. Citibank, Nat'l Ass'n*,
 738 F. Supp. 2d 450 (S.D.N.Y. 2010)............................................................................ 17

*CNH Diversified Opps. Master Acct., L.P. v. Cleveland Unlimited, Inc.*,
 36 N.Y.3d 1 (2020) ................................................................................................. 12

*DiFolco v. MSNBC Cable L.L.C.*,
 622 F.3d 104 (2d Cir. 2010)..................................................................................... 8-9

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
 837 F. Supp. 2d 162 (S.D.N.Y. 2011)............................................................................ 17

# TABLE OF AUTHORITIES

Page

*Elliot Assocs. v. J Henry Schroeder Bank & Tr. Co.*,
  838 F.2d 66 (2d Cir. 1988) ................................................................ 12, 15

*Hildene Cap. Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*,
  No. 11 Civ. 5832, 2012 U.S. Dist. LEXIS 115942 (S.D.N.Y. Aug. 15, 2012) ...................... 13

*In re E.F. Hutton Southwest Props. II, Ltd.*,
  953 F.2d 963 (5th Cir. 1992) ................................................................ 16

*McCarthy v. Olin Corp.*,
  119 F.3d 148 (2d Cir. 1997) ................................................................. 15

*Meckel v. Cont'l Res. Co.*,
  758 F.2d 811 (2d Cir. 1985) ................................................................. 13

*Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*,
  No. 12 Civ. 7581, 2013 U.S. Dist. LEXIS 55729 (S.D.N.Y. Apr. 17, 2013) ............. 14, 15, 18

*N.Y. State Med. Care Facilities Fin. Agency v. Bank of Tokyo Tr. Co.*,
  163 Misc. 2d 551, 621, N.Y.S.2d 466 (Sup. Ct. N.Y. Cty. 1994) ........................... 17

*Office Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*,
  -- F. Supp. 3d --, 2021 WL 2403088, at *10 (S.D.N.Y. June 11, 2021) (Woods, J.) ............. 19

*Phoenix Light SF Ltd. v. Bank of N.Y. Mellon.*,
  No. 14-CV-10104, 2015 U.S. Dist. LEXIS 131206 (S.D.N.Y. Sept. 29, 2015) ...................... 17

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*,
  172 F. Supp. 3d 700 (S.D.N.Y. 2016) ........................................................ 15, 17, 18

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  No. 14-CV-4394, 2016 U.S. Dist. LEXIS 12982 (S.D.N.Y. Feb. 3, 2016) ........................... 16

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
  109 F. Supp. 3d 587 (S.D.N.Y. 2015) ........................................................ 9, 15-16

*Tennenbaum Living Trust v. TGLT S.A.*,
  No. 20 Civ. 6938, 2021 U.S. Dist. LEXIS 164224 (S.D.N.Y. Aug. 30, 2021) ........... 10-11, 12

*Trafalgar Power, Inc. v. U.S. Bank Nat'l Ass'n*,
  No. 5:05-CV-1533, 2012 U.S. Dist. LEXIS 21275 (N.D.N.Y. Feb. 21, 2012) ...................... 13

# TABLE OF AUTHORITIES

Page

**Statutory Authorities**

15 U.S.C. § 77aaa-ooo ................................................................................................ 2

15 U.S.C. § 77ccc(9) ............................................................................................... 9-10

15 U.S.C. § 77ccc(10) ............................................................................................... 10

15 U.S.C. § 77ccc(11) ............................................................................................... 10

15 U.S.C. § 77d(a)(2) ................................................................................................ 10

15 U.S.C. § 77ddd(b) ................................................................................................ 10

15 U.S.C. § 77eee ..................................................................................................... 10

15 U.S.C. § 77fff ....................................................................................................... 10

15 U.S.C. § 77ooo ...................................................................................................... 9

15 U.S.C. § 77ooo(a) ............................................................................................ 10-11

15 U.S.C. § 77ppp ...................................................................................................... 9

15 U.S.C. § 77ppp(b) ................................................................................................ 11

**Rules and Regulations**

17 C.F.R. §230.144A ................................................................................................ 11

17 C.F.R. §230.901 ................................................................................................... 11

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 8

**Treatises**

2 Anna T. Pinedo & Bradley Berman, *Federal Securities Act of 1933* § 8.07
(2021) ..................................................................................................................... 10

7 Mark D. Kaufman, *Business Organizations with Tax Planning* §98.04
(rev. ed. 2021) ....................................................................................................... 10

Defendant U.S. Bank, N.A. ("U.S. Bank" or the "Trustee") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Second Amended Complaint (ECF No. 42) (the "Second Amended Complaint" or "SAC")[1] of Plaintiff NexPoint Strategic Opportunities Fund ("NexPoint" or "Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## PRELIMINARY STATEMENT

