UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXPOINT STRATEGIC OPPORTUNITIES FUND, <br><br> Plaintiff, <br><br> -against- <br><br> ACIS CAPITAL MANAGEMENT, L.P., U.S. BANK, N.A., JOSHUA N. TERRY, BRIGADE CAPITAL MANAGEMENT, LP <br><br> Defendants. | 1:21-cv-04384-GHW |

**JOINDER AND MEMORANDUM OF LAW IN SUPPORT OF
BRIGADE CAPITAL MANAGEMENT, LP'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

        LATHAM & WATKINS LLP
        Jason C. Hegt
        Alexis Kellert Godfrey
        1271 Avenue of the Americas
        New York, NY 10020
        (212) 906-1200

        *Attorneys for Defendant Brigade Capital Management LP*

January 27, 2022

# **TABLE OF CONTENTS**

Page

BACKGROUND ...............................................................................................................................1

LEGAL STANDARD......................................................................................................................3

ARGUMENT ...................................................................................................................................4

I.      NEXPOINT FAILS TO STATE A CLAIM AGAINST BRIGADE..................................4

          A.      NexPoint Cannot State A Claim Under The Investment Advisers Act Against Brigade (Count 1) ...................................................................................4

          B.      Count 2 Fails To State A Breach of Fiduciary Duty Claim Against Brigade..........5

          C.      Count 6 Fails To State A Claim For Negligence Against Brigade .........................8

II.     ADDITIONAL GROUNDS EXIST THAT MANDATE DISMISSAL OF THE CLAIMS AGAINST BRIGADE ........................................................................................9

CONCLUSION................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Acis Capital Mgmt., L.P.*,
  2019 WL 417149 (Bank. N.D. Tex. Jan. 31, 2019), *aff'd* 604 B.R. 484 (N.D. Tex. 2019),
  *aff'd*, 850 F. App'x 302 (5th Cir. 2021)..................................................................................2

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................3

*Boley v. Pineloch Assocs., Ltd.*,
  700 F. Supp. 673 (S.D.N.Y. 1988) ..........................................................................................6

*Brantley v. Mun. Credit Union*,
  2021 WL 981334 (S.D.N.Y. Mar. 16, 2021) .......................................................................8, 9

*Clark v. Nevis Capital Mgmt, LLC*,
  2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) .............................................................................4

*Credit All. Corp. v. Arthur Andersen & Co.*,
  65 N.Y.2d 536 (1985)..............................................................................................................9

*Farash v. Cont'l Airlines, Inc.*,
  574 F. Supp. 2d 356 (S.D.N.Y. 2008).....................................................................................9

*Fin. Guar. Ins. Co. v. Putnam Advisory Co. LLC*,
  783 F.3d 395 (2d Cir. 2015)....................................................................................................9

*In re Fyre Festival Litig.*,
  399 F. Supp. 3d 203 (S.D.N.Y. 2019).....................................................................................8

*Goldberg v. Torim*,
  117 N.Y.S.3d 567 (2020).........................................................................................................6

*In re Highland Capital Mgmt., L.P.*,
  2021 WL 2326350 (Bankr. N.D. Tex. Jun. 7, 2021) ...............................................................2

*Kassover v. UBS AG*,
  619 F. Supp. 2d 28 (S.D.N.Y. 2008).......................................................................................5

*KHD Consulting Grp. LLC v. Iterative Capital Mgmt. L.P.*,
  2020 WL 7251172 (S.D.N.Y. June 29, 2020) .................................................................3, 4, 5

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
    19 N.Y.3d 584 (2012) ............................................................................................................7

*Omega Overseas Partners, Ltd. v. Griffith*,
    2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) ..........................................................................4

*Pasternack v. Labv Corp. of Am.*,
    892 F. Supp. 2d 540 (S.D.N.Y. 2012) .....................................................................................8

*PetEdge, Inc. v. Garg*,
    234 F. Supp. 3d 477 (S.D.N.Y. 2017) (Woods, J.) .......................................................3, 5, 6, 9

*Tobia v. United Grp. of Companies, Inc.*,
    2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016) .......................................................................5

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
    444 U.S. 11 (1979) ..................................................................................................................4

