**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**NEXPOINT STRATEGIC**
**OPPORTUNITIES FUND,**

    *Plaintiff,*

v.

**ACIS CAPITAL MANAGEMENT, L.P.,**
**U.S. BANK, N.A., JOSHUA N. TERRY,**
**BRIGADE CAPITAL MANAGEMENT, L.P.,**

    *Defendants.*

        **Cause No. 1:21-cv-04384-GHW**

---

**PLAINTIFF'S RESPONSE TO ACIS CAPITAL MANAGEMENT, L.P.'S**
**MOTION TO DISMISS AND FOR ATTORNEYS' FEES AND COSTS**

**SBAITI & COMPANY PLLC**

*/s/  Mazin A. Sbaiti*
**Mazin A. Sbaiti**
New York Bar No. 4339057
**Katherine L. Schneider**
New York Bar No. 5333737
**Griffin S. Rubin** (Admitted *Pro Hac Vice*)
Texas Bar No. 24121809
JPMorgan Chase Tower
2200 Ross Avenue – Suite 4900W
Dallas, TX  75201
T:  (214) 432-2899
F:  (214) 853-4367
E:  mas@sbaitilaw.com
    kls@sbaitilaw.com
    gsr@sbaitilaw.com

**Counsel for Plaintiff**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARD ........................................................................................ 2

III.    FACTUAL BACKGROUND ............................................................................ 3

IV.     ARGUMENTS AND AUTHORITIES .............................................................. 5

        A.  Because Plaintiff Has Pleaded Plausible Breaches
            of the IAA, Count I and Count II Should Be
            Allowed to Proceed ................................................................................ 5

            1.  The IAA Imposes Duties Directly to Investors
                in the Funds, Not Just the Funds Being
                Advised or Managed ................................................................. 5

            2.  Acis is an Investment Advisor ................................................... 6

            3.  Rule 206(4)-8 Applies Here Because the CLO
                Is a "Pooled Investment Vehicle" and NexPoint
                is an "Investor" in the CLO ...................................................... 8

            4.  Plaintiff Has Alleged Plausible Breaches of the IAA .............. 10

            5.  Plaintiff Has Set Forth a Plausible Claim
                under Section 215 of the IAA ................................................... 13

            6.  Plaintiff Has Set Forth a Plausible Claim
                for Breach of Fiduciary Duty Under New York Law ............... 19

            7.  Plaintiff has Pled Derivative Standing to Bring
                Both Claims Under Counts I and II If Necessary .................... 21

        B.  Section 5.8 of the Indenture Does Not
            Bar Plaintiff's Claims ......................................................................... 23

        C.  NexPoint's Tort-Based Claims Are Not
            Duplicative of Its Contract Claims ..................................................... 26

        D.  The Economic Loss Rule Does Not
            Apply in This Context.......................................................................... 27

i

      E.  Plaintiff Respectfully Requests Leave
          to Amend to Cure any Pleadings Deficiencies ................................................... 28

      F.  The Court Should Not Award Attorney's
          Fees Irrespective of Disposition.......................................................................... 29

V.      CONCLUSION.............................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u> <u>Page</u>

*Abrahamson v. Fleschner,*
  568 F.2d 862 (2d Cir. 1977)..................................................................................10-11, 16

*Abrams v. Life Med. Techs., Inc.,*
  135 F. Supp. 3d 185 (S.D.N.Y. 2015).................................................................................28

*ACE Sec. Corp., v. DB Structured Prods., Inc.,*
  36 N.E.3d 623 (N.Y. 2015)................................................................................................25

*AMBAC Assurance Corp. v. U.S. Bank Nat'l Ass'n,*
  328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018).......................................................................28

*Am. Fuel Corp. v. Utah Energy Dev. Co.,*
  122 F.3d 130 (2d Cir. 1997)..............................................................................................24

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012)................................................................................................2

*Apple Records, Inc. v. Capitol Records, Inc.,*
  529 N.Y.S.2d 279 (1st Dep't 1988) ..................................................................................20

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................................2

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
  501 U.S. 104 (1991)..........................................................................................................18

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
  493 F.3d 87 (2d Cir. 2007)..................................................................................................2

*Barrett v. Freifeld,*
  883 N.Y.S.2d 305 (2d Dep't 2009)....................................................................................19

*Barton v. Pret A Manger (USA) Ltd.,*
  535 F. Supp. 3d 225 (S.D.N.Y. 2021)..................................................................................2

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)............................................................................................................S

*Belmont v. MB Inv. Partners, Inc.,*
  708 F.3d 470 (3d Cir. 2013)..............................................................................................20

*Bogart v. Shearson Lehman Bros.*,
   No. 91-cv-1036, 1993 U.S. Dist. LEXIS 1182 (S.D.N.Y. 1993)............................................. 17

*Boim v. Quranic Literacy Inst.*,
   291 F.3d 1000 (7th Cir. 2002) ................................................................................ 14

*Brass v. Am. Film Techs. Inc.*,
   987 F.2d 142 (2d Cir. 1993)..................................................................................... 20

*Brazil Fund v. Scudder, Stevens & Clark, Inc.*,
   964 F.Supp. 783 (S.D.N.Y. 1997) ............................................................................ 20

*Ciccone v. Hersh*,
   530 F. Supp.2d 574 (S.D.N.Y. 2008)........................................................................ 20

*City of Chicago v. Fulton*,
   141 S. Ct. 585 (2021)............................................................................................. 16

*Columbia Artists Mgmt., LLC v. Alvarez*,
   2010 U.S. Dist. LEXIS 137154 (S.D.N.Y. Dec. 23, 2010) ....................................... 24

*Commerzbank AG v. U.S. Bank Nat'l Ass'n*,
   277 F. Supp. 3d 483 (S.D.N.Y. 2017)....................................................................... 28

*Cortlandt St. Recovery Corp. v. TPG Capital Mgmt., L.P.*,
   2020 N.Y. Misc. LEXIS 10059 (N.Y. Sup. Ct. Oct. 22, 2020) ................................. 25

*DeBlasio v. Merrill Lynch & Co.*,
   No. 07-cv-64848, 2009 U.S. Dist. LEXIS 64848 (S.D.N.Y. July 27, 2009) ........................... 18

*Dorking Genetics v. United States*,
   76 F.3d 1261 (2d Cir. 1996).................................................................................... 26

*Dormitory Auth. v. Samson Constr. Co.*,
   94 N.E.3d 456 (N.Y. 2018)...................................................................................... 27

*Douglass v. Beakley*,
   900 F. Supp. 2d 736 (N.D. Tex. 2012) .................................................................... 19

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
   396 F.3d 136 (2d Cir. 2005)..................................................................................... 18

*Fierro v. City of New York*,
   No. 1:20-cv-09966, 2022 U.S. Dist. LEXIS 24549, (S.D.N.Y. Feb. 10, 2022) ......................... 2

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
   750 N.E.2d 1097 (N.Y. 2001) ........................................................................ 28

*Flickinger v. Harold C. Brown & Co.*,
   947 F.2d 595 (2d Cir. 1991) .......................................................................... 19

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ............................................................. 2

*GPIF-I Equity Co., Ltd. v. HDG Mansur Inv. Servs., Inc.*,
   No. 13-cv-547, 2014 U.S. Dist. LEXIS 55193 .............................................. 17

*Goldenson v. Steffens*,
   No. 2:10-cv-440, 2014 U.S. Dist. LEXIS 201258, (D. Me. Mar. 7, 2014) ........... 20

*Grgurev v. Licul*,
   229 F. Supp. 3d 267 (S.D.N.Y. 2017) ............................................................ 27

*Hydro Invs., Inc. v. Trafalgar Power Inc.*,
   227 F.3d 8 (2d Cir. 2000) .............................................................................. 28

*In re AllianceBernstein Mut. Fund Excessive Fee Litig.*,
   No. 04-cv-4885, 2005 U.S. Dist. LEXIS 24263 (S.D.N.Y. Oct. 19, 2005) ........... 17

*In re Evergreen Mut. Funds Fee Litig.*,
   423 F. Supp. 2d 249 (S.D.N.Y. 2006) ............................................................ 16

*In re Estate of STRAUT*,
   27 N.E. 259 (N.Y. 1891) ............................................................................... 22

*In re Platinum & Palladium Antitrust Litig.*,
   449 F. Supp. 3d 290 (S.D.N.Y. 2020) .............................................................. 2

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
   309 F.3d 76 (2d Cir. 2002) ............................................................................ 27

*Johnson v. Nextel Commc'n, Inc.*,
   660 F.3d 131 (2d Cir. 2011) .......................................................................... 26

*King County v. IKB Deutsche Industriebank AG*,
   863 F. Supp. 2d 288 (S.D.N.Y. 2012) ............................................................ 28

*Klebanow v. N.Y. Produce Exch.*,
   344 F.2d 294 (2d Cir. 1965) .......................................................................... 22

*Kurz v. Fid. Mgmt. & Research Co.*,
   556 F.3d 639 (7th Cir. 2009) ................................................................ 11

*Laird v. Integrated Res.*,
   897 F.2d 826 (5th Cir. 1990) ................................................................ 17

*Lovatio v. Petróleos de Venezuela, S.A.*,
   No. 1:19-cv-4799, 2020 U.S. Dist. LEXIS 181114 (S.D.N.Y. Sept. 30, 2020) ..................... 25