The Second Amended Complaint is the latest chapter in a long-running dispute between James Dondero, who controls Plaintiff, a minority noteholder in the collateralized loan obligation Acis CLO 2015-6 Ltd. (the "Acis CLO"), and defendants Joshua Terry and Acis Capital Management, L.P ("ACM" or the "Portfolio Manager"), which manages the Acis CLO. The crux of the Second Amended Complaint is the allegation that the Portfolio Manager mismanaged the Acis CLO, enriching itself at the expense of the noteholders of the Acis CLO, including Plaintiff.  Regardless of whether these the allegations have any merit, U.S. Bank had no role in the management of the Acis CLO, and Plaintiff fails to plead a cognizable claim against U.S. Bank.  U.S. Bank is the trustee of the Acis CLO under the indenture governing the rights and obligations of noteholders of the Acis CLO (the "Acis Indenture").  As trustee, U.S. Bank has ministerial responsibilities with respect to the Acis CLO and does not have any obligations or responsibilities concerning the management of the Acis CLO.  The Second Amended Complaint has no well-pled allegations that U.S. Bank breached any of its duties under

---

[1]     The Second Amended Complaint is attached as Exhibit 1 to the Declaration of Mark D. Kotwick, dated January 27, 2022 (the "Kotwick Declaration").

[2]     To the extent applicable, U.S. Bank joins in and incorporates by reference arguments made by the other defendants and the intervenor in their respective motions to dismiss the SAC, including that the Court should retain jurisdiction over this action to adjudicate the non-federal claims alleged in the SAC even if it dismisses the federal claims under the Trust Indenture Act and the Investment Advisers Act.

the Acis Indenture, or otherwise has any responsibility for the harm alleged by Plaintiff.  As set forth below, none of the three causes of action alleged against U.S. Bank in the Second Amended Complaint state a legally cognizable claim.

First, Plaintiff asserts a breach of the Trust Indenture Act of 1939 (the "TIA"), 15 U.S.C. § 77aaa-ooo (Count Four), against U.S. Bank.  The TIA, however, does not apply to the Acis Indenture.  The notes issued pursuant to the Acis Indenture (the "Acis Notes") were part of a private offering and not registered with the SEC, and the Acis Indenture did not incorporate the TIA into its terms.  As a result, the Acis Indenture was exempt from the qualification requirements of the TIA, and Plaintiff has no claim for breach of the TIA with respect to the Acis CLO.

Second, Plaintiff asserts a claim of breach of fiduciary duty (Count Five) against U.S. Bank for purportedly permitting the Acis CLO to incur exorbitant expenses and fees and failing to ensure that the purchases and sales of collateral obligations by the Portfolio Manager satisfied the collateral quality tests in the Acis Indenture.  However, the law is clear that U.S. Bank's duties are limited to those set out in the Acis Indenture and that it has no general fiduciary duty running to Plaintiff.  Thus, the claim for breach of fiduciary duty should be dismissed.

Finally, Plaintiff asserts a claim of negligence (Count Six) against U.S. Bank. Plaintiff, however, fails to adequately allege a breach by U.S. Bank of its extra-contractual duties to perform ministerial duties with due care and to avoid conflicts of interest, and the Trustee otherwise had no duties with respect to the Acis CLO that could form the basis of a negligence claim.  Accordingly, the negligence claim against U.S. Bank should also be dismissed.

## STATEMENT OF FACTS[3]

### The Acis CLO Parties

U.S. Bank serves as Trustee for the Acis CLO pursuant to the Acis Indenture, dated as of April 16, 2015, among the Acis CLO, Acis CLO 2015-6 LLC and U.S. Bank, as Trustee. SAC ¶¶ 38, 40.[4]  ACM is the portfolio manager to the Acis CLO pursuant to a portfolio management agreement between ACM and the Acis CLO, dated as of April 16, 2005 (the "Acis PMA").[5]  Id. ¶¶ 21, 44.  Under the Acis Indenture and the Acis PMA, the Portfolio Manager is solely responsible for supervising and directing the investment and reinvestment of the assets of the Acis CLO.  Acis PMA (Ex. 3), § 3; Acis Indenture (Ex. 2), §§ 6.1, 12.  The Portfolio Manager appointed Brigade to serve as a sub-advisor to the Acis CLO.  SAC ¶ 47.  It is uncontested that Intervenor HCLOF holds the majority of the outstanding Acis Notes.  ECF No. 44 at 8.

### The Acis CLO

Collateralized loan obligations ("CLOs") such as the Acis CLO are a type of structured transaction that are usually comprised of a mixture of publicly available, floating rate, senior-secured debt instruments issued by corporations.  SAC ¶ 10. These debt instruments, or collateral obligations, are acquired by an entity known as a special purpose vehicle ("SPV") (in this case, the Acis CLO), and the purchased collateral obligations constitute the assets of the CLO.  Id. ¶ 11.  The SPV raises equity funds from one or more equity investors and raises

---

[3]   To avoid repetition, we summarize herein facts relevant to U.S. Bank and refer the Court to the motions to dismiss of defendants ACM and Brigade Capital Management, L.P. ("Brigade"), and intervenor Highland CLO Funding Ltd. ("HCLOF") for additional facts relevant to the Acis CLO.

[4]   The Acis Indenture is attached as Exhibit 2 to the Kotwick Declaration.

[5]   The Acis PMA is attached as Exhibit 3 to the Kotwick Declaration.

additional cash in the form of debt by issuing notes to third party investors in order to fund the SPV's purchases of these loans.  *Id.* ¶ 12.