*Zhang v. Han*,
    2022 WL 62154 (S.D.N.Y. Jan. 5, 2022) (Woods, J.) ..........................................................10

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
    2021 WL 4460547 (S.D.N.Y. Sep. 29, 2021) ...................................................................7, 10

**STATUTES**

15 U.S.C.
    § 80b-1 *et seq.* ........................................................................................................................4
    § 80b-2(a)(11) .........................................................................................................................5

**RULES**

Fed. R. Civ. P. 8(a)(2) ......................................................................................................................3, 6

Fed. R. Civ. P. 12(b)(6) ........................................................................................................................3

**PRELIMINARY STATEMENT**

This lawsuit is one of the most recent arrivals to a long-running parade of litigation commenced by James Dondero, the founder of Plaintiff NexPoint Strategic Opportunities Fund ("NexPoint") against Defendant Joshua Terry, who co-founded Defendant Acis Capital Management, L.P. ("Acis") along with Mr. Dondero. After Mr. Dondero lost control of Acis via an involuntary bankruptcy proceeding in Texas, he began suing Acis and everyone associated with it. This "ready, fire, aim" approach is reflected in NexPoint's Second Amended Complaint ("SAC"), ECF No. 42, which is a collection of hindsight critiques of how Acis managed a collateralized loan obligation in which NexPoint is a minority noteholder. NexPoint brings claims on a variety of theories based on two specific agreements related to the CLO. But Brigade Capital Management, LP ("Brigade") is not a party to either of the agreements at issue, and it has no relationship with NexPoint. The SAC says hardly anything about Brigade aside from noting that Brigade provided "back- and middle-office" and other advisory services to Acis, SAC ¶¶ 48-49, and then including Brigade in a defined term that the SAC uses to refer to multiple differently situated parties. For the reasons that follow, the claims in this case against Brigade are—at best— an afterthought, and they should be dismissed with prejudice.

**BACKGROUND**

The SAC asserts claims regarding a collateralized loan obligation ("CLO") known as ACIS CLO 2014-6, Ltd. ("ACIS-6"). SAC ¶ 38. A CLO is a structured investment vehicle that owns pooled loans. *Id.* ¶¶ 10-12. Investors like NexPoint can purchase notes issued by ACIS-6, which represent a fractional interest in the cash flows generated by the payments received on those loans. *See id.* ¶¶ 38-39.

ACIS-6 is governed by an indenture agreement among ACIS-6, Acis CLO 2015-6 LLC, and U.S. Bank, as trustee (the "Indenture"). *Id.* ¶¶ 38-41. During the relevant period, Acis has

1

served as ACIS-6's portfolio manager pursuant to a portfolio management agreement (the "PMA") that sets forth the manner in which Acis should manage the pooled loans that ACIS-6 has invested. *See id.* ¶¶ 21, 37, 41. Acis retained a "sub-advisor" to assist with certain administrative and management functions. *Id.* ¶ 40. At its formation, Acis was controlled by Mr. Dondero and so it retained Highland Capital Management, L.P. ("Highland"), another of Mr. Dondero's entities,[1] to serve in this "sub-advisor" role. *Id.* This changed in August 2018 when Mr. Terry gained control of Acis by virtue of an involuntary bankruptcy proceeding, and Acis's court-appointed bankruptcy trustee hired Brigade as sub-advisor to replace Highland. *Id.* ¶¶ 40, 44, 47 & n.1. The United States Bankruptcy Court for the Northern District of Texas formally approved the terms of Brigade's appointment—rejecting a "specious" challenge directed by Mr. Dondero.[2] *Id.* ¶¶ 47, 52. Since then, Mr. Dondero and entities affiliated with him have continued to re-litigate these issues with Acis and anyone in its orbit, including Brigade.[3]

There is no dispute here that (i) Brigade is not a party to the Indenture governing ACIS-6, (ii) Brigade is not a party to the PMA that is the subject of this lawsuit, and (iii) Brigade is not an employee, consultant or advisor (or anything else) of NexPoint. Instead, Brigade is employed by Acis and works "directly with and for" Mr. Terry. *Id.* ¶¶ 48-49, 52. As sub-advisor to Acis,

---

[1] *See In re Highland Capital Mgmt., L.P.*, 2021 WL 2326350, at *2-3 (Bankr. N.D. Tex. Jun. 7, 2021) (noting Mr. Dondero as co-founder, former President and CEO of Highland).