*Lynch v. City of New York*,
   952 F.3d 67 (2d Cir. 2020).................................................................... 2

*Mandelblatt v. Devon Stores, Inc.*,
   521 N.Y.S.2d 672 (1st Dep't 1987) ......................................................... 19

*Margaret Hall Found., Inc. v. Atl. Fin. Mgmt., Inc.*,
   572 F. Supp. 1475 (D. Mass. 1983) ......................................................... 17

*Mary Jo C. v. N.Y. State & Local Ret. Sys.*,
   707 F.3d 144 (2d Cir. 2013).................................................................. 19

*Minerva Surgical, Inc. v. Hologic, Inc.*,
   141 S. Ct. 2298, 2307 (2021)................................................................. 18

*Morris v. Wachovia Sec., Inc.*,
   277 F. Supp. 2d 622, 643–44 (E.D. Va. 2003) ............................................. 17

*New York ex rel. Tzac, Inc. v. New Isr. Fund*,
   520 F. Supp. 3d 362 (S.D.N.Y. 2021)........................................................ 2

*Norman v. Salomon Smith Barney, Inc.*,
   350 F. Supp. 2d 382 (S.D.N.Y. 2004) (Lynch, J.) ......................................... 16

*Omega Overseas, Ltd. v. Griffith*,
   No. 13-cv-4202, 2014 U.S. Dist. LEXIS 109781 (S.D.N.Y. Aug. 7, 2014)................. 17

*Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*,
   595 F.3d 86 (2d Cir. 2010)................................................................... 10

*Phx. Light SF Ltd. v. Wells Fargo Bank, N.A.*,
   No. 14-cv-10102, 2021 U.S. Dist. LEXIS 233418 (S.D.N.Y. Dec. 6, 2021) .............. 24

*Quadrant Structured Prods. Co., Ltd. v. Vertin*,
   16 N.E.3d 1165 (N.Y. 2014).................................................................24-26

*Rapillo v. Fingerhut*,
No. 09-cv-10429, 2016 U.S. Dist. LEXIS 202573 (S.D.N.Y. Sept. 14, 2016) ....................... 16

*Republic of Haiti v. Duvalier*,
626 N.Y.S.2d 472 (N.Y. App. Div. 1995) ............................................................. 27

*Republic of Iraq v. ABB AG*,
768 F.3d 145 (2d Cir. 2014)............................................................................ 18

*SEC v. ABS Manager, LLC*,
No. 13cv319, 2014 U.S. Dist. LEXIS 80542 (S.D. Cal. 2014) .................................. 6

*SEC v. Cap. Gains Rsch. Bureau, Inc.*,
375 U.S. 180 (1963)...................................................................................... 6

*SEC v. Eldridge*,
2007 U.S. Dist. LEXIS 102832 (N.D. Ga., Mar. 20, 2007)...................................... 7

*SEC v. Fife*,
311 F.3d 1 (1st Cir. 2002) ............................................................................. 7

*SEC v. Markusen*,
143 F.Supp.3d 877 (D. Minn. 2015) ............................................................9-10

*SEC v. Murray*,
No. 12-cv-01288-EMC, 2016 U.S. Dist. LEXIS 162799 (N.D. Cal. 2016) ................. 7

*SEC v. Tambone*,
550 F.3d 106 (1st Cir. 2008)........................................................................... 6

*Soderberg v. Gens*,
652 F. Supp. 560 (N.D. Ill. 1987) .................................................................... 17

*STM Invest S.A.R.L. v. 3P Equity Partners, LLC*,
No. 19-cv-1764, 2019 U.S. Dist. LEXIS 100340 (C.D. Cal. June 14, 2019) ........................ 15

*Trainmen v. Baltimore & Ohio R.R.. Co.*,
331 U.S. 519 (1947) ..................................................................................... 19

*Transamerica Mortgage Advisors (TAMA) v. Lewis*,
444 U.S. 11 (1979)....................................................................................... 5

*Travelers Cas. & Sur. Co. v. Dormitory Auth.*,
734 F. Supp. 2d 368 (S.D.N.Y. 2010).............................................................. 27

*United States v. Lockhart*,
   749 F.3d 148 (2d Cir. 2014) ................................................................................. 14

*United States v. Onsa*,
   No. 10-cr-730 (DLI), 2013 U.S. Dist. LEXIS 30118, (E.D.N.Y. 2013) ................................... 7

*United States v. Zukerman*,
   897 F.3d 423 (2d Cir. 2018) .................................................................................. 25

*United States SEC v. Ahmed*,
   308 F. Supp. 3d 628 (D. Conn. 2018) ...................................................................... 7

*Uravic v. F. Jarka Co.*,
   282 U.S. 234 (1931) .......................................................................................... 16

*Welch v. TD Ameritrade Holding Corp.*,
   No. 07-cv-6904, 2009 U.S. Dist. LEXIS 65584 (S.D.N.Y. July 27, 2009) ............................ 17

*Wu v. Tang*,
   No. 3:10-cv-0218, 2011 U.S. Dist. LEXIS 4489 (N.D. Tex. Jan. 14, 2011) ........................... 17

*Zola v. TD Ameritrade, Inc.*,
   172 F. Supp. 3d 1055 (D. Neb. 2016) ...................................................................... 11

## Rules and Statutes

Fed. R. Civ. P. 8(d)(2)–(3) ................................................................................... 21, 27

15 C.F.R. § 275.206(4)-8 ..................................................................................... 6, 9

15 U.S.C. § 80b-8(d) ........................................................................................... 8

## Other Authorities

Antonin Scalia & Bryan A. Garner, Reading Law:
   The Interpretation of Legal Texts 101 (2012) ........................................................ 16

William N. Eskridge, Interpreting Law:
   A Primer on How to Read Statutes and the Constitution 348 (2016) ............................ 18

*Hearing on S. 3580 Before the S. Subcomm. on*
   *Sec. & Exch. of the S. Comm. on Banking & Currency*, 76th Cong. 51 (1940) ................... 15

H.R. Rep. No. 76-2639 (1940) ............................................................................... 15

INVESTMENT COMPANY ACT of 1940 ...................................................................................*passim*

INVESTMENT ADVISERS ACT of 1940 15 U.S.C. 80b-1 to -21 .................................................. 1, 11

SEC Risk Alert, "Compliance Issues Related to Best Execution by Investment Advisers," Office of Compliance Inspections and Examinations (OCIE) ..................................................... 12

S. Rep. No. 76-1775 (1940) ........................................................................................................... 15

# I.

## <u>INTRODUCTION</u>

Defendant Acis Capital Management, L.P.'s ("<u>Acis</u>")'s Motion to Dismiss should be denied. Under Acis's retelling of the facts and recasting of the law, Plaintiff NexPoint Strategic Opportunities Fund ("<u>NexPoint</u>") pleaded no claims, notwithstanding the rather specific allegations populating the operative complaint. Placing to the side Acis's immaterial rhetoric, Acis's motion is notable for the lack of any argument that NexPoint's allegations do not give rise to violations of the Investment Advisers Act of 1940 (the "<u>IAA</u>"), violations of fiduciary duties, and that Acis's actions do not amount to conversion.

NexPoint's claims under the IAA are based upon a simple thesis that Acis seems to ignore: § 206 and the regulations promulgated thereunder create fiduciary duties owed to investors of pooled investment funds like the Acis-6 CLO. As such, Acis's status as an investment advisor means it is liable to NexPoint for violations of § 206 and the accompanying rules and regulations— all in terms of the federal claim arising under § 215 of the IAA and state-law fiduciary-duty claims, which are predicated on violations of the underlying IAA provisions.

Acis's argument regarding derivative versus direct standing is a red herring intended to distract the Court—NexPoint has pleaded more than is sufficient to state claims under the Federal Rules of Civil Procedure. Additionally, New York law reveals that the "no-action" clause does not apply to extracontractual claims and, in any event, is contractual, the violation of which may only result in a counterclaim or affirmative defense. It does not forestall the accrual of a cause of action.

As such, NexPoint respectfully requests that the Court deny Acis's motion to dismiss in its entirety. If the Court deems that there is any pleading deficiency, Plaintiff respectfully requests that the Court grant leave to amend to cure same.

## II.

## <u>LEGAL STANDARD</u>

"Motions to dismiss are generally viewed with disfavor." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 178 (S.D.N.Y. 2010). "To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *New York ex rel. Tzac, Inc. v. New Isr. Fund*, 520 F. Supp. 3d 362, 372 (S.D.N.Y. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully." *Fierro v. City of New York*, No. 1:20-cv-09966, 2022 U.S. Dist. LEXIS 24549, at \*11 (S.D.N.Y. Feb. 10, 2022). And because the task for courts is "to assess the legal feasibility of a complaint . . . [and] not to assess the weight of the evidence that might be offered on either side," *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020), "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made . . . on a Rule 12(b)(6) motion," *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *In re Platinum & Palladium Antitrust Litig.*, 449 F. Supp. 3d 290, 302–03 (S.D.N.Y. 2020) (quoting *Iqbal*, 556 U.S. at 679). Courts must "accept[] as true all well-pleaded factual allegations and draw[] all reasonable inferences in the plaintiff's favor." *Barton v. Pret A Manger (USA) Ltd.*, 535 F.Supp.3d 225, 235 (S.D.N.Y. 2021).