The Acis CLO is an exempted company incorporated in the Cayman Islands with limited liability.  Acis Indenture (Ex. 2) at p. 1.  The Acis CLO issued the Acis Notes pursuant to the Acis Indenture in a private offering.  Acis Indenture (Ex. 2), § 2; *id.,* Ex. A1 (Form of Global Note); Ex. A2 (Form of [Regulation S] [Rule 144A] Global Subordinated Note).  The Acis Notes were not registered under the Securities Act of 1933, as amended (the "Securities Act").  *Id.*; *see also* Acis CLO Indenture (Ex. 2), § 2.6(i)(iii).  Between 2014 and 2016, NexPoint became a holder of a minority position of "Subordinated Notes" issued pursuant to the Acis Indenture.  SAC ¶ 38.

**The Acis Indenture**

There are no express duties or obligations on the part of the Trustee to monitor or supervise the Portfolio Manager or to approve the Portfolio Manager's investment decisions or particular trades.  To the contrary, any such duties or obligations are expressly disclaimed.  Pursuant to the Acis Indenture, the Trustee's duties are expressly limited to those set forth in the indenture: "[e]xcept during the continuance of an Event of Default … the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee ...." [6]  Acis Indenture (Ex. 2), § 6.1(a)(i).  Moreover, the Acis Indenture provides that "the Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Issuer or the Co-Issuer or the Portfolio Manager in accordance with this

---

[6]      Plaintiff does not allege that an Event of Default has occurred under the terms of the Acis Indenture.

Indenture." Acis Indenture (Ex. 2), § 6.1(c)(iii); *see also id.*, § 6.3(h) ("the Trustee shall not be liable for any action it takes or omits to take in good faith that it reasonably believes to be authorized or within its rights or powers hereunder").

Article 12 of the Acis Indenture governs the purchase and sale of Collateral Obligations[7] of the Acis CLO. With respect to the sale of Collateral Obligations held by the Acis CLO, Section 12.1 of the Acis Indenture provides that:

> … the Portfolio Manager on behalf of the Issuer may in writing direct the Trustee to sell and the Trustee (on behalf of the Issuer) shall sell in the manner directed by the Portfolio Manager any Collateral Obligation or Equity Security if such sale meets the requirements of any one of paragraphs (a) through (h) of this Section 12.1 (Sales of Collateral Obligations).

Acis Indenture (Ex. 2), § 12.1. Similarly, with respect to the purchase of Collateral Obligations, Section 12.2 of the Acis Indenture provides that:

> On any date during the Reinvestment Period, the Portfolio Manager on behalf of the Issuer may direct the Trustee to invest Principal Proceeds and accrued interest received with respect to any Collateral Obligation to the extent used to pay for accrued interest on additional Collateral Obligations in additional Collateral Obligations, and the Trustee shall invest such proceeds, if each of the conditions specified in this Section 12.2 (Purchase of Additional Collateral Obligations) and Section 12.3 (Conditions Applicable to All Sale and Purchase Transactions) are met….

Acis Indenture (Ex. 2), § 12.2.

In connection with the purchases of Collateral Obligations under Section 12.2, the Acis Indenture requires the Portfolio Manager to deliver to the Trustee a certificate "certifying that such purchase complies with this Section 12.2 (Purchase of Additional Collateral

---

[7]     A Collateral Obligation is "[a] debt obligation (including, but not limited to, interests in bank loans acquired by way of a sale or assignment, and high yield debt securities) or Participation Interest" owned by the Acis CLO. Acis Indenture (Ex. 2), § 1.1.

Obligations) and Section 12.3 (Conditions Applicable to All Sale and Purchase Transactions)." Acis Indenture (Ex. 2), § 12.2(d).  In receiving such certification, the Trustee can conclusively rely on the truth of the statements in the Portfolio Manager Certificate.  *Id.*, § 6.1(a)(ii) ("[T]he Trustee may conclusively rely, as to the truth of the statements and the correctness of the opinions expressed therein, upon certificates or opinions furnished to the Trustee and conforming to the requirements of this Indenture …").

  The Acis Indenture expressly disclaims any obligation on the part of the Trustee to verify or investigate the Portfolio Manager's statements that the Article 12 requirements are met when the Portfolio Manager directs the purchase or sale of a Collateral Obligation on behalf of the Acis CLO.  Acis Indenture (Ex. 2), § 6.3(i) ("[N]othing herein shall be construed to impose an obligation on the part of the Trustee to recalculate, evaluate or verify any report, certificate or information received from the Issuer or Portfolio Manager (unless and except to the extent otherwise expressly set forth herein…)"); *id.*, § 6.3(f) ("[T]he Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report (including any Accountants' Report), notice, request, direction, consent, order, note or other paper or document …").

  In sum, so long as the Portfolio Manager complies with the correct *form* of direction and certificates under the Acis Indenture -- and there is no allegation that it failed to do so -- the Trustee can conclusively rely on the *substance* of the direction and the truth of the statements of the Portfolio Manager without any obligation to verify or investigate whether the facts or matters contained in those statements are correct.  *Id.*, §§ 6.1(a)(ii), 6.3(i), 6.3(f).