[2] *See also In re Acis Capital Mgmt., L.P.*, 2019 WL 417149, at *3 (Bank. N.D. Tex. Jan. 31, 2019), *aff'd* 604 B.R. 484 (N.D. Tex. 2019), *aff'd*, 850 F. App'x 302 (5th Cir. 2021) (approving Brigade as sub-advisor, overruling challenge that Brigade was not a suitable replacement as "specious," and finding that Brigade's fees were "at a much lower cost to [Acis]" than the "handsome fees" previously charged by former sub-advisor).

[3] For instance, two other entities controlled by Mr. Dondero previously brought claims against Acis, Brigade, and others making similar claims to those alleged here. *See* Pls. Original Compl., *The Charitable Donor Advised Fund, L.P. v. U.S. Bank, N.A., et al.*, Case No. 20 Civ. 1036 (S.D.N.Y. Feb. 6, 2020), ECF No. 1. The case was voluntarily dismissed later the same month. *See id.*, ECF No. 15.

Brigade was retained to "provide advisory services, as well as back- and middle-office functions," including "accounting, payments, operations, technology and finance." *Id.* ¶ 48. According to the SAC, Brigade's role was "to assist in the negotiation and execution of all documents necessary to acquire or dispose of assets under the PMAs." *Id.* ¶ 49. As Plaintiff itself alleges, Mr. Terry "effectively approve[d] all trading activity" for ACIS-6, *see id.* ¶ 50, and Brigade was merely "delegated . . . certain tasks related to the Acis CLOs" like "identifying potential assets (and their buyers and sellers) and modeling ratings, default, and price scenarios as needed," *id.* ¶ 49. Plaintiff alleges that U.S. Bank, as trustee, "ensure[d] that every purchase and sale made involving the Acis CLOs maintain[ed] or improve[ed] any failing collateral quality test." *Id.* ¶ 55.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017) (Woods, J.) (citing *Iqbal*, 556 U.S. at 662). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor must a court accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. In resolving a Rule 12(b)(6) motion, a court may consider "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *KHD Consulting Grp. LLC v. Iterative Capital Mgmt. L.P.*, 2020 WL 7251172, at *5 (S.D.N.Y. June 29, 2020) (quotation omitted).

**ARGUMENT**

I.  **NEXPOINT FAILS TO STATE A CLAIM AGAINST BRIGADE**

    A.  **NexPoint Cannot State A Claim Under The Investment Advisers Act Against Brigade (Count 1)**

NexPoint's claim against Brigade for violations of the IAA, 15 U.S.C. § 80b-1 *et seq.*, fails as a matter of law for two independent reasons.

*First,* the Supreme Court has limited the availability of a private right of action under the IAA to "void an investment advisers contract." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979). An advisory contract can only be voided if it was created, or requires performance that itself violates the IAA. *KHD Consulting*, 2020 WL 7251172 at *6 (internal citation omitted); *Omega Overseas Partners, Ltd. v. Griffith*, 2014 WL 3907082, at *3-4 (S.D.N.Y. Aug. 7, 2014) ("Under [the IAA], as under the common law, if an agreement can by its terms be performed lawfully, it will be treated as legal, even if performed in an illegal manner") (quotation omitted)). NexPoint has not alleged any facts indicating that any contract to which Brigade is a party to was "made illegally or requires illegal performance." *KHD Consulting*, 2020 WL 7251172, at *10 (citing *Omega Overseas Partners, Ltd.*, 2014 WL 3907082, at *3).