## III.

## <u>FACTUAL BACKGROUND</u>

Plaintiff NexPoint's Second Amended Complaint sets forth the allegations and facts. NexPoint summarizes them here for brevity's sake:

NexPoint is an investor in the Acis Collateralized Loan Obligation (the "<u>Acis CLO</u>").[1] The Acis CLO is governed by an Indenture, a trust agreement which is governed by New York law.[2] The Acis CLO was created on or about April 16, 2015.[3]

By its terms, the Acis CLO is a trust.[4] Under the Indenture, the Trustee, Defendant U.S. Bank, was assigned legal title to all property belonging to the issuers—essentially, the trust settlors—including various asset-management and advisory contracts with Acis as Portfolio Manager subject to the Portfolio Management Agreement (the "<u>PMA</u>"), and, by extension, Defendant Joshua Terry ("<u>Terry</u>") as investment advisor and any sub-advisors.[5] Defendant Brigade Capital Management LP ("<u>Brigade</u>") is the current sub-advisor.[6]

Acis, Terry, and Brigade are alleged to be registered investment advisors subject to the IAA.[7]

---

[1] Second Am. Compl. at p. 2, ¶¶ 38–39.

[2] *See id.; see also* Ex. A, Acis CLO Indenture.

[3] *See* Ex. A, Acis CLO Indenture, cover page.

[4] *See id.* at p. 2 ("The Co-Issuers are entering into this Indenture and the Trustee is accepting the trusts created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged."); *id.* at pp. 2–3 (bearing the Grantor Clauses, which state, in relevant part, "The Trustee acknowledges such Grants, accepts the trusts hereunder in accordance with the provisions hereof").

[5] *See id.* at p. 2 (Grantor Clauses). The terms of the Indenture are summarized in the offering circular for the Acis CLO, which represented the major terms in the Indenture. *See* Exhibit C.

[6] *See* Second Am. Compl. at p. 2, ¶¶ 37, 45–47.

[7] *See id.* at ¶ 46.

Plaintiff's core allegations are that Defendants engaged acts that, taken together, amounted to a self-dealing fraudulent, deceptive, or manipulative scheme to injure NexPoint as an investor:

First, Plaintiff alleges that Acis charged fees based upon assets under management that were inflated via accumulating assets that failed the various collateral-quality tests under the Indenture and the PMA.[8]

Second, Plaintiff alleges that Acis inflated expenses, or charged expenses, outside of what is authorized and in excess of what had historically been charged. Plaintiff specifically shows how, upon taking over the Acis CLO, Acis began taking expenses that were orders of magnitude higher than what had been in the past and what would appear to have been authorized by the Indenture and the PMA.[9]

Third, Plaintiff alleges that Acis, Terry, and Brigade repeatedly violated the best execution rule in the way they purchased and sold securities.[10]

Fourth, Plaintiff alleges that Acis, Terry, and Brigade failed to protect the value of certain collateral by holding on to it when they should not have.[11]

NexPoint maintains that each of these allegations is violates both the Advisers Act and the Indenture, and altogether was part of a scheme to misappropriate money that Defendants were not entitled to under the law and under the various agreements.

Plaintiff turns next to the substantive arguments.

---

[8] *See id.* at p. 2, ¶¶ 20–36, 54, 56, 69–94, 119–122; *see also, e.g.*, Indenture 4 at p. 15 (*see* definition of "Collateral Quality Test"), p. 37 (*see* definition of "Market Value"), and §§ 1.2, 7.18, and 12; Indenture 5 at p. 14 (*see* definition of "Collateral Quality Test"), p. 36 (*see* definition of "Market Value"), and §§ 1.2, 7.18, and 12; Indenture 5 at p. 14 (*see* definition of "Collateral Quality Test"), p. 36 (*see* definition of "Market Value"), and §§ 1.2, 7.18, and 12; Ex. A, Acis CLO Indenture at p. 14 (*see* definition of "Collateral Quality Test"), p. 35 (*see* definition of "Market Value"), §§ 1.2, 7.18, 12.

[9] Second Am. Compl. at p. 2, ¶¶ 63–64, 69, 171, 229, 231, 233.

[10] *Id.* at p. 2, ¶¶ 101–108.

[11] *Id.* at p. 2, ¶¶ 87, 94–100.

**IV.**

**ARGUMENTS AND AUTHORITIES**

**A.  BECAUSE PLAINTIFF HAS PLEADED PLAUSIBLE BREACHES OF THE ADVISERS ACT, COUNT I AND COUNT II SHOULD BE ALLOWED TO PROCEED**

    **1.  The IAA Imposes Duties Directly to Investors in the Funds, Not Just the Funds Being Advised or Managed**

The IAA imposes duties on investment advisors which are owed directly to the investors they ultimately serve (and not just the funds). Section 206 is the statute that imposes fiduciary duties on investment advisors. *See Transamerica Mortg. Advisors (TAMA) v. Lewis*, 444 U.S. 11, 17 (1979) ("As we have previously recognized, § 206 establishes 'federal fiduciary standards' to govern the conduct of investment advisers. Indeed, the Act's legislative history leaves no doubt that Congress intended to impose enforceable fiduciary obligations." (citations omitted)).

Section 206(d) expressly provides that it is a violation of the IAA to "engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b-6(4). However, the provision also states that the SEC can define these fiduciary duties further. *Id.*

Pursuant to that authority, the SEC promulgated Rule 206(4)-8, which provides:

> (a) Prohibition. It shall constitute a fraudulent, deceptive, or manipulative act, practice, or course of business within the meaning of Section 206(4) of the Act (15 U.S.C. 80b-6(4)) for any investment adviser to a pooled investment vehicle to:

>     (1) Make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, **to any investor** or prospective investor in the pooled investment vehicle; or

>     (2) Otherwise engage in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any **investor** or prospective investor in the pooled investment vehicle.

> (b) Definition. For purposes of this section "pooled investment vehicle" means any investment company as defined in section 3(a) of the Investment

> Company Act of 1940 (15 U.S.C. 80a-3(a)) or any company that would be
> an investment company under section 3(a) of that Act but for the exclusion
> provided from that definition by either section 3(c)(1) or section 3(c)(7) of
> that Act (15 U.S.C. 80a-3(c)(1) or (7)).

15 C.F.R. § 275.206(4)-8 (emphasis added) ("Rule 206(4)-8"). The regulation does not limit itself

to the direct client of the advisor, *i.e.*, the pooled investment fund—in fact, it expressly mentions

that the advisor owes a duty directly to the *investors* in that fund as well. *Accord SEC v. Tambone*,

550 F.3d 106, 146 (1st Cir. 2008) ("[15 U.S.C. § 80b-6] imposes a fiduciary duty on investment

advisers to act at all times in the best interest of the fund *and its investors*." (emphasis added)).

Section 206(4) and, by extension, Rule 206(4)-8 do not require a showing of actual intent

fraud—negligence is sufficient to violate these provisions. *See SEC v. Cap. Gains Rsch. Bureau,

Inc.*, 375 U.S. 180, 195 (1963) (noting that Congress when passing Section 206 did not intent to

require proof of common law fraud); *Robare Grp., Ltd. v. SEC*, 922 F.3d 468, 472 (DC Cir. 2019)

("Proof of simple negligence suffices for a violation of Section 206(2)").

Courts have held that acts which could serve as violations of other portions of § 206 or the

IAA may also be actionable under Rule 206(4)-8. *SEC v. ABS Manager, LLC*, No. 13-cv-319,

2014 U.S. Dist. LEXIS 80542, at *45 (S.D. Cal. June 11, 2014) (adopting SEC's position and

granting summary judgment as to violations of Rule 206(4)-8 because "section 206(4) and Rule

275.206(4)-8 . . . prohibit the same conduct as sections 206(1) and 206(2) but in connection with

'pooled investment vehicles'").

Courts have further held that violations of an indenture by an investment advisor can serve

as predicate violations of the IAA. *See, e.g.*, *Norddeutsche Landesbank Girozentrale v. Tilton*, No.

651695/2015, 2018 N.Y. Misc. LEXIS 6672, at *8–9 (N.Y. Sup. Ct. Dec. 27, 2018).

## 2. Acis Is an "Investment Advisor"

Section 202(a)(11) of the IAA defines "investment adviser" as:

> [A]ny person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities.

15 U.S.C. § 80b-2(a)(11). "This is a 'broad definition,' and reaches persons who receive compensation for investing funds of their clients or who advise their customers by exercising control over what purchases and sales are made with their clients' funds." *United States SEC v. Ahmed*, 308 F. Supp. 3d 628, 652 (D. Conn. 2018) (citations omitted).