  Plaintiff, throughout the Second Amended Complaint, makes various erroneous and conclusory allegations that U.S. Bank failed to monitor and manage the Acis CLO and failed

to ensure that the purchases and sales on behalf of the Acis CLO by the Portfolio Manager

complied with specific collateral quality tests.[8]  In support of its allegations, however, Plaintiff

merely cites to provisions in the Acis Indenture regarding the Trustee's general rights and

powers.[9]  Nowhere in the SAC does Plaintiff identify any provision in the Acis Indenture giving

rise to the purported non-ministerial monitoring and management duties it seeks to impose on

U.S. Bank.  This is because the provisions do not exist and are therefore expressly disclaimed.

Acis Indenture (Ex. 2), § 6.1(a).  Tellingly, Plaintiff does not -- and cannot -- allege a cause of

action for breach of the terms of the Acis Indenture against the Trustee.

**The Acis PMA**

The supervision and direction of the investment and reinvestment of the assets of

the Acis CLO is the sole responsibility of the Portfolio Manager.  Acis PMA (Ex. 3), § 3(a)

("[s]ubject to and in accordance with the terms of the Indenture and this Agreement, the Portfolio

Manager agrees to supervise and direct the investment and reinvestment of the Assets…").  The

Acis PMA, in relevant part, provides that:

> [t]he Portfolio Manager may, *in its sole discretion* subject to and in
> accordance with the provisions of the Indenture and this Agreement,
> direct the Issuer and/or the Trustee to take the following actions with

---

[8]   *See, e.g.*, SAC ¶ 33 (indenture trustees "monitor and protect the security and soundness of CLO assets"); SAC ¶ 55 (Trustee must ensure that every purchase and sale made by the Acis CLO maintains or improves any failing collateral quality test); SAC ¶ 119 (Trustee must ensure that the Acis CLO collateral complies with the detailed, industry-recognized, bargained-for tests); SAC ¶ 123 (Trustee has obligation to seek best execution on trades reasonably available to the Acis CLO); SAC ¶ 127 (Trustee allowed the Acis CLO to act as "market takers" and allowing it to hold longer-term collateral that does not comport with the requirements of the Acis Indenture).

[9]   *See, e.g.*, SAC ¶ 110 ("The Acis Indenture provides that U.S. Bank shall hold in trust, for the 'benefit and security' of the investors, all 'Collateral Obligations' that secure the financial obligations to the investors."); *id*. ¶ 118 ("[T]he Acis Indenture also endow[s] U.S. Bank with the broad authority to 'execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, nominees, custodians, or attorneys.'").

> respect to a Collateral Obligation, Eligible Investment or other Asset: (i) retain such Collateral Obligation, Eligible Investment or other Asset; (ii) dispose of such Collateral Obligation, Eligible Investment or other Asset in the open market or otherwise…

*Id.*, §§ 3(f)(i)-(ii) (emphasis added); *see also id.*, § 3(c)(ii) ("[t]he Portfolio Manager shall select all Collateral Obligations and Eligible Investments which shall be acquired by the Issuer and pledged to the Trustee pursuant to the Indenture). In fact, the Trustee, while an express third-party beneficiary of the Acis PMA (*id.*, § 21), is not a signatory to the PMA. Under Section 15.1(a) of the Acis Indenture, the Trustee does not have the authority to exercise any rights under the Acis PMA until the occurrence of an Event of Default. Acis Indenture (Ex. 2), § 15.1(a).

## ARGUMENT

## I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides a vehicle for dismissing a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a complaint, the court must accept well-pleaded facts in the light most favorable to the plaintiff, but this same principle does not apply to conclusory allegations that are not supported by factual allegations. *Iqbal*, 556 U.S. at 678-79. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  Courts may also review a document not incorporated by reference when the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint.  *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp. 3d 587, 596 (S.D.N.Y. 2015) (a court may refer to an indenture and its exhibits in an action under the Trust Indenture Act); *Alexandra Glob. Master Fund, Ltd. v. Ikon Office Sols., Inc.*, No. 06 Civ. 5383, 2007 U.S. Dist. LEXIS 52546, at *4 n.1 (S.D.N.Y. July 19, 2007) ("While the plaintiff did not attach the Indenture to its Complaint, it plainly relied on the terms of the Indenture in bringing this action … which renders the Indenture 'integral' to the Complaint.").

## II.   PLAINTIFF'S CLAIM FOR BREACH OF THE TIA SHOULD BE DISMISSED BECAUSE THE ACIS INDENTURE IS NOT SUBJECT TO THE TIA

Plaintiff alleges that U.S. Bank violated the TIA in "numerous ways," but fails to identify any particular TIA provisions that it purportedly breached. SAC ¶ 200.  Regardless of whether Plaintiff purports to assert a claim for breach of the duties in TIA Section 315 (5 U.S.C. § 77ooo), TIA Section 316 (15 U.S.C. § 77ppp), or some other unpled provision of the TIA, such claim should be dismissed as a matter of law because the Acis Indenture is not subject to the TIA.[10]

Not all trust indentures are subject to the TIA.  An "indenture to be qualified" under the TIA is defined as "(A) the indenture under which there has been or is to be issued a security in respect of which a particular registration statement has been filed, or (B) the indenture

---

[10]   Even if the TIA applied to the Acis Indenture (it does not), Plaintiff's allegation that the "trustee must report any default that it recognizes" (SAC ¶ 197) could not give rise to a breach of Section 315(b) of the TIA where Plaintiff does not and cannot allege that an Event of Default (as defined in the Acis Indenture) occurred or that the Trustee had notice of any such default.