*Second*, Brigade is not a party to the PMA that NexPoint makes the subject of Count 1. *See* SAC ¶¶ 39-42, 157. Under the IAA (or any law for that matter), Brigade cannot be sued to void a contract to which it is not even a party. *See Clark v. Nevis Capital Mgmt, LLC*, 2005 WL 488641, at *13 (S.D.N.Y. Mar. 2, 2005) (dismissing IAA claim where plaintiff failed to allege, among other facts, an investment advisory contract between her and defendant).[4] NexPoint cannot

---

[4] NexPoint alleges in conclusory terms that "the agreements between Acis and any third party in any transaction in violation of the Advisers Act is accordingly void," SAC ¶ 157, but does not even specify what additional agreements (let alone investment advisers contracts) NexPoint is asking the Court to void, much less the basis for doing so. NexPoint is not entitled to any relief

4

even establish that Brigade served as NexPoint's "investment adviser"—a fundamental prerequisite to bring a claim under the IAA.[5] *See Kassover v. UBS AG*, 619 F. Supp. 2d 28, 32 (S.D.N.Y. 2008) (dismissing IAA claim for plaintiff's failure to establish that an investment advisor relationship existed, in part, because plaintiff failed to allege that any special compensation was paid to defendant for investment advice). NexPoint does not allege that Brigade accepted compensation from NexPoint. To the contrary, NexPoint admits that *Brigade served as an advisor to Acis and was paid by Acis*. SAC ¶ 52. This is dispositive. *KHD Consulting*, 2020 WL 7251172, at *10 (dismissing IAA claim because, among other reasons, plaintiff failed to allege any facts showing that defendants received compensation from plaintiff).[6]

### B. Count 2 Fails To State A Breach of Fiduciary Duty Claim Against Brigade

"To state a claim for damages for breach of fiduciary duty under New York law, a plaintiff must allege: (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct."[7] *PetEdge, Inc.*, 234 F. Supp. 3d at 497 (Woods, J.) (dismissing breach of fiduciary duty claim based on the absence of a fiduciary relationship). A fiduciary relationship arises "when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first,

---

on such inchoate claims. *See Tobia v. United Grp. of Companies, Inc.*, 2016 WL 5417824, at *20 & n.17 (N.D.N.Y. Sept. 22, 2016) (noting that relief under the IAA is limited to investment advisers contracts); *see also* Acis Mot. (ECF No. 84) at 7-8 & n.6.

[5] The IAA defines "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities . . ." 15 U.S.C. § 80b-2(a)(11).

[6] Brigade joins Acis's argument that the Court should retain jurisdiction to resolve the remaining claims even if it dismisses the IAA claim. *See* Acis Mot. at 9-11.

[7] Under a choice-of-law analysis, Cayman law applies to determine whether Count 2 is direct or derivative and, if derivative, the procedural prerequisites for asserting it. *See* Acis Mot. at 11-12. New York law applies to all other aspects of the direct claim.

5

or when one assumes control and responsibility over another." *Id.* To determine whether a fiduciary relationship exists, New York courts "look first to any applicable contract and then to the parties' relationship more generally." *Id.* Here, no fiduciary relationship exists between NexPoint and Brigade.

NexPoint is not a party to any contract with Brigade.[8] And NexPoint does not—because it cannot—allege facts that would support the existence of some sort of extra-contractual fiduciary relationship between NexPoint and Brigade. The conclusory allegation that "the fiduciary duty that the RIA Defendants owed to investors like Plaintiff is predicated on trust and confidence," SAC ¶ 166, is insufficient. *See Boley v. Pineloch Assocs., Ltd.*, 700 F. Supp. 673, 681 (S.D.N.Y. 1988) (finding the allegation that "defendants entered into a fiduciary relationship of trust and confidence with plaintiffs" was conclusory and failed to satisfy Rule 8)). Likewise, the SAC's allegations about Brigade's purported knowledge and awareness that investors like NexPoint were relying on Brigade to perform unspecified services for NexPoint, SAC ¶¶ 59-60, are also insufficient. *See PetEdge*, 234 F. Supp. 3d at 498-99 (refusing to find fiduciary relationship between plaintiff and defendant on the basis of generalized allegations of awareness that plaintiff relied on defendant's company to serve in an advisory role). Finally, the allegation that "Brigade is the agent of Acis and, therefore, of the Acis CLOs," SAC ¶ 48, is too generalized to impose a fiduciary relationship between even Brigade and the Acis CLOs, let alone demonstrate that one extended from Acis to the Acis CLOs all the way to NexPoint through some sort of transitive properties. *Goldberg v. Torim*, 117 N.Y.S.3d 567, 567 (2020) (declining to impose a "higher realm of relationship" based on conclusory agency allegations) (internal citation omitted).