Acis does not deny that it is an investment advisor. The PMA and the Indenture confirm that Acis satisfies the statutory definition. *See id.; United States v. Onsa*, No. 10-cr-730, 2013 U.S. Dist. LEXIS 30118, at *7 (E.D.N.Y. Mar. 1, 2013) (holding that "portfolio managers . . . who manage the investors' money in return for a percentage of the profit by directing the fund to purchase and sell securities falls within the definition of investment adviser for purposes of the [IAA]"); *see also Goldenson v. Steffens*, No. 2:10-cv-00440, 2014 U.S. Dist. LEXIS 201258, at *139 (D. Me. Mar. 7, 2014). "The 'for compensation' element of the [IAA] can be satisfied by mere entitlement to compensation; actual receipt of money is not required." *SEC v. Murray*, No. 12-cv-01288, 2016 U.S. Dist. LEXIS 162799, at *17 (N.D. Cal. Nov. 23, 2016); *see SEC v. Fife*, 311 F.3d 1, 11 (1st Cir. 2002) ("[A]lthough Fife has not yet received compensation, he understood that he would be compensated for his efforts by a commission based on a percentage of the profits from the investments, *if successful*, pursuant to a formula to be agreed upon at a later time. Therefore, the district court did not err in holding that the SEC set forth a substantial likelihood of success against Fife under the [IAA]."); *SEC v. Eldridge*, 2007 U.S. Dist. LEXIS 102832, at *32 (N.D. Ga., Mar. 20, 2007) (finding that there is no genuine issue of material fact that the defendant

was an investment adviser because, among other things, it "was to receive compensation for its services rendered as an investment adviser, pursuant to the Trust Management Agreements").

And the mere fact that Acis may have been acting through delegees or indirectly is irrelevant. *See* 15 U.S.C. § 80b-8(d) ("It shall be unlawful for any person indirectly, or through or by any other person, to do any act or thing which it would be unlawful for such person to do directly under the provisions of this title [15 U.S.C. § 80b-1 *et seq.*] or any rule or regulation thereunder.").

### 3. Rule 206(4)-8 Applies Here Because the CLO Is a "Pooled Investment Vehicle" and NexPoint is an "Investor" in the CLO

Here, the CLO is a "pooled investment fund" because it would be an "investment company" under the Investment Company Act of 1940 "but for the exclusion provided from that definition by either section 3(c)(1) or section 3(c)(7) of that Act [15 U.S.C. 80a-3(c)(1) or (7)]." *Id*. The Indenture plainly states that 100% of its assets will be for investment purposes.[12] This brings it under the definition of "Investment Company" in, at the very least, 15 U.S.C. § 80a-3(a)(1)(A) and (C), which state that an investment company is an issuer that "is or holds itself out as being engaged primarily, or proposes to engage primarily, in the business of investing, reinvesting, or trading in securities" or that "is engaged or proposes to engage in the business of investing, reinvesting, owning, holding, or trading in securities, and owns or proposes to acquire investment securities having a value exceeding 40 per centum of the value of such issuer's total

---

[12] *See, e.g.*, Exhibit A, Indenture for Acis CLO-6 ("Indenture") at p. 2 (Preliminary Statement and Granting Clauses); Exhibit C, Offering Circular for Acis CLO-6, at p. 2 ("The Issuer's investment portfolio consists primarily of debt obligations (including, but not limited to, interests in bank loans acquired by way of a sale or assignment, Participation Interests and high-yield debt securities, in each case, generally rated below investment grade). The portfolio will be managed by Acis Capital Management, L.P."); *id.* at 107 ("The Issuer will not have any material assets other than the Collateral Obligations and certain other eligible assets. The Collateral Obligations and such other eligible assets will be pledged to the Trustee as security for the Issuer's obligations under the Secured Notes and the Indenture. . . The Issuer has, and will have, no assets other than the sum of US$250.").

---

assets[.]".

Furthermore, §§ 3(c)(1) and 3(c)(7) do apply: the securities of the Acis CLO are not held by more than 100 persons (at all relevant times, there have been only two holders: NexPoint and Intervenor Highland CLO Funding Ltd. ("HCLOF"));[13] there has not been and will not be a public offering,[14] and the holders are all qualified purchasers.[15] None of the other exceptions in § 3(c) apply. Therefore, the CLO meets the definition of a "pooled investment vehicle" under Rule 206(4)-8. *Accord SEC v. Markusen*, 143 F. Supp. 3d 877, 891 (D. Minn. 2015) (holding that investors claims under 17 C.F.R. § 275.206)(4)-8 survived because the fund was a "pooled investment vehicle" as defined therein by having fewer than 100 investors and not publicly offering its securities).

NexPoint has alleged, and in fact no Defendant has denied, that NexPoint is an "investor" in the CLO.[16] And as an investor in a pooled investment vehicle, NexPoint is the direct beneficiary of the duties promulgated in Rule 206(4)-8, in light of the regulation's plain terms.

Therefore, as an investment adviser, Acis owes statutory duties under the IAA to NexPoint as an investor in the CLO. The Second Circuit in *Abrahamson v. Fleschner* held that investors in a pooled investment fund (formed as a limited partnership) could maintain a direct action against the manager of the fund under the IAA. 568 F.2d 862, 871 (2d Cir. 1977) (holding that the IAA's "provisions reflect the fact that many investment advisers 'advise' their customers by exercising control over what purchases and sales are made with their clients' funds" and finding that limited partners had right to seek direct redress from fund's advisor), *overruled in part on other grounds*

---

[13] *See* Ex. C, Offering Circular for Acis CLO-6, at p. iii (noting only a single purchaser of notes at the time of issuance).

[14] *See id.*

[15] *See id.* at p. 1 (noting status of noteholders as qualified investors or other exempt holders).

[16] *See, e.g.*, Second Am. Compl. at p. 2, ¶¶ 38–39.

*by TAMA,* 444 U.S. at 11.[17] *Accord Markusen*, 143 F. Supp. 3d at 891 (D. Minn. 2015) (denying motion to dismiss action by investors against manager of fund); *see also Goldenson*, 2014 U.S. Dist. LEXIS 201258, at *139 (holding that an adviser to a pooled vehicle had general fiduciary duty to investors in the pooled vehicle even as to outside investments).

Accordingly, if NexPoint has alleged facts and circumstances that lead to plausible violations of § 206(4) and Rule 206(4)-8 of the IAA, both the § 215 and breach-of-fiduciary-duty causes of action, Counts I and II, respectively, would have to go forward.

**4. Plaintiff Has Alleged Plausible Breaches of the IAA**

Plaintiff has alleged four buckets of wrongdoing, each of which constitutes a fraudulent, deceptive, or manipulative practice or course of business.

First, Plaintiff alleges that Acis charged fees based upon assets under management that were inflated via accumulating assets that failed the various collateral-quality tests under the Indenture and the PMA.[18] Courts have held that an advisor's misuse and misappropriation of fund moneys or assets is inherently deceptive. *SEC v. Penn*, 225 F. Supp. 3d 225, 237 (S.D.N.Y. 2016) (holding that act of overcharging fund for expenses that were not properly calculated was "inherently deceptive" and met the standards of § 206(1) and (2)); *Operating Local 649 Annuity Tr. Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 93 (2d Cir. 2010) (noting it would be a

---

[17] In *Abrahamson*, the Second Circuit found an implied private right of action existed directly from § 206. *TAMA* later corrected this and held that violations of § 206 could be vindicated under federal law via a § 215 claim because Congress did not imply a cause of action under § 206 for compensatory damages. *TAMA*, 444 U.S. at 19. The Supreme Court, however, did not reverse or abrogate the right of the investors to bring such a claim as opposed to the fund doing so.

[18] Second Am. Compl. at p. 2, ¶¶ 20–36, 54, 56, 69–94, 119–122; *see also, e.g.*, Indenture 4 at p. 15 (*see* definition of "Collateral Quality Test"), p. 37 (*see* definition of "Market Value"), and §§ 1.2, 7.18, and 12; Indenture 5 at p. 14 (*see* definition of "Collateral Quality Test"), p. 36 (*see* definition of "Market Value"), and §§ 1.2, 7.18, and 12; Indenture 5 at p. 14 (*see* definition of "Collateral Quality Test"), p. 36 (*see* definition of "Market Value"), and §§ 1.2, 7.18, and 12; Ex. A, Acis CLO Indenture at p. 14 (*see* definition of "Collateral Quality Test"), p. 35 (*see* definition of "Market Value"), §§ 1.2, 7.18, 12.

---

violation of Section 206 where manager "lined [its] pockets at the expense of investors").

Second, Plaintiff alleges that Acis inflated expenses, or charged expenses, outside the of what is authorized, and in excess of what had historically been charged. Plaintiff specifically shows how, upon taking over the CLO, Acis began taking expenses that were orders of magnitude higher than what had been in the past and what would appear to have been authorized by the Indenture and the PMA.[19] These likewise would be violations of the duties under Rule 206(4)-8. *See Penn*, 225 F. Supp. 3d at 237; *Operating Local 649*, 595 F.3d at 93. Specifically, calling the charges "expenses" or "fees" where they were not would be tantamount to a misrepresentation, and taking them without authority would likewise be a misrepresentation. Furthermore, the act of collecting the fees and expenses without authorization or disclosure is "inherently deceptive." *Penn*, 225 F. Supp. 3d at 237.

Third, Plaintiff alleges that Acis, Terry, and Brigade repeatedly violated the best execution rule in the way they purchased and sold securities.[20] "'Best execution'—getting the optimal combination of price, speed, and liquidity for a securities trade—affects the net price that investors pay or receive for securities and is, accordingly, widely understood as a subject of regulation under the Securities and Exchange Act of 1934 and related laws, such as the Investment Advisers Act of 1940 and the Investment Company Act of 1940." *Kurz v. Fid. Mgmt. & Research Co.*, 556 F.3d 639, 640 (7th Cir. 2009) (citation omitted). "The SEC considers the failure to provide best execution a possible 'manipulative, deceptive or other[wise] fraudulent device.'" *Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055, 1071–72 (D. Neb. 2016) (citation omitted). The SEC has likewise explained that

> [a]s a fiduciary, when an adviser has the responsibility to select broker-dealers and

---

[19] Second Am. Compl. at p. 2, ¶¶ 63–64, 69, 171, 229, 231, 233.