in respect of which a particular application has been filed." TIA Section 303(9) (15 U.S.C. § 77ccc(9)).[11]  The TIA exempts private offerings, which fall under section 4 of the Securities Act from any registration or qualification requirements.  Section 304(b) of the TIA expressly provides that Sections 305 (15 U.S.C. § 77eee) and 306 (15 U.S.C. § 77fff), that detail which securities must be registered under the Securities Act, do not apply "to any of the transactions exempted from the provisions of section 5 of the Securities Act of 1933 by section 4 thereof . . . ." 15 U.S.C. § 77ddd(b).  In other words, if section 4 of the Securities Act exempts a transaction from the requirements of section 5, the security is not required to be registered under the TIA, and therefore is not an "indenture to be qualified" under the TIA.  Section 4 of the Securities Act exempts "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(a)(2).[12] Thus, an indenture in a private securities offering, like the Acis CLO here, is not an "indenture to be qualified" and is not subject to the TIA.

As recently explained by a court in this District, the provisions of the TIA imposing duties and obligations on indenture trustees are limited to "indentures to be

---

[11]     Likewise, the term "indenture security" is defined as "any security issued or issuable under the *indenture to be qualified*," TIA Section 303 (15 U.S.C. § 77ccc(11)) (emphasis added), and the term "'indenture trustee' means each trustee under the *indenture to be qualified* ...."  TIA Section 303 (15 U.S.C. § 77ccc(10)) (emphasis added).

[12]     *See* 7 Mark D. Kaufman, *Business Organizations with Tax Planning* § 98.04 (rev. ed. 2021) ("Because Rule 144A and Regulation S debt offerings are exempt from the registration requirements of the Securities Act, the indentures in these kinds of offerings do not need to be qualified under the Trust Indenture Act."); 2 Anna T. Pinedo & Bradley Berman, *Federal Securities Act of 1933* § 8.07 (2021) ("Section 304(b) also incorporates the private offering exemptions of Securities Act Sections 4(a)(2), 4(a)(5), and 4(a)(6). Thus, the typical private placement of debt securities with institutional investors in reliance on Securities Act Section 4(a)(2) or its counterpart, Rule 506, is exempt from the Trust Indenture Act qualification requirement.").

qualified."[13]   In *Tennenbaum Living Trust v. TGLT S.A.*, the court found that Section 316(b) of

the TIA does not apply to unregistered notes issued pursuant to a private placement

memorandum.   No. 20 Civ. 6938, 2021 U.S. Dist. LEXIS 164224, at *11-12 (S.D.N.Y. Aug. 30,

2021).   Specifically, the Court recognized that Section 316(b) expressly states that it applies

only to "indenture[s] to be qualified" and that indentures in private offerings are not subject to

qualification under the TIA.  *Id.* at *11.   Similarly, in *AG Oncon, LLC v. Ligand Pharm., Inc,*

*LLC*, the Delaware Chancery Court held that the TIA does not apply to notes issued in a private

placement under Rule 144A.   No. 2018-0556-JTL, 2019 Del. Ch. LEXIS 187, at *26-29 (Del.

Ch. May 24, 2019), *aff'd*, No. 300, 2019, 2020 Del. LEXIS 11 (Del. Jan. 10, 2020).   There, the

Court held that "[a] transaction not involving a public offering is not subject to qualification,"

and therefore the provisions of the TIA that included references to "an indenture to be qualified,"

including Section 316(b), were not applicable.  *Id*.

Here, it is not disputed that the Acis Notes were issued pursuant to a Rule 144A

and Regulation S private debt offering and were not registered under the Securities Act. [14]  Acis

---

[13]   *See also, e.g.*, TIA Section 315 (15 U.S.C. § 77ooo(a)) ("[t]he *indenture to be qualified*
shall automatically be deemed (unless it is expressly provided therein that any such
provision is excluded) to provide that, prior to default, (1) the indenture trustee shall not
be liable except for the performance of such duties as are specifically set out in such
indenture….")   (emphasis added); TIA Section 316 (15 U.S.C. § 77ppp(b))
("Notwithstanding any other provision of *the indenture to be qualified*, the right of any
holder of any indenture security to receive payment of the principal of and interest on
such indenture security, on or after the respective due dates expressed in such *indenture
security*, or to institute suit for the enforcement of any such payment on or after such
respective dates, shall not be impaired or affected without the consent of such holder…")
(emphasis added).

[14]   Rule 144A provides an exemption from registration under the Securities Act for offers
and sales of securities to large "qualified institutional buyers" in the United States (17
C.F.R. § 230.144A), while Regulation S exempts from registration the offer and sale of
securities to investors outside of the United States (17 C.F.R. § 230.901, *et seq*.), both
subject to compliance with certain other applicable eligibility requirements.

Indenture (Ex. 2), § 2; *id.*, Ex. A1 (Form of Global Note - [Rule 144A] [Regulation S] Global Secured Note), Ex. A2 (Form of [Regulation S] [Rule 144A] Global Subordinated Note). Therefore, the Acis Indenture was not required to be registered under the TIA, is not an "indenture to be qualified" as defined by the provisions of the TIA and is thus not subject to the TIA.