---

[8] During the pre-motion conference on this motion, NexPoint conceded its "lack of a direct relationship" with Brigade. *See* Jan. 4, 2022 Pre-motion Conference, Hr'g. Tr. 31:11-16.

To be sure, Acis has certain obligations under the PMA to ACIS-6, SAC ¶ 56 at n.3, but even Acis (as the advisor to ACIS-6) does not owe duties directly to every ACIS-6 noteholder. *See Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012) ("While the collateral managers may have owed fiduciary and contractual duties to the [investment funds they managed], there is no factual basis to create fiduciary duties running from the managers to the mezzanine noteholders."); Acis Mot. at 12, n.11.  And Brigade is even one step further removed from NexPoint than Acis:  Brigade was retained and paid *by Acis* to act as a "sub-advisor" to Acis.  SAC ¶¶ 49, 52, 59.  Brigade's obligations were to Acis and Acis alone.  NexPoint has offered no basis for the Court to re-write the agreements among the parties and re-cast their roles to create a fiduciary relationship between Brigade and NexPoint where none exists.[9]

In any event, even if Brigade did owe fiduciary duties to NexPoint despite their lack of a direct relationship, NexPoint has not pled any misconduct that would even suggest Brigade breached these duties.  At best, NexPoint alleges Acis, Mr. Terry, and Brigade violated the PMA by virtue of their alleged failure to comply with investment guidelines set forth in the Indenture and the PMA, *see*, *e.g.*, SAC ¶¶ 78-108, 171-76, and with "prudent investing standards," *id.* ¶ 99.  But the SAC lumps all three defendants together as the "RIA Defendants" and is silent with respect

---

[9] At the pre-motion conference on this motion, NexPoint appeared to concede that there is no basis to hold Brigade liable for a breach of fiduciary duty and argued that Count 2 should survive as to Brigade given "the fact that the states include primary liability for anyone who aids and abets a breach of fiduciary duty, which pretty much holds them liable as principals." Jan. 4, 2021 Hr'g. Tr. 31:17-21.  Aiding and abetting is a separate cause of action not pled in the SAC and the Court should ignore this "claim" on that basis alone.  But this claim also fails on the merits given that NexPoint has not pled (1) a breach of fiduciary duty by anyone or (2) that Brigade somehow knew about these breaches of fiduciary duty and assisted with them.  *Zohar*, 2021 WL 4460547, at *20 ("to prevail on a claim for aiding and abetting a breach of fiduciary duty a plaintiff must plead: (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a results of the breach.") (internal quotation marks and citation omitted).

7

to the actual parameters that governed Brigade's work. *See, e.g., id.* ¶¶ 76-80, 88, 169-73. NexPoint can neither escape its own allegations that Mr. Terry "effectively approves all trading activity," "exercise[ing] complete dominion over the company and its activities," *id.* ¶ 50; *see also id.* ¶¶ 66-69, nor credibly argue that the Court should find a breach of fiduciary duty either from Brigade's execution of trades at Acis's direction or the mere after-the-fact performance of select investments.[10]

### C. Count 6 Fails To State A Claim For Negligence Against Brigade

Finally, NexPoint has failed to plead a negligence claim against Brigade. To sustain a claim for negligence under New York law, the plaintiff must show that "(1) the defendant owed the plaintiff a cognizable duty of care as a matter of law, (2) the defendant breached that duty, and (3) plaintiff suffered damages as proximate result of that breach." *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 220 (S.D.N.Y. 2019) (dismissing negligence claim where plaintiffs failed to establish an independent duty owed by defendant). "A plaintiff must show more than a duty owed to a potentially limitless class of people, but rather a specific duty owed to the plaintiff." *Pasternack v. Labv Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012). Because Brigade had no contractual relationship with NexPoint, NexPoint must establish that it had some other extra-contractual relationship with Brigade that was the "functional equivalent of privity." *See Brantley v. Mun. Credit Union*, 2021 WL 981334, at *15 (S.D.N.Y. Mar. 16, 2021) (a plaintiff must plead that "[i] the defendant had awareness that its work was to be used for a particular purpose; [ii] there was reliance by a third party known to the defendant in furtherance of that