[20] *Id.* at p. 2, ¶¶ 101–108.

execute client trades, the adviser has an obligation to seek to obtain "best execution" of client transactions, taking into consideration the circumstances of the particular transaction. An adviser must execute securities transactions for clients in such a manner that the client's total costs or proceeds in each transaction are the most favorable under the circumstances.[21]

Fourth, Plaintiff alleges that Acis, Terry, and Brigade failed to protect the value of certain collateral by holding on to it when they should not have for their own benefit.[22] These too are violations for the reasons outlined above—they breach the duties to properly manage the funds and, as a part of a seal-dealing scheme, are inherently deceptive. *Penn*, 225 F. Supp. 3d at 237. *See also Robare Grp., Ltd. v. SEC*, 922 F.3d 468, 472 (DC. Cir. 2019) ("[c]iting *Capital Gains*, the Securities and Exchange Commission has long held that '[f]ailure by an investment adviser to disclose potential conflicts of interest to its clients constitutes fraud within the meaning of Sections 206(1) and (2).'") (citations omitted).

While these violations are, to an extent, interrelated as part of a single scheme, they each (or together) constitute a fraudulent, deceptive, or manipulative practice or course of business in violation of the IAA and SEC Rule 206(4)-8. NexPoint has alleged that as a result of this scheme, moneys that otherwise should have come to NexPoint as the equity distributee have not come and should be disgorged or restored to Plaintiff.[23]

Nothing in Acis's motion even attempts to argue that it has not violated the IAA as laid out herein. Instead, Acis fixates on hyper-technical "gotchas" and contractual formalities that have no

---

[21] *See* SEC Risk Alert, "Compliance Issues Related to Best Execution by Investment Advisers," Office of Compliance Inspections and Examinations (OCIE), http://files.constantcontact.com/ 91f8b315501/c23b6a5f-36fd-4917-b79c-fe81810135b5.pdf (last visited Feb. 22, 2022).

[22] Second Am. Compl. at p. 2, ¶¶ 87, 94–100

[23] *See id.* at ¶ 64 ("the capital of both the noteholders and equity holders have effectively been held hostage, allowing Acis to covet this capital belonging to the CLOs' investors."); *id.* at ¶ 229 ("The payment of these expenses is pulled from a reserve of specific and identifiable equity, which includes funds belonging to NexPoint (to the extent it is an equity holder under the Acis CLOs)."); *see also id.* at ¶¶ 158, 190, 247(C).

bearing on the substance of the issues. These are addressed below.

**5. Plaintiff Has Set Forth a Plausible Claim under Section 215 of the IAA**

Having established the predicate violations under the IAA, NexPoint address why it has properly pleaded a claim under Count I. Section 215(b) of the IAA renders any contract void *as to the rights of the violator and any third party who knew of the violation* where (1) the contract was made in violation of the IAA, (2) if in the performing of the contract, the investment advisor violated the IAA, or (3) if the investment advisor continues a relationship or course of conduct in violation of the IAA. *See* 15 U.S.C. § 80b-15(b); *TAMA*, 444 U.S. at 19 (recognizing a private right of action for partial or total rescission under § 215(b)).

Thus, § 215 provides NexPoint with the right to reverse the payments to Acis that were caused by or the result of the voidable actions. Plaintiff has pleaded that there was a series of transactions over the relevant period of time that caused these losses.

Acis, on the other hand, maintains that the only way to state a claim under § 215(b) is for NexPoint to "allege that the PMA was made illegally or requires illegal performance." Acis Mot. to Dismiss, Dkt. No. 84 at p. 6. On the first of these points, Acis contends that if someone violates § 206, that statutory transgression cannot void the contract under § 215 barring the involvement of some other illegality. *Id*. This position is plainly wrong.

Section 215(b) provides:

> Every contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason

of which the making or performance of such contract was in violation of any such provision.

15 U.S.C. § 80b-15(b). Giving "the statutory terms their 'ordinary or natural' meaning," *United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014) (citation omitted), yields the following:

- "Every contract made in violation of any provision of this title shall be void" includes any contract containing terms in violation of the IAA.

- "[E]very contract heretofore or hereafter made" simply means any contract.

- "[T]he performance of which" means during "the execution of an action." *Performance*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/performance (last visited Feb. 17, 2022).

- The phrases "the violation of any provision of this title or any rule, regulation, or order thereunder" and "the continuance of any relationship or practice in violation of any provision of this title or any rule, regulation, or order thereunder" are clear—they reference direct and particular indirect violations of any provision of the IAA, 15 U.S.C. 80b-1 to -21, or any rule, regulation, or order made pursuant to the IAA.

- "[S]hall be void" means what it says (and more, per the Supreme Court). *See TAMA*, 444 U.S. at 18–19.

Acis hangs its hat on the meaning of "involves," believing this word to mean "requires" or "is necessary to." However, the term "involve" is ambiguous, capable of both narrow and broad interpretations. *Accord Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1010 (7th Cir. 2002) (finding the word "involve" capable of "many possib[le]" meanings). While "involve" can narrowly include those things that are required, it can also refer more broadly to things *related to* the matter without being necessary. *See Involve*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/involve (last visited Feb. 17, 2022).

The latter, broader definition is more appropriate for a few reasons.

First, the broader reading serves the broad remedial purpose of the Advisers Act. *See Cap. Gains*, 375 U.S. at 195 (finding that the IAA should "be construed like other securities legislation

'enacted for the purpose of avoiding frauds,' not technically and restrictively, but flexibly to effectuate its remedial purposes"); *Abrahamson*, 568 F.2d at 875; *see also* H.R. REP. NO. 76-2639, at 28 (1940) ("The essential purpose of [the IAA] is to protect the public from the frauds and misrepresentations of unscrupulous tipsters and touts and to safeguard the honest investment adviser against the stigma of the activities of these individuals by making fraudulent practices by investment advisors unlawful."); S. REP. NO. 76-1775, at 21 (1940) ("Not only must the public be protected from the frauds and the misrepresentations of unscrupulous tipsters and touts, but the bona fide investment counsel must be safeguarded against the stigma of the activities of th[ose who are not]."); *Hearing on S. 3580 Before the S. Subcomm. on Sec. & Exch. of the S. Comm. on Banking & Currency*, 76th Cong. 51 (1940) (Statement of David Schenker, Chief Counsel, SEC Commission Investment Trust Study) ("[Investment advisors] are impeded in doing th[eir] job by the fact that there is a fringe of people who . . . crash in on the good will [of legitimate investment advisors] by giving themselves a designation.").

Second, reading the second sentence's use of the term "involves" as meaning to require— as in, the face of the contract cannot be performed without violating the IAA—makes the entirety of the first sentence duplicative: a contract that "requires" one to violate the IAA is void when made, rendering the balance of the provisions completely unnecessary. *See STM Invest S.A.R.L. v. 3P Equity Partners, LLC*, No. 19-cv-1764, 2019 U.S. Dist. LEXIS 100340, at *7 (C.D. Cal. June 14, 2019). Such a reading would violate the rule against surplusage. *Id*. And because "any violation of the [IAA]" can be a basis for voiding a contract under § 215, Acis's unduly narrow reading of the provision would result in the exclusion of violations that only arise post-execution of the contract. *Id*. ("Various provisions of the IAA govern acts post-execution of a contract, and Congress would not have used the phrase 'any provision' had it not intended for § 215(b) to apply

to any violations of the IAA occurring after the execution of a contract." (footnote omitted)).

As well, under the general-terms canon, "general words" should be "generally applied." *Uravic v. F. Jarka Co.*, 282 U.S. 234, 240 (1931); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 101 (2012) ("Without some indication to the contrary, general words (like all words, general or not) are to be accorded their full and fair scope . . . [and] are not to be arbitrarily limited.").  Acis's position is particularly puzzling since its reading of § 215(b) would do away entirely with words *within the exact same subsection* as the language upon which Acis relies to arrive at its conclusion. *See City of Chicago v. Fulton*, 141 S. Ct. 585, 591 (2021) ("The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." (internal quotation marks and citation omitted)).

Perhaps this is why courts have not read § 215(b) of the IAA Act nearly as narrowly as Acis has. *See, e.g., Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1036 (2d Cir. 1992) ("A § 215 claim may be premised upon a violation of any provision of the IAA."); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 262 (S.D.N.Y. 2006) ("Courts in this Circuit have routinely permitted Section 215 claims to proceed *irrespective of whether the contracts themselves violated the IAA*." (emphasis added)); *STM Invest*, 2019 U.S. Dist. LEXIS 100340, at *7.