Even if not qualified under the TIA, an indenture may nevertheless incorporate the terms of the TIA, provided such incorporation is explicit. *Tennenbaum Living Trust*, No. 20 Civ. 6938, 2021 U.S. Dist. LEXIS 164224, at *12-13 (citing *CNH Diversified Opps. Master Acct., L.P. v. Cleveland Unlimited, Inc.*, 36 N.Y.3d 1, 10 (2020)).  Here, Plaintiff does not and (as evidenced by the terms of the Acis Indenture) cannot allege that the Acis Indenture explicitly incorporated the TIA.

Accordingly, Plaintiff's claim that U.S. Bank breached the TIA should be dismissed as a matter of law.

## III.   PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIM AGAINST U.S. BANK SHOULD BE DISMISSED

### A.   U.S. Bank Owed No Fiduciary Duty to Plaintiff.

Plaintiff's breach of fiduciary duty claim (Count Five) consists of confusing, conclusory allegations that fail as matter of law to state a claim against U.S. Bank.  An indenture trustee (like U.S. Bank here) does not owe a fiduciary duty to noteholders.  *See AG Cap. Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 156-57 (2008).  Under New York law, absent an event of default, an indenture trustee is subject only to the duties expressly set forth in the indenture.  *Elliot Assocs. v. J Henry Schroeder Bank & Tr. Co.*, 838 F.2d 66, 71 (2d Cir. 1988) (it is well established under both federal and state common law that the pre-default duties of an indenture trustee are limited to the terms of the indentures and that

the Second Circuit has consistently rejected the imposition of additional duties on the trustee); *Hildene Cap. Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, No. 11 Civ. 5832, 2012 U.S. Dist. LEXIS 115942, at *36 (S.D.N.Y. Aug. 15, 2012) (rejecting plaintiff's attempt to impose broad fiduciary duties on trustee).

        Contrary to Plaintiff's unsupported allegation that the law imposes a fiduciary duty and "prudent person" standard on the Trustee (SAC ¶ 25), the Acis Indenture expressly states that the "prudent person" standard applies only upon the continuance of an Event of Default. Acis Indenture (Ex. 2), § 6.1(b). Absent an Event of Default, Section 6.1(a) of the Acis Indenture clearly and unambiguously provides that "the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee …" *Id.*, § 6.1(a). The absence of a general fiduciary duty is consistent with the disclaimer of implied covenants and obligations in an indenture such as the Acis Indenture. *See Hildene Cap. Mgmt., LLC*, 2012 U.S. Dist. LEXIS 115942, at *37; *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 816 (2d Cir. 1985) (noting that indenture provided that "the Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Indenture, and no implied covenant or obligation shall be read into this Indenture against the Trustee"); *Trafalgar Power, Inc. v. U.S. Bank Nat'l Ass'n*, No. 5:05-CV-1533, 2012 U.S. Dist. LEXIS 21275, at *23-24 (N.D.N.Y. Feb. 21, 2012) (finding that the indenture clearly and unambiguously sets the trustee's duties and "no fiduciary duty beyond those terms can be implied").

        With respect to triggering post-default duties, the Acis Indenture requires that the Trustee have notice of any Event of Default in order for the Trustee's post-default duties to apply. *Id.*, § 6.1(d) ("For purposes of determining the Trustee's responsibility and liability

hereunder, whenever reference is made in this Indenture to such an Event of Default or a Default, such reference shall be construed to refer only to such an Event of Default or Default of which the Trustee is deemed to have notice."). Here, Plaintiff neither pleads the existence of an Event of Default under the Acis Indenture, nor alleges that the Trustee had notice of any such Event of Default. Thus, the "prudent person" standard does not apply to the Trustee. *See Millennium Partners, L.P. v. U.S. Bank Nat'l Ass'n*, No. 12 Civ. 7581, 2013 U.S. Dist. LEXIS 55729, *12-13 (S.D.N.Y. Apr. 17, 2013) (finding post-default duties were not triggered when the complaint failed to plead that the requisite written notice of an event of default was given).

Moreover, even if an Event of Default had occurred and the Trustee had notice of such default, a claim against an indenture trustee based on the "prudent person" standard "would sound in contract and would not implicate a fiduciary duty of the trustee." *Bakal v. U.S. Bank Nat'l Ass'n*, No. 15-cv-6976, 2018 U.S. Dist. LEXIS 56950, at *37 (S.D.N.Y. Apr. 2, 2018).

Accordingly, U.S. Bank had no fiduciary duty running to Plaintiff, and Plaintiff's claim for breach of fiduciary duty should be dismissed as a matter of law.

### B. U.S. Bank's Extra-Contractual Duties to Avoid Conflicts of Interest and Perform All Non-Discretionary, Ministerial Tasks With Due Care Are Not Fiduciary Duties.