---

[10] Last, the SAC alleges that "the RIA Defendants have further aided and abetted the breaches by U.S. Bank, as described in Count Three (the acts of which are incorporated by reference herein)." SAC ¶ 179. Count Three, however, is a claim for breach of contract alleged *against Acis*, not U.S. Bank. Even assuming that NexPoint meant "Count Five," the SAC alleges no facts to explain how Brigade aided and abetted a purported breach of fiduciary duty by U.S. Bank.

purpose; and [iii] there existed some conduct by the defendant linking it to that known third party evincing the defendant's understanding of the third party's reliance.") (citing *Fin. Guar. Ins. Co. v. Putnam Advisory Co. LLC*, 783 F.3d 395, 405-06 (2d Cir. 2015)).

Here, NexPoint parrots the legal standard and declares that Brigade "[was] aware" that it "performed services for the Acis CLOs for a particular purpose," SAC ¶ 59, and "also understood, and were fully aware, that investors in the Acis CLOs, like NexPoint, relied on [Acis, Mr. Terry and Brigade] to perform services in furtherance of their collective duty to manage the portfolios of the Acis CLOS," *id.* ¶ 60. Of course, the Court should ignore these conclusory allegations that merely recite certain of the elements of the legal standard. *PetEdge*, 234 F. Supp. 3d at 498 (Woods, J.) (rejecting bare "recitations of the legal elements" of a claim on a motion to dismiss). The SAC is tellingly silent on the third element and fails to allege *any* interaction between Brigade and NexPoint at all, much less the kind of interaction that would impose a duty of care. This is fatal to NexPoint's negligence claim. *Brantley*, 2021 WL 981334, at *16-17 (adopting reasoning from *Credit All. Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 553-54 (1985), and finding absence of any direct communication with plaintiff mandated dismissal of negligence claim).[11]

## II. ADDITIONAL GROUNDS EXIST THAT MANDATE DISMISSAL OF THE CLAIMS AGAINST BRIGADE

In addition to the above Brigade-specific arguments, Brigade also joins in arguments being made by other parties, each of which provide an independent basis to dismiss the claims in this case against Brigade. *First*, Brigade joins the threshold arguments that NexPoint's claims are

---

[11] To the extent NexPoint attempts to plead a claim for gross negligence, *see* SAC ¶ 225, this claim necessarily fails. *See Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008) (dismissing claim for gross negligence on account of failure to state a claim for ordinary negligence). Brigade also joins in Acis's argument that the economic loss rule creates an independent bar to NexPoint's negligence claim. *See* Acis Mot. at 19-20. Brigade likewise joins in the argument that NexPoint's tort claims sound in contract and cannot stand. *See* Acis Mot. at 18-19; U.S. Bank Mot. (ECF No. 81) at 18.

derivative, and dismissal is warranted because NexPoint fails to plead compliance with any of the procedural requirements under Cayman law to assert derivative standing. *See* Acis Mot. at 11-17; *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 2021 WL 4460547, at *11 (S.D.N.Y. Sep. 29, 2021). *Second,* Brigade joins defendants' arguments seeking dismissal of the SAC on the ground that it is barred by the "no-action" clause in the Indenture, which prohibits holders of less than 25% of certain notes from commencing these types of claims. HCLOF Mot. (ECF No. 79) at 6, 9-12; Acis Mot. at 17-18.

## CONCLUSION

For the foregoing reasons, and given that NexPoint has already twice amended its complaint, the SAC should be dismissed with prejudice. *Zhang v. Han*, 2022 WL 62154, at *4 (S.D.N.Y. Jan. 5, 2022) (Woods, J.) ("Where the problem with [a complaint] is substantive [and] better pleading will not cure it, leave to amend should be denied as futile.") (quotations omitted).

Dated:  January 27, 2022  
        New York, New York

Respectfully submitted,

 /s/ Jason C. Hegt  
LATHAM & WATKINS LLP  
Jason C. Hegt  
Alexis Kellert Godfrey  
1271 Avenue of the Americas  
New York, NY 10020  
(212) 906-1200  
Jason.Hegt@lw.com  
Alexis.Godfrey@lw.com

*Attorneys for Defendant Brigade Capital Management, LP*