But even if the Second Circuit's statement of law were not enough, the Southern District of New York also understands § 215(b) to allow for rescission of contracts for the violation of Section 206 or any other Rule or regulation under Advisers Act. *See, e.g.*, *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382, 388 (S.D.N.Y. 2004) (Lynch, J.); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d at 262 (Sweet, J.); *Wellington Int'l Commerce Corp. v. Retelny*, 727 F. Supp. 843, 845 (S.D.N.Y. 1989) (Sand, J.); *Rapillo v. Fingerhut*, No. 09-cv-10429, 2016

U.S. Dist. LEXIS 202573, at *23 (S.D.N.Y. Sept. 14, 2016) (Broderick, J.); *GPIF-I Equity Co., Ltd. v. HDG Mansur Inv. Servs., Inc.*, No. 13-cv-547, 2014 U.S. Dist. LEXIS 55193, at *7–8 (S.D.N.Y. 2014) (McMahon, J.); *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04-cv-4885, 2005 U.S. Dist. LEXIS 24263, at *26 (S.D.N.Y. Oct. 19, 2005) (Kram, J.); *Bogart v. Shearson Lehman Bros.*, No. 91-cv-1036, 1993 U.S. Dist. LEXIS 1182, at *6–7 (S.D.N.Y. 1993) (Gershon, J.). Courts outside the Southern District of New York have also arrived at the same general conclusion. *See, e.g.*, *Laird v. Integrated Res.*, 897 F.2d 826, 841 (5th Cir. 1990); *Morris v. Wachovia Sec., Inc.*, 277 F. Supp. 2d 622, 643–44 (E.D. Va. 2003); *Soderberg v. Gens*, 652 F. Supp. 560, 565–66 & n.1 (N.D. Ill. 1987); *Margaret Hall Found., Inc. v. Atl. Fin. Mgmt., Inc.*, 572 F. Supp. 1475, 1484–85 (D. Mass. 1983); *Wu v. Tang*, No. 3:10-cv-0218, 2011 U.S. Dist. LEXIS 4489, at *23 (N.D. Tex. Jan. 14, 2011). These courts held that § 215(b) means exactly what NexPoint's interpretation provides: so long as a direct or particular indirect violation of the IAA occurs during the performance of a contract governed by the statute, then the contract at issue is void as to the violators' rights.

Acis relies almost entirely on the *Omega* case to support its interpretation of § 215(b). *See Omega Overseas, Ltd. v. Griffith*, No. 13-cv-4202, 2014 U.S. Dist. LEXIS 109781, at *6–31 (S.D.N.Y. Aug. 7, 2014). NexPoint respectfully urges the Court to accord little weight to this outlier decision. The opinion cannot be squared with the plain language of the statute as already argued. Moreover, the same judge who authored the *Omega* opinion had previously written other opinions espousing the *exact opposite conclusion* as that from *Omega*. *See, e.g.*, *Welch v. TD Ameritrade Holding Corp.*, No. 07-cv-6904, 2009 U.S. Dist. LEXIS 65584, at *81 (S.D.N.Y. July 27, 2009) ("[Section 206] is given 'teeth' by section 215 of the [IAA], which 'provides that any investment adviser contracts whose formation or performance would violate the provisions of the

IAA shall be void.'"); *DeBlasio v. Merrill Lynch & Co.*, No. 07-cv-64848, 2009 U.S. Dist. LEXIS 64848, at \*49 (S.D.N.Y. July 27, 2009) (same). Furthermore, the two other cases Acis cites in support, *LKH Consulting* and *Tobia*, *see* Acis Mot. to Dismiss, Dkt. No. 83, at p. 6, simply followed the holding from *Omega* without independent consideration of § 215(b)'s text, none of which appears to have been raised before the Court.

What is more, invoking the common law to define the scope of § 215(b), as Acis does, is a wholesale distortion of a canon of construction, which apparently led Acis to incorrectly interpret this provision. Acis's position relies on a citation to a Second Circuit case, *Empire Healthchoice Assurance, Inc. v. McVeigh*, 396 F.3d 136 (2d Cir. 2005). *See* Acis Mot. to Dismiss, Dkt. No. 84, at p. 6; *Omega*, 2014 U.S. Dist. LEXIS 109781, at \*11. The citation to *Empire Healthchoice* is from the dissent, which calls upon the canon of construction that "Congress is understood to legislate against the pre-existing backdrop of the common law." 396 F.3d at 152 (Raggi, J., dissenting); *see* WILLIAM N. ESKRIDGE, INTERPRETING LAW: A PRIMER ON HOW TO READ STATUTES AND THE CONSTITUTION 348 (2016). The primary issue with Acis's invocation of this canon is the incompleteness of the principle's recitation.[24] The canon, fully stated, is that "Congress 'legislates against a background of common-law adjudicatory principles,' and it 'expects' those principles to 'apply *except when a statutory purpose to the contrary is evident*.'" *Minerva Surgical, Inc. v. Hologic, Inc.*, 141 S. Ct. 2298, 2307 (2021) (emphasis added) (brackets omitted) (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991); *see, e.g.*, *Republic of Iraq v. ABB AG*, 768 F.3d 145, 162–63 (2d Cir. 2014). Acis conveniently fails to

---

[24] The other issue with invoking this canon is that *Omega* raised it on the basis that "§ 215(b)'s text strongly echoes the description of illegal contracts found in the *Restatement of Contracts*." *Omega*, 2014 U.S. Dist. LEXIS 109781, at \*10. NexPoint cannot find any legal authority identifying a canon of construction under which a statute that "strongly echoes" a secondary source adopts the meaning and effect of that secondary source.

mention the caveat or address the fact that the statute clearly was doing more than codifying the common law.[25]

Accordingly, Acis's contentions against Count I fail.

### 6. Plaintiff Has Set Forth a Plausible Claim for Breach of Fiduciary Duty Under New York Law

Plaintiff's Count II, the breach-of-fiduciary-duty claim, basically states that an action for damages lies under state law for breaches of the IAA. Under New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Johnson v. Nextel Commc'n, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *accord Barrett v. Freifeld*, 883 N.Y.S.2d 305, 308 (N.Y. App. Div. 2009). "A fiduciary relationship exists under New York law 'when one . . . is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 676 (N.Y. App. Div. 1987)).

Courts have recognized that breaches of the fiduciary duties under the IAA can be actionable under state-law causes of action for breach of fiduciary duty. *See Douglass v. Beakley*, 900 F. Supp. 2d 736, 751–52 & n.16 (N.D. Tex. 2012) (denying motion to dismiss state-fiduciary-duty claims predicated on breaches of the IAA, noting that the IAA provided the bases for a formal fiduciary relationship and thus plaintiffs' *state* breach-of-fiduciary-duty claims

---

[25] The incomplete recitation of this canon of construction is not the only instance of this practice within the main case Acis relies upon. The *Omega* opinion also calls upon the titles-and-headings canon, which states, "The title of a statute and the headings of its sections are tools available for the resolution of a doubt about the meaning of a statute." *Omega*, 2014 U.S. Dist. LEXIS 109781, at *10 (internal quotation marks omitted) (quoting *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 169 (2d Cir. 2013)). Surprisingly, *Omega* fails to mention two reasons why this canon cannot do what it was called upon to do. First, this canon only applies when the statutory text is ambiguous, *Yeskey*, 524 U.S. at 212, and *Omega* did not find § 215(b) to be ambiguous. Second, "a title or heading should never be allowed to override the plain words of a text," Scalia & Garner, *supra*, at 222—which *Omega* does, as discussed above. *See Trainmen v. Baltimore & Ohio R.R.. Co.*, 331 U.S. 519, 528–29 (1947).

could be predicated on breach of the IAA); *Goldenson*, 2014 U.S. Dist. LEXIS 201258, at \*137 ("Even assuming the [IAA] provides no private right of action, this does not mean that it does not create a standard of care from which a duty arises . . . ."); *State ex rel. Udall v. Colonial Penn Ins. Co.*, 812 P.2d 777, 785 (N.M. 1991) (applying the standard set forth in *Capital Gains* and ruling that a state-law claim for breach of fiduciary duty against an investment adviser could proceed). *See also Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 502–06 (3d Cir. 2013) (holding that state fiduciary-duty claims are a recognized vehicle for enforcing violations of the [IAA] but granting summary judgment on the basis that plaintiffs had not provided evidence of a conflict of interest with an investment advisor).

One court in this district held that the Investment Company Act's invocation of an advisor's fiduciary duty was actionable under New York fiduciary-duty law. *Cf. Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*, 964 F.Supp. 783, 799 (S.D.N.Y. 1997) (holding that state fiduciary-duty claims can be predicated on duties supplied under the Investment Company Act's invocation of advisory fiduciary duties), *rev'd in part on other grounds*, 282 F.3d 162 (2d Cir. 2002).[26]

Therefore, NexPoint has alleged a plausible breach of fiduciary duty that was owed directly to the investors and that it is actionable through New York law. The motion to dismiss this claim should be denied.