Plaintiff's attempt to base its breach of fiduciary duty claim on conclusory allegations that U.S. Bank breached its extra-contractual duties to perform all basic, non-discretionary, ministerial tasks under the Acis Indenture with due care (SAC ¶¶ 203-05) and failed to avoid conflicts of interest by advancing its own interests by "artificially maximiz[ing] management fees" (*id.* at ¶¶ 206-12) fails as a matter of law. These extra-contractual duties are not fiduciary duties, and their alleged breach does not give rise to a claim of breach of fiduciary duty. *See Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank*, 247 F. Supp. 3d 377, 395 (S.D.N.Y. 2017) (dismissing plaintiff's breach of fiduciary duty claims

because extra-contractual pre-default obligations of avoiding conflict of interests and performing ministerial tasks with due care are not fiduciary duties); *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 172 F. Supp. 3d 700, 719 (S.D.N.Y. 2016) (noting that claims for pre-default violation of extra-contractual duties are "not proper breach of fiduciary duty claims under New York law, and can only be pleaded in the complaint as negligence claims"). Accordingly, the breach of fiduciary duty claim against U.S. Bank based on the alleged breach of its extra-contractual duties should be dismissed.

## IV.   PLAINTIFF'S NEGLIGENCE CLAIM AGAINST U.S. BANK SHOULD BE DISMISSED

Plaintiff's incorporation of the same cursory, blanket allegations for its negligence claim (Count Six) on which it relies for its breach of fiduciary duty claim (SAC ¶ 220) fails to state a claim against U.S. Bank.

To establish a negligence claim under New York law, a plaintiff must demonstrate that: "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law; (2) the defendant breached that duty; and (3) plaintiff suffered damage as a proximate result of that breach." *Millennium Partners*, 2013 U.S. Dist. LEXIS 55729, *13 (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997)). As set forth above, under New York law, an indenture trustee has extra-contractual duties to perform basic, non-discretionary, ministerial duties with due care and to avoid conflicts of interest. *AG Cap. Funding Partners, L.P.*, 11 N.Y.3d at 156-57; *Phoenix Light SF Ltd.*, 172 F. Supp.3d at 718. Plaintiff, however, falls far short of pleading a breach of either of these duties by the Trustee.

When considering a claim for conflict of interest, the Second Circuit has disregarded "bald assertions of conflict" and has required a showing that the trustee "personally benefitted" from the disputed action. *Elliot Assocs.*, 838 F.2d at 70. Thus, a plaintiff must allege

more than the existence of a "relationship between an issuer and an indenture trustee that is mutually beneficial and increasingly lucrative." *Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 109 F. Supp.3d 587, 598 (S.D.N.Y. 2015).

Plaintiff alleges that U.S. Bank had a conflict of interest insofar as it advanced its own interests at the expense of the noteholders of the Acis CLO (SAC ¶ 208) by facilitating the mismanagement of the Acis CLO to allow the Portfolio Manager to "artificially maximize management fees" (SAC ¶ 209) and allowing the Acis CLO to incur "exorbitant fees" (SAC ¶ 211).  Plaintiff does not, however, allege how U.S. Bank could "personally benefit" from the Portfolio Manager allegedly artificially maximizing management fees or incurring significant expenses.  Nor does the Second Amended Complaint allege any relationship between U.S. Bank and the Portfolio Manager suggesting that U.S. Bank was "beholden" to the Portfolio Manager (or any other party).  *See, e.g.*, *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-4394, 2016 U.S. Dist. LEXIS 12982, at *29-30 (S.D.N.Y. Feb. 3, 2016) (holding that plaintiffs sufficiently alleged that a trustee failed to take action against sellers and servicers who violated their obligations to the trusts because it feared retaliation from the same parties with respect to loans that the trustee had itself originated or sponsored); *In re E.F. Hutton Southwest Props. II, Ltd.*, 953 F.2d 963, 972 (5th Cir. 1992) (construing New York law) ("[To establish a conflict of interest,] [t]here must be a clear possibility of this evident from the facts of the case, *e.g.*, where the indenture trustee is a general creditor of the obligor, who is in turn in financial straits. A mere hypothetical possibility that the indenture trustee might favor the interests of the issuer merely because the former is an indenture trustee does not suffice.").

Where, as here, there are no specific allegations of a business relationship giving rise to a conflict, courts in this District have routinely dismissed claims alleging that a corporate

trustee failed to avoid a conflict of interest. *See, e.g.*, *Blackrock Allocation Target Shares v. Bank of N.Y. Mellon*, 180 F. Supp. 3d 246, 261 (S.D.N.Y. 2016) (finding allegations that trustee failed to discharge its pre- and post-default duties because doing so would increase the trustee's expenses as insufficient); *CFIP Master Fund, Ltd. v. Citibank, Nat'l Ass'n*, 738 F. Supp. 2d 450, 475 (S.D.N.Y. 2010) (dismissing conflicts claim where allegations only stated that defendant served as indenture trustee for other transactions involving the same parties).

With respect to Plaintiff's conclusory allegation that the Trustee failed to perform its non-discretionary, ministerial duties with due care by allowing the Acis CLO "to incur exorbitant expenses" (SAC ¶ 205), any purported "duty" to monitor a trust's transactions and supervise the trust's agents would not be a "ministerial duty" of an indenture trustee under New York law. *See Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 193 (S.D.N.Y. 2011) ("[The trustee's] broadly-stated failures to monitor [the servicer] and safeguard trust assets plainly do not involve the performance of 'basic non-discretionary ministerial tasks.'").