Additionally, Acis contends, rather bizarrely, that the state-law claim "backdoors" a cause

---

[26] New York state courts have yet to decide this issue as to the IAA. But New York law recognizes more than just common-law fiduciary duties: it also finds fiduciary relationships "where it can be readily seen that one party reasonably trusted another." *Brass v. Am. Film Techs. Inc.*, 987 F.2d 142, 151 (2d Cir. 1993). Therefore, "the existence of fiduciary relationships under New York law cannot be determined by recourse to rigid formulas." *Ciccone v. Hersh*, 530 F. Supp. 2d 574, 577 (S.D.N.Y. 2008); *Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 283 (N.Y. App. Div. 1988). Acis has not raised any reason why New York would not follow the unanimity of courts that have found that violations of federal fiduciary duties are actionable through state-law fiduciary-duty claims.

of action for § 206 where the Supreme Court said one did not exist. Acis fundamentally ignores 100% of the caselaw cited above. And the logic behind this contention is nonsensical. For one thing, the Supreme Court itself held that § 206 was actionable through § 215—thus "backdooring" a right of action for violations of § 206 where it had—in the exact same opinion—held that there was no such right of action directly under § 206. *See TAMA*, 444 U.S. at 17–21. Nothing in *TAMA* purported to strike any state-law causes of action that piggybacked on the IAA. And nothing therein held that the IAA suggests that Congress intended to preclude state-law causes of action predicated on the fiduciary duties provided in § 206. Indeed, Acis's quasi-preemption argument fails for this very reason.

Because Acis's position on Count II fails, its motion should be denied as to this claim as well.

### 7. Plaintiff has Pled Derivative Standing to Bring Either or Both Claims Under Counts I and II If Necessary

This portion of NexPoint's response is in the alternative to the foregoing. *See* FED. R. CIV. P. 8(d)(2). Acis contends that Cayman Islands law does not allow for derivative standing. Mot. at 13–17. However, this argument has two problems.

*First* and foremost, the Indenture is a trust-formation document with a New York choice-of-law provision.[27] The Indenture itself specifically forms a trust and provides that the Trustee "accepts these trusts" and that the holders—including Plaintiff—are the trust beneficiaries.[28] Therefore, it is New York law—and in particular, New York trust law—that governs derivative standing for an interest holder.[29]

---

[27] Ex. A, Indenture at § 14.9.

[28] Ex. A, Indenture at p. 2.

[29] Ex. A, Indenture at § 14.9.

Under New York trust law, a trust beneficiary has the right to bring what is, in effect, a derivative action to recoup injuries to the trust res. While normally a trust beneficiary should provide a demand on the trustee, *In re Estate of STRAUT*, 27 N.E. 259, 262 (N.Y. 1891), where a trustee has not or will not, or is unlikely to act, then a trust beneficiary can bring the claim directly, *Klebanow v. N.Y. Produce Exch.*, 344 F.2d 294, 297 (2d Cir. 1965) (applying New York law).

*Second*, even if Cayman Islands law applied, at least two of the exceptions to the rule in *Foss v. Harbottle* would apply.[30] The first, the "personal rights" exception, allows a person to file a an action when the injury inures to that person under a specific right granted, for example, under statute—such as the IAA.[31]

The second exception is the "fraud-on-the-minority" exception. Courts have explained that the term "fraud" is a misnomer and, in fact, effectively refers to the concept of self-dealing in American jurisprudence. *See In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 99 (D.N.H. 2004) (describing this variety of fraud "in a broader equitable sense in which control is misused to benefit the wrongdoers at the company's expense"). Plaintiff's operative complaint alleges a vast self-dealing scheme, whereby Acis has reaped fees and recouped expenses through various acts and omissions designed to inflate the notional value of the assets (thus increasing the fees, which are a percentage of same) and, simultaneously, employing wrongful means of purchasing and disposing of assets (or holding assets). None of the cases cited by Acis hold that these facts are insufficient to meet the exception.

Notably, Acis also fails to point out that Cayman Island law recognizes the demand-futility

---

[30] Ex. B, *Foss v. Harbottle*, Court of Chancery of Eng., 1843.
[31] Ex. D, *Tianrui (Int'l) Holding Co. Ltd. v. China Shanshui Cement Grp. Ltd.*, Grand Court of the Cayman Is., Apr. 6, 2020, at ¶¶ 100, 105.

exception for pre-suit demands in derivative actions.[32]

## B.   SECTION 5.8 OF THE INDENTURE DOES NOT BAR PLAINTIFF'S CLAIMS

Acis next maintains that the Indenture's "no action clause" bars NexPoint from bringing any of its claims.[33] Acis argues that these claims "'arise out of the agreements' and could be brought by [U.S. Bank]," which "plac[es] them squarely within the no action clause's coverage." Acis Mot. to Dismiss, Dkt. No. 84, at p. 18 (brackets omitted). Acis is incorrect.

To start, given that NexPoint has sued U.S. Bank as the Trustee for its role in the mismanagement and schemes involved in the Acis CLO, the no-action clause likely fails as a matter of contract interpretation. Despite Acis's reliance on reductive understandings of various cases, interpretation of the Indenture as a contract demonstrates that the no-action clause is inoperable. *See Quadrant Structured Prods. Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1172 (N.Y. 2014). The Indenture's no-action clause consists of five preconditions joined by the conjunction "and," meaning that instituting a proceeding requires the satisfaction of each precondition.[34] *See Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80, 98 (S.D.N.Y. 2016) ("[T]he content of the no-action clause evinces an intent to have all subparts read as sequential building blocks, each necessary to construct an integrated whole."). Because the first precondition requires that notice be given to the Indenture Trustee and doing so under these circumstances would be "absurd," *Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992), the first precondition of the no-action clause fails. *See, e.g.*, *Blackrock*, 165 F. Supp. 3d at 98–99. And when "one of the legs of a stool" falls, the whole stool falls. *See id.* The no-action clause in the Indenture begins

---

[32] Ex. E, *Top Jet Enters. Ltd. v. Sino Jet Holding Ltd.*, Grand Court of the Cayman Is., Jan. 19, 2018, at ¶¶ 33(e).

[33] NexPoint is uncertain of the scope of Acis's argument here; Acis only references the "remaining claims" in its argument. Acis Mot. to Dismiss, Dkt. No. 84, at p. 17. To cover its bases, NexPoint addresses Acis's theory regarding the no-action clause as though it targets all claims alleged against Acis.

[34] *See* Ex. A, Indenture at § 5.8.

with nearly identical language from the clause in *Blackrock*. *See id.* at 97. Therefore, because the no-action clause in *Blackrock* fell, so must the Indenture's no-action clause.

But even if the no-action clause were operable, Acis appears to believe that the no-action clause bars the accrual of a cause of action; it does not. *See, e.g.*, *ACE Sec. Corp., v. DB Structured Prods., Inc.*, 36 N.E.3d 623, 630 (N.Y. 2015) (discussing the "difference between a demand that is a condition to a party's performance[] and a demand that seeks a remedy for a preexisting wrong"). The indenture is a contract governed by New York law.[35] *See Quadrant*, 16 N.E.3d at 1172 (finding that a "trust indenture is a contract"). Thus, NexPoint is not, contrary to Acis's argument, barred from bringing an action; rather, Acis may, at most, assert a counterclaim or defense for breach of contract in response. *See Columbia Artists Mgmt., LLC v. Alvarez*, 2010 U.S. Dist. LEXIS 137154, at *17 (S.D.N.Y. Dec. 23, 2010). And because Acis's sole argument against Plaintiff's Breach of Contract claim is the no-action clause, there is no basis for dismissing that claim.[36]

Nevertheless, turning to the text of the clause at issue, no-action clauses must be "strictly construed" and "read narrowly." *Phx. Light SF Ltd. v. Wells Fargo Bank, N.A.*, No. 14-cv-10102, 2021 U.S. Dist. LEXIS 233418, at *43 (S.D.N.Y. Dec. 6, 2021) (internal quotation marks omitted) (quoting *Quadrant*, 16 N.E.3d at 1172).

The Indenture's no-action clause does not bar causes of action arising from outside the Indenture.[37] The New York Court of Appeals explained as much in the *Quadrant* case—there, the

---

[35] Per the Indenture's choice-of-law provision, New York law controls. Ex. A, Indenture, at § 14.9; *see Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").

[36] At most, the no-action clause would result in a dismissal of the breach of contract claim regarding the Indenture, *without* prejudice.

[37] Ex. A, Indenture at § 5.8.

no-action clause made explicit reference only to actions or proceedings "upon or under or with respect to this Indenture." 16 N.E.3d at 1173 (emphasis omitted). This language stood in clear contrast to those no-action clauses that refer to "both the indenture and the securities." *Id.* The court accordingly held that where a no-action clause refers only to "the contract rights recognized by the indenture agreement," then a securityholder may pursue any noncontractual claims related to the indenture. *Id.* By contrast, where a no-action clause refers both to rights under both the indenture and the underlying securities, then a securityholder may pursue any claims related to the indenture based in tort, contract, or state-statutory law.[38] *Lovatio v. Petróleos de Venezuela, S.A.*, No. 1:19-cv-4799, 2020 U.S. Dist. LEXIS 181114, at *11–12 (S.D.N.Y. Sept. 30, 2020).