Rather, ministerial duties are administrative tasks such as maintaining records, delivering certificates, preparing and transmitting reports, and forwarding notices. *See, e.g.*, *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon.*, No. 14-CV-10104, 2015 U.S. Dist. LEXIS 131206, at *7 (S.D.N.Y. Sept. 29, 2015) (providing examples of ministerial duties to include taking possession of mortgage files, preparing certificates of status of mortgage files, and providing notice to parties); *N.Y. State Med. Care Facilities Fin. Agency v. Bank of Tokyo Tr. Co.*, 163 Misc. 2d 551, 555, 621, N.Y.S.2d 466, 470 (Sup. Ct. N.Y. Cty. 1994) (holding trustee liable for failure to notify bondholders of early redemption call). Thus, even if Plaintiff's allegations regarding the Trustee's "duty" to monitor the Acis CLO were well-founded -- and

they are not -- they would not constitute extra-contractual ministerial duties and would not support a claim for negligence.  *See Phoenix Light SF Ltd.,* 172 F. Supp.3d at 718 n.7 (noting that plaintiffs appear to improperly conflate the duty to perform ministerial acts with due care with their allegations that defendant indenture trustee negligently performed or failed to perform certain duties under the contract).  And Plaintiff does not allege that U.S. Bank otherwise breached any of the duties that New York law recognizes as ministerial duties of a trustee.

In addition, a cause of action for negligence cannot be sustained if it is "identical to and indivisible from the contract obligations which have allegedly been breached."  *See, e.g., Millennium Partners,* 2013 U.S. Dist. LEXIS 55729, *14 (quotation omitted); *Phoenix Light SF Ltd.,* 172 F. Supp.3d at 718.  In other words, to the extent Plaintiff's negligence claim against U.S. Bank is that it negligently failed to perform its duties under the Acis Indenture, it sounds in breach of contract (which has not been alleged and would have no merit) and does not state a claim for negligence.

Furthermore, where there is "specific language in the Indenture" that "exculpates [the trustee] from liability for negligence in the performance of duties not expressly set forth in the Indenture," a common law negligence claim is foreclosed.  *Argonaut P'ship., L.P. v. Bankers Tr. Co.*, Nos. 96 Civ. 1970, 00 Civ. 4244, 2001 U.S. Dist. LEXIS 7100, at *5-6 (S.D.N.Y. May 30, 2001) (dismissing negligence claims because language in the indenture exculpated the indenture trustee for negligence in the performance of duties not expressly set forth in the indenture) (internal quotation marks omitted).  Here, Section 6.1(c) of the Acis Indenture provides that "[n]o provision of this Indenture shall be construed to relieve the Trustee from liability for its own negligent action, its own negligent failure to act, or its own willful misconduct, *except that*: (i) this subsection shall not be construed to limit [Section 6.1(a)]."  Acis

Indenture (Ex. 2), § 6.1(c) (emphasis added).  As noted above, Section 6.1(a) of the Acis

Indenture expressly provides that the Trustee's duties are only those set forth in the Acis

Indenture.  *Id.*, § 6.1(a).  Where, as here, an indenture expressly limits the duties of the indenture

trustee to those set forth in the indenture, the indenture acts to exculpate the trustee with respect

to extra-contractual duties, and there can be no claim for negligence arising out of a breach of

alleged extra-contractual duties.  *See Argonaut P'ship., L.P.*, 2001 U.S. Dist. LEXIS 7100, at *5-

6.

And finally, to be clear, the Acis Indenture provides that the Trustee is not liable

for any action taken or omitted by it in good faith in accordance with the direction of the

Portfolio Manager.  Acis Indenture (Ex. 2), § 6.1(c)(iii).

For the foregoing reasons, Plaintiff's negligence claim against U.S. Bank fails and

should be dismissed.

## V.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE GRANTING LEAVE TO AMEND WOULD BE FUTILE

As set forth above, the Second Amended Complaint reflects a substantive

misunderstanding of the role and obligations of the Trustee under the Acis Indenture.  As such,

the deficiencies in the SAC cannot be cured by better pleading.  *See Office Sol. Grp., LLC v.*

*Nat'l Fire Ins. Co. of Hartford*, -- F. Supp. 3d --, 2021 WL 2403088, at *10 (S.D.N.Y. June 11,

2021) (Woods, J.).  Moreover, having twice amended its complaint and having failed to address

the defects in its pleadings identified by the Trustee in the Trustee's pre-motion letters (ECF

Nos. 36, 51), the Court should deny leave to replead where NexPoint is unable to point to facts in

its possession that would cure its substantively deficient claims.  *Id.*  Accordingly, further leave

to amend should not be granted and the Second Amended Complaint should be dismissed with

prejudice.

## <u>CONCLUSION</u>

For the reasons set forth above, U.S. Bank respectfully requests that the Court grant its motion to dismiss the Second Amended Complaint and dismiss all of the claims asserted against U.S. Bank with prejudice, and grant such other, further and different relief as the Court deems just and proper.

New York, New York
January 27, 2022

Respectfully submitted,

SEWARD & KISSEL LLP

By:  /s/ Mark D. Kotwick
  Mark D. Kotwick
  Thomas Ross Hooper
  Julie J. Hong

  One Battery Park Plaza
  New York, NY  10004
  Telephone: (212) 574-1200
  Facsimile: (212) 480-8421

  *Attorneys for U.S. Bank, National Association,*
  *in its capacity as Indenture Trustee*