As the plain text evidences, the Indenture's no-action clause makes explicit reference only to the Indenture, not the underlying securities.[39] The parties to the Indenture plainly knew when to refer to both, as the choice-of-forum provision indeed refers to "any action or proceeding arising out of or relating to the notes or this Indenture[.]"[40] *See, e.g., Cortlandt St. Recovery Corp. v. TPG Capital Mgmt., L.P.*, 2020 N.Y. Misc. LEXIS 10059, at *29–30 (N.Y. Sup. Ct. Oct. 22, 2020) (holding that a no-action clause disallowing a securityholder from pursuing "any remedy with respect to this Indenture or the Notes" precluded extracontractual claims). To sweep noncontractual claims related to the Indenture's Notes under the no-action clause would render § 5.18 of the Indenture—which governs "Action on the Notes"—redundant, thereby transgressing

---

[38] Tools of contract interpretation affirm this taxonomy of no-action clauses. For instance, other sections of the Indenture make reference to some variation of "the Notes or this Indenture," as opposed to simply "this Indenture." *Compare* Ex. A, Indenture at § 7.1, *with id.* at § 5.8. Barring noncontractual claims in addition to those arising out of the Indenture would violate the basic tenet that the use of a word in one place demonstrates the deliberate omission of the word elsewhere. *See United States v. Zukerman*, 897 F.3d 423, 431 (2d Cir. 2018). As well, and relatedly, the Indenture defines Indenture and Notes "separately, recognizing them as distinct." *Quadrant*, 16 N.E.3d at 1177; *see* Ex. A, Indenture at § 1.1.

[39] Ex. A, Indenture at § 5.8.

[40] Ex. A, Indenture at § 14.10.

the canon against surplusage. *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) (expressing "disfavor" for "contract interpretations that render provisions of a contract superfluous").

Acis's contentions regarding the Indenture's no-action clause do not work under New York law. Accordingly, the Court should reject Acis's defense of the no-action clause. *See, e.g.*, *Quadrant*, 16 N.E.3d at 1173.

## C. NEXPOINT'S TORT-BASED CLAIMS ARE NOT DUPLICATIVE OF ITS CONTRACT CLAIM

Acis argues that NexPoint's claims for breach of fiduciary duty, negligence, and conversion "must be dismissed as duplicative" since the sole basis for these causes of action stem from Acis's contractual obligations. Acis Mot. to Dismiss, Dkt. No. 84, at p. 18.

However, a plaintiff may maintain both a contract and a tort claim that arise out of the same wrongful conduct where an independent duty is present. *Dorking Genetics v. United States*, 76 F.3d 1261, 1269 (2d Cir. 1996) (applying New York law).

The causes of action Acis claims to be duplicative are plainly not. First, as described in above, the fiduciary duties Acis has transgressed are those imposed on investment advisors under the Advisers Act. *See* 15 U.S.C. § 80b-6. These duties, from which NexPoint's breach-of-fiduciary-duty claim arises, do not originate in any contractual language—accordingly, nothing bars NexPoint from simultaneously maintaining claims for breach of fiduciary duty and breach of contract.

As well, the basis of NexPoint's conversion claim does not duplicate a contract claim because of the specific property NexPoint pleaded Acis converted.[41] "Under New York law, 'a conversion takes place when someone, intentionally and without authority, assumes or exercises

---

[41] *See* Second Am. Compl. at ¶¶ 228–235.

control over personal property belonging to someone else, interfering with that person's right of possession.'" *Grgurev v. Licul*, 229 F. Supp. 3d 267, 285 (S.D.N.Y. 2017) (Woods, J.) (brackets and citation omitted). To recover converted funds, the money must be "specifically identifiable" and "subject to an obligation to be returned or to be otherwise treated in a particular manner." *Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472, 475 (N.Y. App. Div. 1995). Here, NexPoint seeks the return of particular funds rightfully belonging to NexPoint but was wrongfully and improperly paid to Acis [or other Defendants]. As such, and because Acis never possessed this money pursuant to a contractual arrangement with NexPoint, the claims pleaded by NexPoint for conversion are not duplicative.

Finally, as already argued, the IAA imposes direct duties under § 206, which can be violated negligently.

Further questions remain given the uncertainty of the pleaded claims' nature as direct or derivative. But this concern is of no import at this stage. The claims NexPoint pleaded are in the alternative—this practice is permitted under the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 8(d)(2)–(3); *see also, e.g.*, *Abrams v. Life Med. Techs., Inc.*, 135 F. Supp. 3d 185, 194 (S.D.N.Y. 2015). Therefore, the Court should not dismiss these pleadings as duplicative.

## D.  THE ECONOMIC LOSS RULE DOES NOT APPLY IN THIS CONTEXT

Acis's final argument is that "NexPoint's negligence and conversion claims are . . . barred by the economic loss rule." Mot. at 19. "New York's economic loss doctrine is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence." *Travelers Cas. & Sur. Co. v. Dormitory Auth.*, 734 F. Supp. 2d 368, 378 (S.D.N.Y. 2010). Under the doctrine, "a defendant is not liable in tort for purely economic loss unless the plaintiff demonstrates that the defendant owed a duty, which 'may arise from a special relationship,

to protect against the risk of harm to plaintiff.'" *AMBAC Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 328 F. Supp. 3d 141, 159 (S.D.N.Y. 2018) (brackets and ellipsis omitted) (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1101 (N.Y. 2001)). Acis's contention is twofold: (1) the damages NexPoint seeks are the same as those on which the contract claim is based, and (2) no special relationship exists in this situation that would permit avoidance of the doctrine. *See* Mot. at 19–20.

These arguments are contextually irrelevant, however, because "the economic loss rule . . . does not apply in 'cases involving liability for the violation of a professional duty.'" *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, 277 F. Supp. 3d 483, 496 (S.D.N.Y. 2017) (quoting *Hydro Invs., Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 18 (2d Cir. 2000)). In fact, "the New York Court of Appeals [has] cautioned that the 'economic loss rule' has no application outside of the product-liability context." *King County v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 302 (S.D.N.Y. 2012). This case (1) is clearly outside the products-liability sphere and (2) involves Acis's professional duties pursuant to 15 U.S.C. § 80b-6 and its accompanying regulations. Accordingly, the economic loss rule does not apply, and the Court should not permit Acis's invocation of the doctrine here.

### E.  PLAINTIFF RESPECTFULLY REQUESTS LEAVE TO AMEND TO CURE ANY DEFICIENCIES

In the event that Plaintiff's arguments above require amendment, Plaintiff stands ready to Amend. Plaintiff has not had the opportunity to cure any alleged pleading deficiencies—the first two amendments were to remove pleadings that were deemed excessive—i.e., they appeared to raise claims that were released and enjoined by the Acis Bankruptcy Court's final injunction. This would be Plaintiff's first request to cure a pleading deficiency.

While Acis on a couple of occasions uses the throw-away line that Rule 9(b) was not met, it never met its burden to show that Rule 9(b) even applies. Plaintiff's IAA claims do not sound in fraud. *Accord Cap. Gains.*, 375 U.S. at 195 (1963); *Robare Grp.*, 922 F.3d at 472. Nor do the fiduciary duty claims, conversion claims, or negligence or contract claims.

Curing the pleading deficiency would not be futile. Acis did not identify in its Motion a single pleading *deficiency* other than legal obstructions to holding it accountable. Nonetheless, if the Court views any argument as a pleading deficiency, then Plaintiff respectfully requests an opportunity to cure via amendment under Rule 15 and *Foman v. Davis*, 371 U.S. 178, 181 (1962).

## F. THE COURT SHOULD NOT AWARD ATTORNEY'S FEES IRRESPECTIVE OF DISPOSITION

Plaintiff respectfully opposes any attempt to seek attorneys fees against it. Section 5.15 specifically states that it "shall not apply to any suit instituted by the Trustee, to any suit instituted by any Holder, or group of Holders, holding in the aggregate more than 10% in Aggregate Outstanding Amount of the Controlling Class[.]"[42] Plaintiff owns $7,500,000 of the equity, which is approximately 12.5% of its class.[43] Because all of the Senior Notes have been paid off, the subordinated class of which Plaintiff is a holder is the Controlling Class.[44] Therefore, Section 5.15 does not appear to apply here.

Furthermore, even if the provision applied, the Court's discretion would have to be guided by whether the arguments raised herein have merit and were brought in good faith.[45] Acis cannot credibly contend that the claims raised were meritless and brought in bad faith.

---

[42] Indenture § 5.15.

[43] *Compare* Second Amended Complaint ¶ 38 (stating that Plaintiff owns $7,500,000 in notional equity, which in the Indenture is the subordinated class) *with* Indenture p. 66, reflecting total notional amount of subordinated class was $59,850,000. $7,500,000 ÷ $59,850,000 = 12.5% (appx).

[44] Indenture at p. 17 (Definition of Controlling Class as the "the Subordinated Notes, if there are no Class A Notes, Class B Notes, Class C Notes, Class D Notes or Class E Notes Outstanding").

[45] Indenture § 5.15.

---

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, NexPoint respectfully requests that the Court deny Acis's

Motion to Dismiss and for Attorneys' Fees and Costs.

Dated: February 24, 2022                    Respectfully submitted,

                                            **SBAITI & COMPANY PLLC**

                                            */s/ Mazin A. Sbaiti*
                                            **Mazin A. Sbaiti**
                                            New York Bar No. 4339057
                                            **Katherine L. Schneider**
                                            New York Bar No. 5333737
                                            **Griffin S. Rubin** (Admitted *Pro Hac Vice*)
                                            Texas Bar No. 24121809
                                            JPMorgan Chase Tower
                                            2200 Ross Avenue – Suite 4900W
                                            Dallas, TX  75201
                                            T:  (214) 432-2899
                                            F:  (214) 853-4367
                                            E:  mas@sbaitilaw.com
                                                kls@sbaitilaw.com
                                                gsr@sbaitilaw.com

                                            **Counsel for Plaintiff**