## [2018 (1) CILR 18]

## TOP JET ENTERPRISES LIMITED v. SINO JET HOLDING LIMITED and JET MIDWEST INCORPORATED

GRAND CT. (Segal, J.) January 19th, 2018

*Companies — derivative action — foreign derivative action — 50% shareholder entitled, under Cayman law, to bring foreign derivative action against third party with liability to company where company unable to enforce its rights because controlled by same wrongdoer as third party*

The plaintiff brought a derivative action against the second defendant in the United States.

The plaintiff owned 50% of the shares in the first defendant, a Cayman company. The remaining 50% were owned by Skyblueocean Ltd., a BVI company. The first defendant had six directors: Skyblueocean's owner and director, Mr. Kraus, was a director and Skyblueocean had appointed two of the others. In December 2015, the first defendant had entered into a consignment agreement with the second defendant, a company incorporated in the United States, which operated in Kansas City, Missouri. The plaintiff asserted that the second defendant was in breach of the agreement and liable to account and pay damages to the first defendant. It also asserted that the second defendant was owned and controlled by Mr. Kraus and his sister; and that Mr. Kraus and the other directors of the first defendant appointed by Skyblueocean, in breach of duty, prevented the first defendant from enforcing its rights and recovering its property from the second defendant. Under the first defendant's articles of association, board approval by a majority vote was required before it could commence proceedings against the second defendant.

The plaintiff therefore commenced derivative proceedings in the name of the first defendant and against the second defendant in Missouri. In its answer, the second defendant denied the claims against it and alleged *inter alia* that the plaintiff had not complied with the requirements of Cayman law in bringing its petition.

The plaintiff issued a summons in this court seeking the following relief: a declaration pursuant to GCR O.15, r.12A(2) that it had leave to continue the Missouri proceedings, alternatively pursuant to GCR O.15, r.12(1) that it be appointed representative of the first defendant and have leave to continue the Missouri proceedings in that capacity. The plaintiff applied for leave to re-amend the amended originating summons to include a claim for a further declaration (para. 1A), namely that (a) the

18

EXHIBIT

E

facts and matters set out in the petition, if proven at trial, constituted a fraud on the minority in terms of such exception to the rule in *Foss* v. *Harbottle*; (b) the cause of action brought in the Missouri proceedings as set out in the petition was a cause of action that might be pursued derivatively as a matter of Cayman Islands law; and (c) if, as a matter of Missouri law, Cayman Islands law governed the question, the plaintiff had standing to commence and to continue the Missouri proceedings.

It sought leave to serve the summons out of the jurisdiction on the second defendant, pursuant to GCR O.11, r.1(1)(c).

The plaintiff submitted that leave to serve the summons on the second defendant out of the jurisdiction should be granted on the basis that the second defendant was a necessary party to the originating summons and that the other requirements for the grant of leave were satisfied, namely the plaintiff could show that its claim against the second defendant in Missouri had a reasonable prospect of success and that the case was a proper one for service out of the jurisdiction (because, *inter alia*, Cayman was the appropriate forum).

The plaintiff submitted in respect of its right to bring a derivative action that (a) a shareholder could bring a claim if, like the plaintiff, it held 50% of the issued share capital of the company concerned; (b) it was necessary for the shareholder to establish conduct which constituted a fraud on the minority; the plaintiff pointed to the failure by the directors of the first defendant appointed by Skyblueocean to authorize and cause the company to enforce its rights against the second defendant; (c) it was also necessary for the shareholder to establish that the wrongdoers were in control of the company; in the present case Mr. Kraus and his sister controlled the board of the first defendant and the first defendant itself; (d) a claim by a company for a breach of a contract made between the company and a third party could be brought derivatively; and (e) it was also unnecessary, in a case such as the present, for a shareholder to show that it had made a demand or request to the company's board or other shareholders to commence the relevant proceedings where it could show that such a demand or request would be futile and would not be acted upon.

**Held,** ordering as follows:

(1) The plaintiff would be granted leave to serve the amended original originating summons out of the jurisdiction. GCR O.11, r.1(1)(c) permitted service in a case where a claim was brought against a person who had been or would be served within or out of the jurisdiction and a person out of the jurisdiction was a necessary or proper party thereto. While proceedings in Cayman (as the country of incorporation of the company concerned) to establish and declare a shareholder's right to bring a derivative claim in another jurisdiction would not always be necessary, justified or appropriate, the summons was necessary, justified and appropriate in the present case. Where a derivative action was being litigated in another jurisdiction, the foreign court had conduct of the action and the question whether the action had been properly constituted and commenced was a

19

2

matter for the foreign court. Any challenge to the standing of the shareholder who had commenced the action on the company's behalf would be made in the foreign court. To the extent that that court applied Cayman law to that issue, one would expect that it would be able to deal with the issue with the benefit of expert evidence on Cayman law. In the present case, the second defendant had put in issue in its answer the plaintiff's right to bring the Missouri proceedings. It had asserted that the plaintiff had failed to comply with Cayman law prior to the initiation of the Missouri proceedings. The second defendant had, however, not made an application in the Missouri court (assuming it could do so) or in the present court for an order requiring the plaintiff to terminate and withdraw the Missouri proceedings. It was content to leave the issue to be determined at trial. The plaintiff, however, was not content to do so. If the Missouri court decided to apply Cayman law, including GCR O.15, r.12A(2), to the issue of the plaintiff's right to commence and continue the Missouri proceedings on behalf of the first defendant, and if GCR O.15, r.12A(2) applied to the Missouri proceedings such that leave from this court was required once the second defendant filed the answer, the plaintiff would need an order from this court granting leave in order to be able to continue the Missouri proceedings to trial. Accordingly, the plaintiff needed to establish whether leave from this court was required and, if so, to apply for and obtain leave to continue the Missouri proceedings. The claim for which leave to serve out was sought was the claim for leave to continue the Missouri proceedings, originally commenced as a freestanding originating summons against the first defendant to which the second defendant had been added. The plaintiff could properly commence and justify such an application against the first defendant and the second defendant was a necessary or proper party thereto. Even though the plaintiff's derivative action itself was taking place in another jurisdiction, the plaintiff could seek to enforce its rights by asking this court to declare that it was entitled to act on behalf of the first defendant, a Cayman company, and if necessary to make an order appointing it as the first defendant's representative for the purpose of conducting the Missouri proceedings. It was both necessary and legitimate for the plaintiff to formulate a claim for leave to continue the Missouri proceedings as a claim against the first defendant and to have the second defendant joined as a necessary or proper party to the application. There was a real issue between the plaintiff and the first defendant. The plaintiff's evidence showed both that the claim against the second defendant had a reasonable prospect of success and also that its claim that leave be granted (or that leave was not required) had a reasonable prospect of success. The present matter could not definitively be dealt with by the Missouri court and the plaintiff had a legitimate interest in its adjudication by the present court before a trial in Missouri. The issues raised were governed by Cayman law and concerned governance of a Cayman company. They were closely connected with this jurisdiction and could conveniently be dealt with by this court. It was hoped that the Missouri

20

court would at least find the decision of this court on Cayman law issues helpful and persuasive, even if not enforceable in Missouri (paras. 12–14).

(2) The plaintiff was granted leave to re-amend the amended originating summons to include a claim for a further declaration as set out in para. 1A. The amendment was required to deal with the possibility that GCR O.15, r.12A(2) and O.15, r.12(1) did not apply to a case in which the underlying derivative claim was commenced in another jurisdiction and therefore there were no proceedings in Cayman within which leave could be sought or a representative appointed. The relief sought by way of the re-amendment was, in substance, a reformulation of the declaratory relief already sought (without the need for further evidence) since it authorized the commencement and continuation of the Missouri proceedings by the plaintiff on behalf of the first defendant, albeit that the basis for such authorization would not be GCR O.15 (paras. 16–17).

(3) Order 15 of the Grand Court Rules did not apply to a foreign derivative action and the relief sought by the plaintiff under the GCR could not be granted. GCR O.15, r.12A clearly contemplated and presupposed that the derivative action by the relevant company against the relevant defendant which had been commenced by the relevant shareholder was being conducted before the Grand Court so that an application for leave to continue the action could be made within that action and the court could make orders regulating the future conduct of the action (*e.g.* by making an order on the application of the defendant to dismiss the action). Furthermore, the rule contemplated that the timetable of the action would be affected by the need for an application for leave. It would have no application to a foreign derivative action. Similarly, GCR O.15, r.12 applied only to representative proceedings commenced in this jurisdiction. The Grand Court Rules could not have been intended to apply to and regulate the conduct of foreign proceedings (paras. 21–24).

(4) There was no freestanding requirement for the plaintiff to apply for leave to continue the Missouri proceedings. In the absence of a requirement imposed by the Grand Court Rules to seek leave in a case of a foreign derivative action, it was not necessary or appropriate for the court to impose one. A shareholder bringing a foreign derivative action was not therefore required to establish his entitlement to do so, or to seek leave to continue. A defendant wishing to challenge a plaintiff's standing would need to bring a challenge in the foreign proceedings. In the present case, the challenge to the plaintiff's standing to commence the Missouri proceedings was, for obvious and proper reasons, raised by the second defendant in those proceedings. It would be a matter for the Missouri court in due course to adjudicate on that challenge and apply Cayman law or such other law as it considered applicable. The plaintiff was seeking to establish in this court whether, as a matter of Cayman law, it was required to obtain leave to continue the Missouri proceedings and to obtain leave if required or a confirmation, by way of declaration, that on the facts as pleaded in the petition, if proven at trial, it was entitled under Cayman law

21

to bring the proceedings in the name and on behalf of the first defendant (paras. 27–32).

(5) The plaintiff was entitled to and the court was prepared to make a declaration that if the facts and matters set out in the petition were proven at trial, the plaintiff was entitled under Cayman law to bring the Missouri proceedings against the second defendant derivatively on the first defendant's behalf. A 50% shareholder such as the plaintiff could bring a derivative claim. The principle applied whenever a shareholder was unable to persuade or cause the normal organs of a company to commence proceedings in respect of a wrong done to it. The essential question was whether the company was being prevented from pursuing a claim which the company legitimately had. Assuming the facts asserted by the plaintiff to be true and that the first defendant had or was likely to have a good claim against the second defendant, the directors of the first defendant appointed by Skyblueocean appeared to be in breach of their fiduciary duty by failing to take action to protect the interests of the first defendant and all of its shareholders by enforcing its rights against the second defendant. They were improperly putting the interests of one of the shareholders and Mr. Kraus and his sister ahead of those of the company and all of its shareholders. In such circumstances, a claim could have been brought in this jurisdiction derivatively against Mr. Kraus and the other directors appointed by Skyblueocean. Instead, the plaintiff had brought a derivative action against a third party (the second defendant) that was neither a director nor a shareholder. Where a third party had a liability to a company (whether in contract or in tort) but had neither participated in the conduct constituting the fraud on the minority nor received corporate assets, it would not be possible for a claim to be brought derivatively. The fraud whose existence justified the derivative action must give rise to the third party's liability. If there were no, or an insufficiently close, relationship between the second defendant and Mr. Kraus (and the directors of the first defendant appointed by Skyblueocean), such that the second defendant could be treated as an independent third party, it was likely that the claim for breach of contract or for an account of sums owed could not be brought derivatively, since the second defendant's breach of the consignment agreement would be independent of the wrongful conduct which justified and permitted the plaintiff as a minority shareholder, rather than the company's board, having control of litigation to enforce the company's rights. However, the court was prepared to accept, for the purposes of this application, that the plaintiff had a right under Cayman law to bring and continue the Missouri proceedings. The case appeared to fall within the principle establishing and policy behind the exceptions to the rule in *Foss* v. *Harbottle*. If the plaintiff were not permitted to bring the proceedings derivatively, the first defendant would be unable to recover what was owed to it because of the control and abuse of power by Mr. Kraus (paras. 34–46).

22

GRAND CT.                                    TOP JET v. SINO JET

**Cases cited:**

  (1)*Autumn Hldgs. Asset Inc.* v. *Renova Resources Private Equity Ltd.*, 2017
  (2) CILR 136, considered.
  (2)*Barrett* v. *Duckett*, [1995] 1 BCLC 73; [1993] BCC 778; on appeal, [1995]
  1 BCLC 243; [1995] BCC 362, referred to.
  (3)*Daniels* v. *Daniels*, [1978] Ch. 406; [1978] 2 W.L.R. 73; [1978] 2 All E.R.
  89, *dicta* of Templeman, J. referred to.
  (4)*Davis* v. *Scottish Re Group Ltd.*, New York C.A., No. 111, November 20th,
  2017, unreported, referred to.
  (5)*Estmanco (Kilner House) Ltd.* v. *G.L.C.*, [1982] 1 W.L.R. 2; [1982] 1 All
  E.R. 437, *dicta* of Megarry, V.-C. referred to.
  (6)*Foss* v. *Harbottle* (1843), 2 Hare 461; 67 E.R. 189, referred to.
  (7)*Fraser* v. *Oystertec plc*, [2004] EWHC 1582 (Ch); [2006] 1 BCLC 491;
  [2005] BPIR 381, referred to.
  (8)*Grosvenor & West End Ry. Terminus Hotel Co. Ltd.*, *Re* (1897), 2 Q.B. 124;
  76 L.T. 337, referred to.
  (9)*Konamaneni* v. *Rolls Royce Indus. Power (India) Ltd.*, [2002] 1 W.L.R.
  1269; [2002] 1 All E.R. 979; [2002] 1 All E.R. (Comm) 532; [2002] 1 BCLC
  336; [2003] BCC 790; [2002] I.L. Pr. 40, considered.
(10)*Nurcombe* v. *Nurcombe*, [1985] 1 W.L.R. 370; [1985] 1 All E.R. 65; [1984]
  BCLC 557; (1984), 1 BCC 99269, considered.
(11)*Prudential Assur. Co. Ltd.* v. *Newman Indus. Ltd. (No. 2)*, [1982] Ch. 204;
  [1982] 2 W.L.R. 31; [1982] 1 All E.R. 354; [1981] Com. L.R. 265, referred to.
(12)*Renova Resources Private Equity Ltd.* v. *Gilbertson*, 2009 CILR 268, referred
  to.
(13)*Russell* v. *Wakefield Waterworks Co.* (1875), L.R. 20 Eq. 474, considered.
(14)*Smith* v. *Croft*, [1986] 1 W.L.R. 580; [1986] 2 All E.R. 551; [1986] BCLC
  207; 1986 PCC 412; further proceedings, *sub nom. Smith* v. *Croft (No. 2)*,
  [1988] Ch. 114; [1987] 3 All E.R. 909; 1987 PCC 209; [1987] 1 FTLR 319,
  referred to.

**Legislation construed:**

Grand Court Rules 1995 (Revised), O.15, r.12: The relevant terms of this rule are
  set out at para. 22.
O.15, r.12A: The relevant terms of this rule are set out at para. 19.
*C. McKie*, *Q.C.* and *P. Smith* for the plaintiff;
The first and second defendants did not appear and were not represented.

1   **SEGAL, J.:**

**Introduction**

This case concerns the law and procedural rules applicable to derivative
proceedings commenced abroad (outside Cayman) by a shareholder of a Cayman
company (in the name and on behalf of that company) against a

23

defendant resident in the foreign jurisdiction. It raises the question of whether leave to continue is required from this court in such a case (after the defendant in the foreign proceedings has defended the action) and, if leave is not required, whether and in what circumstances this court should entertain an application by the shareholder seeking to establish its right under Cayman law to bring the derivative action in the foreign court.

2   Top Jet Enterprises Ltd. ("Top Jet") is a shareholder of a Cayman company called Sino Jet Holding Ltd. ("Sino Jet"). Top Jet has commenced proceedings in State Court in Missouri, USA in the name and on behalf of Sino Jet against Jet Midwest Inc. ("Jet Midwest"). In the Missouri proceedings, Jet Midwest has questioned and challenged Top Jet's standing to do so. That issue is to be dealt with by the Missouri court at trial but, before trial, Top Jet has issued a separate application in this court. In that application, Top Jet seeks leave to continue the Missouri proceedings, if leave is required, and a declaration that under Cayman law it is entitled to bring a claim against Jet Midwest derivatively. Jet Midwest has been made a party to and served with the Cayman application but has chosen not to participate in these proceedings. I have concluded, for the reasons set out below, that—

   (a) leave to continue the Missouri proceedings is not required; and

   (b) I should make the orders sought by Top Jet declaring that if the facts and matters set out in its pleading in the Missouri proceedings (a petition) are proven at trial then Top Jet is entitled under Cayman law to bring the Missouri proceedings against Jet Midwest on Sino Jet's behalf.

3   I have considered carefully whether Top Jet should be required to establish its right to bring the Missouri proceedings derivatively in the Missouri court and whether a separate application to this court should be permitted. On balance, I have concluded that in the circumstances of this case it is appropriate that the application be made (and served out of the jurisdiction) and that the relief sought be granted. This is in part because this is the first time, as far as I am aware, that this issue has been dealt with by this court and there is a question as to whether leave from this court is necessary even if the Missouri court does not require it, so that a decision of this court is needed. It is also in part because Top Jet is seeking to exercise and enforce its Cayman law right as a shareholder of a Cayman company to be allowed to act in the name and on behalf of the company (in circumstances where it can establish that an exception to the rule in *Foss* v. *Harbottle* (6) applies) and that issue particularly concerns the other shareholder of Sino Jet and Sino Jet's directors, such that it is closely connected with this jurisdiction. I have, as I explain below, been concerned that the declarations are being sought by reference to assumed facts and without the benefit of the evidence in support of and opposition to the Missouri claim, and to ensure that any orders I make do not interfere with

24

the Missouri proceedings. But on balance I have concluded that I should nonetheless make the declaration outlined above and am satisfied that the orders I make will not interfere with the Missouri proceedings. It will be a matter for the Missouri court to decide whether Cayman law applies to the issue of Top Jet's standing (it appears that it may well do so) and the effect in the Missouri proceedings of the orders I have made and my decision.

**The Missouri proceedings, Sino Jet and the other parties involved**

4    As I have explained, Top Jet commenced the proceedings against Jet Midwest in State Court in Missouri. Top Jet is a member of Sino Jet and owns 50 per cent of Sino Jet's shares. The other 50 per cent is owned by Skyblueocean Ltd. ("Skyblueocean") a company incorporated in the British Virgin Islands. Skyblueocean is said to be owned and controlled by Mr. Paul Kraus ("Mr. Kraus") and his sister. Mr. Kraus is a director of both Skyblueocean and Sino Jet. Skyblueocean has appointed three of the six directors of Sino Jet, of whom Mr. Kraus is one. Sino Jet was a party to a consignment agreement entered into in December 2015 ("the consignment agreement") with Jet Midwest, a company incorporated in the State of Kansas but with its principal place of business in Kansas City, Missouri. The consignment agreement was governed by New York law. Top Jet asserts that Jet Midwest is in breach of the consignment agreement and is liable to account, and pay damages, to Sino Jet; that Jet Midwest is owned and controlled by Mr. Kraus and his sister; and that Mr. Kraus and the other directors of Sino Jet appointed by Skyblueocean, in breach of duty, have failed to act so as to cause Sino Jet to enforce, and will prevent Sino Jet from enforcing, its rights and recovering its property from Jet Midwest. Accordingly, Top Jet argues that it is entitled as a matter of Cayman law to issue derivative proceedings, on behalf of all Sino Jet's shareholders and in the name of Sino Jet, against Jet Midwest. But since Jet Midwest is located in Kansas City, Missouri, it has been necessary to issue proceedings there, which was done by way of a first amended petition dated May 5th, 2017 ("the petition").

5    The petition was expressed to be issued by Top Jet derivatively on behalf of Sino Jet. In the petition the following facts and matters are averred and relied on:

   (a) That under Sino Jet's articles of association board approval is required before Sino Jet can commence proceedings against Jet Midwest. Such approval requires a vote of the majority of the board (paras. 64–65).

   (b) A majority in favour of bringing proceedings cannot be obtained because three of the six members of the board (Mr. Kraus, Mr. Woolley and Ms. Lumley) have an interest in shielding Jet Midwest and therefore have a conflict of interest, have turned a blind eye to Jet Midwest's failure

25

to perform its obligations under the consignment agreement, and would block Sino Jet from enforcing the consignment agreement (paras. 66–67).

(c) Furthermore, Sino Jet's articles also provide that Sino Jet cannot commence any material litigation in which the amount in dispute is or could reasonably be expected to exceed US$300,000 without the approval of the Sino Jet board, including the affirmative vote of at least one director appointed by Skyblueocean, and the dispute with Jet Midwest satisfies this test (para. 69).

(d) Top Jet cannot replace the directors appointed by Skyblueocean because they can only be removed and replaced by Skyblueocean (para. 68).

(e) Accordingly, Sino Jet is effectively prevented from taking action to protect its interests and rights under the consignment agreement (para. 70).

(f) Skyblueocean can prevent Sino Jet from enforcing its rights only by misusing its de facto control of Sino Jet, and by causing the directors it has appointed and controls to breach their fiduciary duties to the Sino Jet shareholders as a whole for the benefit of Jet Midwest and at Sino Jet's expense (para. 82)

(g) A demand for the board to approve the commencement of proceedings against Jet Midwest would be futile because the directors appointed by Skyblueocean are unable to exercise independent and disinterested judgment on the matter (para. 83).

6   On June 5th, 2017, Jet Midwest filed its answer ("the answer") to the petition and in addition to denying the claims made against it asserted by way of affirmative defence (in para. 95 of the answer) that although the claims for relief alleged in the petition were "a purported shareholder derivative action, there [had] been no compliance with the [Sino Jet] articles of association much less the requirements of the laws of the Cayman Islands prior to the initiation of [the petition]."

**The Cayman proceedings**

*The original originating summons*

7   Shortly before the filing of the answer, on May 25th, 2017, Top Jet had issued an originating summons ("the original originating summons") in this court, with itself as plaintiff and Sino Jet as respondent, seeking leave pursuant to GCR O.15, r.12A(2) to continue the proceedings commenced by the petition ("the Missouri proceedings") and an order that Top Jet be indemnified out of the assets of Sino Jet in respect of its costs incurred and to be incurred in the Missouri proceedings and these proceedings. The evidence filed in support of the original originating summons included an

26

GRAND CT.                                    TOP JET v. SINO JET

affidavit sworn by Constance Meng, a director and the chairman of Sino Jet (who had been appointed by Top Jet).

8   In the original originating summons Top Jet sought the following orders:

   (a) Pursuant to GCR O.15, r.12A(2), a declaration that Top Jet shall have leave to continue the Missouri proceedings derivatively on behalf of Sino Jet; and

   (b) An order that Top Jet be indemnified out of the assets of Sino Jet in respect of the costs incurred and to be incurred in the Missouri proceedings and in the Cayman proceedings.

9   The original originating summons was served on Sino Jet on June 1st, 2017 and on Skyblueocean on July 1st. No response having been received from Sino Jet (or Skyblueocean), and following the expiry of the time for filing an acknowledgement of service, on July 18th, 2017 Top Jet issued a summons for directions seeking leave to adduce expert evidence and a trial date. Top Jet sought leave to adduce expert evidence from Mr. Daniel Blegen ("Mr. Blegen") as to matters of New York and Missouri law as set out in his first affidavit sworn on June 22nd, 2017 ("Mr. Blegen's first affidavit") and from Mr. Kenneth Yormark ("Mr. Yormark") as to forensic accounting matters as set out in his first affidavit sworn on July 10th, 2017 ("Mr. Yormark's first affidavit"). Mr. Blegen's evidence related to the law governing certain issues arising and the prospects of success of Sino Jet's claim in, and Top Jet's standing to bring, the Missouri proceedings. Mr. Yormark's evidence related to the dealings between Sino Jet and Jet Midwest and the operation of the consignment agreement (for the purpose of establishing that Jet Midwest had an outstanding obligation to account to Sino Jet for proceeds of equipment sold by Jet Midwest on Sino Jet's behalf).

### *The September 7th hearing of the summons for directions*

10   The hearing of the summons for directions took place before me on September 7th. At the hearing I expressed some concerns as to the basis on which Top Jet was seeking relief from this court and in particular, leaving aside the issues of substantive law to which the original originating summons gave rise, the fact that Jet Midwest had not been made a party and given an opportunity to oppose the application. I noted that, without wishing to determine at that stage the question of whether the court had jurisdiction to deal with and grant leave to continue a foreign derivative claim, it would be odd if there were jurisdiction to do so but that the defendant to the foreign proceedings was not, as would be the case in a derivative claim to which O.15, r.12A(2) applied, given an opportunity to challenge the claimant's standing and if separate proceedings in this jurisdiction were needed, made a party to and given notice of the Cayman

27

proceedings. I said that, as a minimum, it seemed to be necessary and right that at that stage Jet Midwest be made a party to these proceedings and served out of the jurisdiction, if otherwise permissible, so that it had the opportunity to participate and raise any objections it might have.

11   In light of and in response to these concerns, counsel for Top Jet, Mr. Colin McKie, Q.C. of Maples and Calder, made an application at the hearing (in reliance on the evidence filed in support of Top Jet's application) for leave, first, to amend the original originating summons to add Jet Midwest as the second defendant and to add in the alternative a claim that Top Jet be appointed as representative of Sino Jet pursuant to GCR O.15, r.12(1); and secondly, to serve the amended original originating summons out of the jurisdiction on Jet Midwest in the State of Kansas or elsewhere in the United States. The alternative claim pursuant to GCR O.15, r.12(1) sought an order that Top Jet be appointed as representative of Sino Jet in the Missouri proceedings and in that capacity that Top Jet should have leave to continue the Missouri proceedings (and that Top Jet be indemnified out of the assets of Sino Jet in respect of the costs of both the Missouri proceedings and the Cayman proceedings).

### The application for leave to serve out

12   Leave to serve out was sought pursuant to GCR O.11, r.1(1)(c). This rule (applied to an originating summons by GCR O.11, r.9) permits service out in a case where "the claim is brought against a person [who has been or will be] duly served within or out of the jurisdiction and a person out of the jurisdiction is a necessary or proper party thereto." Mr. McKie, in light of and adopting my preliminary views regarding the need for the defendant to the proceedings being brought derivatively in another jurisdiction to be given the opportunity to participate in the Cayman proceedings and to raise any challenges to standing or other objections which it considered to be relevant, submitted first, that Jet Midwest was a necessary party to Top Jet's originating summons, and secondly, that the other requirements for the granting of leave to serve the amended original originating summons out were satisfied in this case. He submitted that these other requirements were that Top Jet could show that the claim against Jet Midwest had a reasonable prospect of success and that the case is a proper one for service out of the jurisdiction (because, *inter alia*, Cayman is the appropriate forum in which to hear the action).

13   It seemed to me that it was appropriate to grant leave to serve the amended original originating summons out of the jurisdiction:

  (a) While proceedings in Cayman (as the country of incorporation of the company concerned) to establish and declare a shareholder's right to bring a derivative claim in another jurisdiction will not always be necessary, justified or appropriate, they may be and in this case they are.

28

(b) Where the derivative action is being litigated in another jurisdiction, the foreign court has the conduct of the action and the question of whether the action has been properly constituted and commenced is a matter for the foreign court. Any challenge to the standing of the shareholder who has commenced the action on the company's behalf will be made in the foreign court. To the extent that the foreign court applies Cayman law to the standing issue (in determining whether the action has been properly constituted and commenced), one would expect that it would be able to deal with the issue with the benefit of expert evidence on Cayman law. To the extent that the foreign court applies its own or another law the position under Cayman law will be irrelevant.

(c) In the present case, Jet Midwest has put in issue in the answer Top Jet's right to bring the Missouri proceedings. It has asserted that there has been a failure (by Top Jet) to comply with Cayman law prior to the initiation of the Missouri proceedings. Jet Midwest has, however, not made an application in the Missouri court (assuming it could do so) or in this court for an order requiring Top Jet to terminate and withdraw the Missouri proceedings. It is content to leave the issue to be determined at trial.

(d) Top Jet is, however, not content to leave the issue until the trial of the Missouri proceedings. The principal reason for this is that, if the Missouri court decides to apply Cayman law, including GCR O.15, r.12A(2) to the issue of Top Jet's right to commence and continue the Missouri proceedings on behalf of Sino Jet, and if GCR O.15, r.12A(2) applies to the Missouri proceedings such that leave from this court is required once Jet Midwest filed the answer, then Top Jet would need an order from this court granting leave in order to be able to continue the Missouri proceedings to trial. Otherwise Top Jet could find that when it got to trial Jet Midwest would be able to say that Top Jet had no right under Cayman law to continue the Missouri proceedings.

(e) Accordingly, Top Jet needs to establish whether leave from this court is needed and if it is to apply for and obtain leave to continue the Missouri proceedings. Paragraph 1 of the original originating summons (and the original originating summons as amended) sought such relief. It does so by seeking a declaration that Top Jet shall have leave to continue the Missouri proceedings.

(f) In a domestic derivative action, the company concerned needs to be made a defendant to the action so that it is bound by the judgment and receives any moneys recovered (in circumstances where the action has not been authorized by the board or general meeting: see *Re Grosvenor & West End Ry. Terminus Hotel Co. Ltd.* (8)). Other parties against whom relief is sought for wrongs done to the company are also joined as other defendants. The application for leave is then made by the plaintiff in the

29

existing proceedings after the other defendants have given notice of intention to defend (in accordance with GCR O.15, r.12A(2)). This is obviously not possible in the case of a foreign derivative claim as there are no proceedings already on foot before the court. If leave is to be sought in this jurisdiction, and the issue of the right of the shareholder suing derivatively brought before this court, then it is necessary to commence a new set of proceedings by a suitable form of originating process. In the present case, Top Jet issued the original originating summons so as to seek an order granting it leave to continue the Missouri proceedings. Initially Sino Jet was joined as the defendant but at the time of the application for leave to serve out Top Jet had sought and been granted leave to amend the original originating summons to join Jet Midwest as the second defendant.

(g) Accordingly, the claim for which leave to serve out was sought was the claim for leave to continue the Missouri proceedings, originally commenced as a free-standing originating summons against (and served on) Sino Jet to which Jet Midwest was now added as a second defendant. It seemed to me that Top Jet could properly commence and justify such an application against Sino Jet and that Jet Midwest was a necessary or proper party to such an application.

(h) Top Jet's claim (in paras. 1 and 2 of the original originating summons) is based on a right under Cayman law, namely its equitable right as a shareholder (where an exception to the rule in *Foss* v. *Harbottle* (6) can be established) to invoke the equitable jurisdiction of the Cayman court to prevent a wrong to Sino Jet going unremedied. That right is usually enforced or exercised by recourse to the procedural device of allowing the shareholder to bring domestic proceedings in the name of the company. But in a case in which the relevant defendant is resident in another jurisdiction and has to be sued there I see no reason why the right cannot be enforced or recognized in a separate proceeding in this jurisdiction. I note the view expressed by Collins, J. in *Konamaneni* v. *Rolls Royce Indus. Power (India) Ltd.* (9) ("*Konamaneni*") ([2002] 1 W.L.R. 1269, at 1284) that "[even though] for purely . . . domestic purposes the exceptions to the rule [in *Foss* v. *Harbottle*] have been regarded as a procedural device, I do not consider that in the international context [for the purpose of characterization in a private international law context] their real nature is procedural. They confer a right on shareholders to protect the value of their shares by giving them the right to sue and recover on behalf of the company." Top Jet is to be treated as enforcing such a right primarily against Sino Jet and its directors and other shareholder. Even though the derivative action itself is taking place in another jurisdiction Top Jet can seek to enforce its rights by asking this court to declare that it is entitled to act on behalf of Sino Jet, a Cayman company, and if necessary to make an order appointing Top Jet as Sino Jet's representative for the purpose of conducting the Missouri proceedings. In such a case,

30

the Cayman company concerned is a proper party and so is the third party against whom the company has a claim.

(i) I would add that I have also considered the following statement made by Browne-Wilkinson, L.J. in *Nurcombe* v. *Nurcombe* (10) ([1985] 1 W.L.R. at 378):

"The Juristic basis of this principle [the exceptions to the rule in *Foss* v *Harbottle* allowing a minority shareholder to sue in the name of the company] (which is applicable in many Jurisdictions in the United States of America) is not clear. In the United States it has apparently been rationalised by saying that a minority shareholder's action is in fact two actions, one a personal action by the minority shareholder against the company for its failure to enforce the company's rights, the other by the company against the wrongdoer. Without expressing any view on the correctness of this analysis (which was not fully examined in argument), I do not think it is necessary to adopt such analysis in the present case. Since the wrong complained of is a wrong to the company, not to the shareholder, in the ordinary way the only competent plaintiff in an action to redress the wrong would be the company itself. But, where such a technicality would lead to manifest injustice, the courts of equity permitted a person interested to bring an action to enforce the company's claim. The case is analogous to that in which equity permits a beneficiary under a trust to sue as plaintiff to enforce a legal right vested in trustees (which right the trustees will not themselves enforce), the trustees being joined as defendants. Since the bringing of such an action requires the exercise of the equitable Jurisdiction of the court on the grounds that the interests of justice require it, the court will not allow such an action to be used in an inequitable manner so as to produce an injustice."

But it does not seem to be right that the only remedy available to a shareholder who establishes an exception to the rule in *Foss* v. *Harbottle* is to bring the derivative claim itself, such that if the derivative claim has to be brought in another jurisdiction there is no ability to seek relief from this court. The substance of the matter is that a shareholder in such circumstances is to be permitted to take action on behalf of the company to enforce the company's rights and if the shareholder needs the assistance of this court to do so the court will hear its application and grant suitable relief.

(j) It therefore seemed to me to be both necessary and legitimate for Top Jet to formulate a claim for leave to continue the Missouri proceedings as a claim against Sino Jet and to have Jet Midwest joined as a necessary or proper party to the application. Sino Jet needed to be a party as defendant since Top Jet was seeking relief binding on it (Top Jet was seeking to have

31

its right to act on behalf of Sino Jet confirmed). Accordingly, there was a real issue between Top Jet and Sino Jet. Jet Midwest was a necessary or proper party since it would be affected by the granting of leave and a confirmation of Top Jet's authority to continue the Missouri proceedings and should, as a matter of procedural fairness and justice, be given an opportunity to oppose the application. Both Sino Jet and Jet Midwest needed to be parties and given an opportunity to participate in order to be able to deal properly with the application for leave.

(k) It seemed to me that a similar analysis could be applied to Top Jet's alternative claim, for which permission to amend the original originating summons had been given, for confirmation that it could act, and continue to act, as the representative of Sino Jet (and the other shareholder of Sino Jet), as set out in para. 2A of the original originating summons as amended.

(l) It also seemed to me that Top Jet's evidence demonstrated both that the claim against Jet Midwest had a reasonable prospect of success and also that its claim that leave be granted (or that leave was not needed) had a reasonable prospect of success. In a case in which there was an application for leave to serve out a claim which itself sought leave to continue and confirm Top Jet's authority to continue the Missouri proceedings, it was appropriate to have regard both to the prospects of Top Jet demonstrating that it should be allowed to continue (and not required to withdraw) the Missouri proceedings and of Sino Jet succeeding in the Missouri proceedings. After all, the court, in the case of a domestic derivative action, is required at the leave stage under GCR O.15, r.12A(2) (and under the practice in existence before the adoption of that rule where there was a challenge to the standing of a shareholder to bring the derivative action) to consider the derivative claim's prospects of success in order to control derivative claims and ensure that shareholders were not able to continue with and defendants were not forced to defend frivolous or otherwise unmeritorious claims.

(m) I did consider whether Top Jet was able to establish that this was a proper case for service out of the jurisdiction (and whether Cayman is the appropriate forum in which to hear Top Jet's claim). I considered whether it might be appropriate to refuse leave to serve out so as to require the issue of Top Jet's standing to commence and continue the Missouri proceedings including the leave issue to be dealt with in due course within those proceedings. I was conscious that by granting leave to serve out, Jet Midwest would be put to the trouble and expense of having to appear in this court if it wished to oppose the making of the orders sought by Top Jet in this court. It would mean that there would need to be two sets of proceedings. I was also conscious (i) that if Jet Midwest chose not to participate in proceedings in this jurisdiction there would be an issue as to what effect an order of this court would have in the Missouri proceedings;

32

and (ii) of the need to avoid giving the impression that this court was seeking in any way to interfere with the Missouri proceedings and the decision of the Missouri court.

(n) However, there were a number of reasons why it seemed to me that this was a proper case for service out. First, as I have noted, one issue raised by Top Jet's application was whether leave from this court was needed in any event (and this is a novel issue which has not been dealt with in any reported decision by this court). This is a matter which cannot definitively be dealt with by the Missouri court and which Top Jet had a legitimate interest in having adjudicated by this court before a trial in Missouri. Secondly, the issues raised by paras. 1, 2 and 2A of the original originating summons, as amended, are governed by Cayman law (see Collins, J.'s analysis of the question of the law governing derivative claims in *Konamaneni* (9)) and, since they relate to the governance of a Cayman company and who is to be treated as being able to act on its behalf, are closely connected with this jurisdiction (and can conveniently be dealt with by this court). It is to be hoped that the Missouri court will at least find the decision of this court on Cayman law issues helpful and persuasive even if Jet Midwest has decided not to participate in the Cayman proceedings and if this court's judgment is not technically enforceable in Missouri (about which I make no comment). Thirdly, while it was possible for the Missouri court to deal with some of these issues based on expert evidence of Cayman law, the expert evidence filed by Top Jet in support of the original originating summons demonstrated that there were a number of uncertainties as to how the Missouri court would deal with the issue of Top Jet's standing and right to bring the Missouri proceedings in the name of Sino Jet. The expert evidence of Missouri law filed by Mr. Blegen was that the substantive and procedural law to be applied by the Missouri court was not clear. It was not clear whether the Missouri court would apply Cayman law or Missouri law to the standing issue or whether the Missouri court would conclude that the requirements under Cayman law for leave to continue the proceedings were inapplicable (I would note that the position on whether Cayman law requirements for leave are to be applied in Missouri has subsequently and recently been clarified by a decision of the New York Court of Appeals, handed down on November 20th, 2017, in *Davis* v. *Scottish Re Group Ltd.* (4), in which that court decided that leave from this court was not required to continue derivative proceedings brought in New York because GCR O.15, r.12A(2) did not apply to proceedings brought outside Cayman and in any event the requirement for leave being an aspect of the procedural law of Cayman would not be applied in New York—but it remains to be seen whether the Missouri court will follow this approach).

(o) It may be that in other cases, once it is authoritatively established in this court that leave is not required for a foreign derivative action, it would

33

be appropriate to refuse leave to serve out Cayman proceedings seeking a separate determination by this court of the shareholder's right to bring and continue the foreign proceedings in a case in which the expert evidence establishes that the foreign court will be able to deal with the standing issue and can conveniently do so based on evidence of Cayman law. The foreign court might well then be the more appropriate forum.

   (p) Finally, I would add that even though the focus of the leave to serve out analysis needs to be on Top Jet's claim to be able and for relief allowing it to act on behalf of Sino Jet in the Missouri proceedings it seemed to me that the court should also consider the basis of the underlying claim (against Jet Midwest) and whether Sino Jet's claim has a reasonable prospect of success. I was satisfied on the basis of the evidence, including the expert evidence, filed in support of the original originating summons, that this requirement was established for the purpose of the leave to serve out application.

14   The order granting leave to amend the original originating summons and to serve it out of the jurisdiction was made on September 14th. The amended original originating summons ("the amended originating summons") was served on Sino Jet on September 21st and on Jet Midwest on September 29th. No acknowledgement of service was filed or other response received from Sino Jet, Jet Midwest or Skyblueocean.

### Top Jet's application to re-amend the amended originating summons

15   The amended originating summons was listed to be heard on December 8th. At the hearing Mr. McKie applied for leave to re-amend the amended originating summons to include a claim for a further declaration in the following terms.

16   In addition to its application for leave under GCR O.15, r.12A(2), and to be appointed a representative of Sino Jet under GCR O.15, r.12(1), Top Jet, in the alternative, sought a declaration (in para. 1A of the draft re-amended amended originating summons) that:

   (a) The facts and matters set out in the petition, if proven at trial, constitute a fraud on the minority in terms of such exception to the rule in *Foss* v. *Harbottle* (6) as set out in *Prudential Assur. Co. Ltd.* v. *Newman Indus. Ltd. (No. 2)* (11).

   (b) The cause of action brought in the Missouri proceedings as set out in the petition is a cause of action that may be pursued derivatively as a matter of Cayman Islands law.

   (c) If, as a matter of Missouri law, Cayman Islands law governs the question, Top Jet had standing to commence and to continue the Missouri proceedings.

34

17   This amendment was needed to deal with the possibility that neither GCR O.15, r.12A(2) nor GCR O.15, r.12(1) applied to a case in which the underlying derivative claim was commenced in another jurisdiction and therefore there were no proceedings in Cayman within which leave could be sought or a representative appointed. At the hearing of the summons for directions on September 7th, I had indicated that my preliminary view was that this seemed to me to be strongly arguable. The relief sought by way of the re-amendment was, in substance, a reformulation of the declaratory relief already sought (without the need for any further evidence) since it authorized the commencement and continuation of the Missouri proceedings by Top Jet on behalf of Sino Jet, albeit that the basis for such authorization would not be GCR O.15. For this reason I am prepared to grant the application to re-amend the amended originating summons (I refer to the originating summons as so re-amended as the re-amended originating summons).

**The relief sought by Top Jet—two separate bases**

18   The re-amended originating summons therefore sought relief on two separate bases. First, on the basis that GCR O.15, r.12A(2) or GCR O.15, r.12(1) applied in the present case even though there are no extant proceedings in Cayman within which leave to continue can be sought or a representation order made. Secondly, on the basis that even if these rules are inapplicable, the court has jurisdiction to (and should) make a declaration to the effect that Top Jet is entitled to bring the Missouri proceedings on behalf of Sino Jet (and if appropriate to authorize Top Jet to do so).

**Does GCR O.15, r.12A(2) apply?**

19   The material part of GCR O.15, r.12A is as follows:

"(1) This rule applies to every action begun by writ by one or more shareholders of a company where the cause of action is vested in the company and relief is accordingly sought on its behalf (referred to in this rule as a 'derivative action').

(2) Where a defendant in a derivative action has given notice of intention to defend, the plaintiff must apply to the Court for leave to continue the action.

. . .

(4) Unless the Court otherwise orders, the application must be issued within 21 days after the relevant date, and must be served, together with the affidavit in support and any exhibits to the affidavit, not less than 10 clear days before the return day on all defendants who have given notice of intention to defend; any defendant so

35

served may show cause against the application by affidavit or otherwise.

(5) In paragraph (4), the relevant date means the later of—

(a)   the date of service of the statement of claim;

(b)   the date when notice of intention to defend was given, provided that, where more than one notice of intention to defend is given, that date shall be the date when the first notice was given.

(6) Nothing in this rule shall prevent the plaintiff from applying for interlocutory relief pending the determination of an application for leave to continue the action.

(7) In a derivative action, Order 18, rule 2(1) (time for service of defence) shall not have effect unless the Court grants leave to continue the action and, in that case, shall have effect as if it required the defendant to serve a defence within 14 days after the order giving leave to continue, or with such other period as the Court may specify.

(8) On the hearing of the application under paragraph (2), the Court may—

(a)   grant leave to continue the action, for such period and upon such terms as the Court may think fit;

(b)   subject to paragraph (11), dismiss the action;

(c)   adjourn the application and give such direction as to joinder of parties, the filing of further evidence, discovery, cross examination of deponents and otherwise as it may consider expedient.

(9) If the plaintiff does not apply for lave [*sic*] to continue the action as required by paragraph (2) within the time laid down in paragraph (4), any defendant who has given notice of intention to defend may apply for an order to dismiss the action or any claim made in it by way of derivative action.

(10) On the hearing of such an application for dismissal, the Court may—

(a)   subject to paragraph (11), dismiss the action;

(b)   if the plaintiff so requests, grant the plaintiff (on such terms as to costs or otherwise as the Court may think fit) an extension of time to apply for leave to continue the action; or

(c)   make sure other order as may in the circumstances be appropriate . . ."

36

20   In his written submissions, Mr. McKie noted that the scheme of GCR O.15, r.12A was tied to the filing of the "writ," the "notice of intention to defend," and the "statement of claim." The time for service of a defence, which would ordinarily be within 14 days of the service of the statement of claim, was suspended until the court granted leave to continue. He also noted that the forms and content of these documents were dealt with and prescribed by the GCR. He accepted that—

> "as a result, GCR O.15, r.12A seems inapposite to apply to foreign proceedings, particularly when those foreign proceedings do not employ documents named writs or notices of intention to defendant or statements of claim, as in the instant case where the Missouri proceedings were commenced by [the petition], being a document in the form that satisfies the rules of the Missouri Court for the commencement of proceedings in that forum."

Nonetheless, he submitted that it was open to the court to adopt a "flexible and purposive interpretation of the relevant GCR rules" and read the references to writ, notice of intention to defend, statement of claim and defence as applying to any document in the proceedings in which the underlying derivative action was being conducted, in this case the Missouri proceedings, which fulfilled the same function as the Cayman pleadings or documents. On that basis GCR O.15, r.12A could accommodate and would apply to foreign derivative proceedings.

21   I do not accept that GCR O.15, r.12A can be interpreted and applied in this manner. The rule clearly contemplates and presupposes that the action by the relevant company against the relevant defendant which has been commenced by the relevant shareholder is being conducted before this court so that the application for leave to continue the action can be made within that action and the court can make orders regulating the future conduct of such action (for example, by making an order on the application of the defendant to dismiss the action). Furthermore, the rule contemplates that the timetable of the action will be affected by the need for an application for leave. The procedural mechanism created by the rule only works where the derivative action has been issued in Cayman. In my view it can have no application to a foreign derivative action.

### Does GCR O.15, r.12 apply?

22   GCR O.15, r.12 provides:

> "(1) Where numerous persons have the same interest in any proceedings, not being such proceedings as are mentioned in rule 13, the proceedings may be begun, and, unless the Court otherwise order, continued, by or against any one or more of them as representing all of as representing all except one or more of them.

37

(2) At any stage of proceedings under this rule the Court may, on the application of the plaintiff, and on such terms, if any, as it thinks fit, appoint any one or more of the defendants or other persons as representing whom the defendants are sued to represent all, or all except one or more, of those persons in the proceedings; and where in exercise of the power conferred by this paragraph, the court appoints a person not named as a defendant, it shall make an order under rule 6 adding that person as a defendant.

(3) A judgment or order given in proceedings under this rule shall be binding on all the persons as representing whom the plaintiffs sue or, as the case may be, the defendants are sued, but shall not be enforced against any person not a party to the proceedings except with the leave of the Court.

(4) An application for the grant of leave under paragraph (3) must be made by summons which must be served personally on the person against whom it is sought to enforce the judgment or order.

(5) Notwithstanding that a judgment or order to which any such application relates is binding on the person against whom the application is made, that person may dispute liability to have the judgment or order enforced against him on the ground that by reason of facts and matters particular to this case he is entitled to be exempted from such liability.

(6) The Court hearing an application for the grant of leave under paragraph (3) may order the question whether the judgment or order is enforceable against the person against whom the application is made to be tried and determined in any manner in which any issue or question in an action may be tried and determined."

23   As Mr. McKie pointed out, derivative actions in Cayman are brought in representative form. The title to the action states that the plaintiff is suing on behalf of himself and all other shareholders of the company other than a shareholder whose action is complained of and is a defendant (see *Gore-Browne on Companies*, 44th ed., 4th supp., para. 28–6 (1986)). The main purpose of doing so is to allow other shareholders to take over the conduct of the action in the event that the shareholder initiating the derivative claim fails to prosecute it properly or otherwise withdraws. "In a representative action an unnamed but represented plaintiff is a 'party' . . . thus where the named plaintiff withdraws from the proceedings the name of a previously unnamed but represented plaintiff may be added and the pleadings amended accordingly" (*Gore Browne on Companies*, *ibid.*).

24   But it seems to me that these rules and the procedural mechanism created thereunder for protecting and involving represented plaintiffs in

38

the action and for allowing the shareholder initiating the derivative action to act in a representative capacity apply only to proceedings commenced in this jurisdiction. GCR O.15, r.12 refers to and regulates proceedings being conducted in this jurisdiction and gives the court powers with respect to proceedings taking place before it. The GCR cannot have been intended to apply to and regulate the conduct of foreign proceedings. Mr. McKie had acknowledged in his written submissions that applying GCR O.15, r.12 to foreign proceedings was not without difficulty and during his oral submissions, while not conceding the point, acknowledged the weakness of the argument.

**What is the position where GCR O.15, r.12A and GCR O.15, r.12 do not apply?**

25   So what is the position if, as I have held, GCR O.15 does not apply to a foreign derivative action? The relief sought by Top Jet in paras. 1, 2 and 2A of the re-amended originating summons cannot be granted. But can and should the court grant the relief sought in para. 1A of the re-amended originating summons?

26   It will be recalled that in para. 1A, Top Jet sought three declarations, namely that:

   (a) The facts and matters set out in the petition if proven at trial constitute a fraud on the minority in terms of such exception to the rule in *Foss* v. *Harbottle* (6), as set out in *Prudential Assur. Co. Ltd. (No. 2)* (11).

   (b) The cause of action brought in the Missouri proceedings as set out in the petition is a cause of action that may be pursued derivatively as a matter of Cayman Islands law.

   (c) If, as a matter of Missouri law, Cayman Islands law governs the question, Top Jet had standing to commence and to continue the Missouri proceedings.

27   It seems to me that before, or perhaps in addition to, deciding whether the court can and should make declarations in these terms, I also need to consider whether, even though GCR O.15, r.12A is not applicable, Top Jet nonetheless needs to apply for leave to continue the Missouri proceedings. If there is a free-standing requirement for leave, outside and independent of the GCR, then Top Jet would need to make and the court will need to decide whether to grant leave.

28   It seems to me that there is no such free-standing requirement. In the absence of a requirement imposed by the GCR to seek leave in a case of a foreign derivative action, it does not seem necessary or appropriate for the court to impose one. In the absence of an applicable rule, the position is similar to that which applied to domestic derivative actions before the adoption of GCR O.15, r.12A in 1995 (by the Grand Court Rules of 1995).

39

The position before the adoption of GCR O.15, r.12A was considered recently in the Court of Appeal by Chadwick, P. in *Autumn Hldgs. Asset Inc.* v. *Renova Resources Private Equity Ltd.* (1). Chadwick, P. stated that the practice for the control of derivative proceedings, prior to the introduction of GCR O.15, r.12A, was that the issue of derivative standing was for the defendant who could mount a challenge if he so wished. He would do so by bringing an application to strike out or for the determination of the plaintiff's standing as a preliminary issue. As Chadwick, P. explained (2017 (2) CILR 136, at para. 26):

> "but it is important to have in mind, first, that it [Renova, the shareholder bringing a multiple derivative action] was not required to [seek leave to proceed with the derivative action] . . . under GCR O.15, r.12A (which, in the restrictive form in which that order had been made, had no application to multiple derivative actions) and, secondly, that there was no other rule of practice which required that leave was required to bring a multiple derivative action under the general law. It is clear, from the judgments in *Waddington* and from the observations of Briggs, J. in *Universal Project Mgmt. Serv. Ltd.* v. *Fort Gilkicker Ltd.* . . . that the practice under the general law in relation to the pursuit of derivative claims—which predated the introduction of GCR O.15, r.12A—was abrogated by that rule in relation to single derivative actions but continued to apply (after the introduction of that rule) in relation to multiple derivative actions. As Ribeiro, P.J. pointed out in *Waddington* ([2009] 2 BCLC 82, at paras. 13–14):
>
> > '[13]  . . . Procedurally, there is no requirement at common law for a person seeking to sue derivatively first to obtain the leave of the court . . .
> >
> > [14]  The time honoured practice at common law is for the plaintiff to issue proceedings 'on behalf of himself and the other shareholders other than the defendants', naming the company on whose behalf the proceedings are brought as one of the defendants. *A challenge to the plaintiff's locus generally takes the form of an application by the relevant defendants to strike out the claim or to have the court determine as a preliminary issue that the plaintiff has no locus to sue on the company's behalf.*'" [Emphasis added.]

29   In the absence of a rule to the contrary, the position was that there was no requirement for the shareholder bringing the derivative claim to establish his entitlement to do so before commencing the action (or to seek leave to continue). The onus was on the defendant to challenge the right of the plaintiff by making an application to strike out or for the determination of a preliminary issue (see *Smith* v. *Croft* (14), and )). The English Court of Appeal in *Prudential Assur. Co. Ltd. (No. 2)* (11) established the manner in which such a challenge was to be dealt with and the test to be applied. The plaintiff would be required ([1982] Ch. at 222) "to establish a prima facie case (i) that the company is entitled to the relief claimed and (ii) the action falls within the proper boundaries of the exception to the rule in Foss v Harbottle." See also *Smith* v. *Croft* (*No. 2*) (14).

30   In other words, the defendant to the derivative action could and should raise any challenge to standing in the proceedings commenced against it in the manner appropriate to those proceedings. Where the challenge was made in Cayman proceedings that would need to be done, as I have explained, by an application to strike out or for the determination of a preliminary issue with a modification to the usual approach taken on such applications. As Knox, J. said in *Smith* v. *Croft (No. 2)*, the Court of Appeal had devised and the court should apply ([1988] Ch. at 138–139)—

"a special form of procedure concerned with giving sensible operation to the rule in *Foss v Harbottle* . . . and which is concerned with avoiding the Scylla and Charybdis, on the hand of having a preliminary issue which effectively requires one to try the whole action where the rules serves no useful purpose, and on the other side of the strait, of assuming that everything the plaintiffs allege is necessarily correct as a matter of fact, which is of course the technique the court adopts when it has was called a strict demurrer. The Court of Appeal has laid down a halfway house for this very special type of case, one in which the legal issues in this particular case are sufficiently well defined for the parties to be able to argue them."

31   It seems to me that a similar analysis applies and a similar approach should be adopted in the case of a foreign derivative action. Where there is a foreign derivative action, so that there is no requirement under the GCR for leave, no leave is needed as a matter of Cayman law. The challenge to standing will need to be brought in the foreign proceedings and disposed of by the foreign court in accordance with its law and procedure. To the extent that it applies Cayman law to the standing point, the foreign court will determine what Cayman law issue will arise (for example whether the issue is whether under Cayman law the shareholder would be given leave to continue the derivative action or whether at trial, on the facts established at trial, the case falls within an exception to the rule in *Foss* v. *Harbottle* (6) so that the claim may properly be brought derivatively). There is no necessary role for this court. While the court exercises a supervisory jurisdiction with respect to derivative actions (see Lightman, J. in *Fraser* v. *Oystertec plc* (7) ([2005] BPIR 381, at para. 29)), this does not seem to me to require or justify imposing an obligation on a

41

shareholder to seek leave, even though doing so would bring the position with respect to foreign derivative actions into alignment with that applicable to domestic derivative actions. The defendant to the foreign derivative action is able to challenge standing in the foreign court and could, if it considered it to be necessary and justifiable, also apply to this court for relief.

32   In the present case, the challenge to Top Jet's standing to commence the Missouri proceedings is, for obvious and proper reasons, raised by Jet Midwest in those proceedings. It will be a matter for the Missouri court in due course to adjudicate on that challenge and apply Cayman law or such other law as it considers to be applicable. Top Jet is seeking to establish in this court whether as a matter of Cayman law Top Jet is required to obtain leave to continue the Missouri proceedings and either to obtain leave if required or otherwise a confirmation, by way of declaration, that on the facts as pleaded in the petition, if proven at trial it is entitled under Cayman law to bring the proceedings in the name and on behalf of Sino Jet.

**Has Top Jet established the right to bring a derivative action under Cayman law?**

33   Mr. McKie submits that a derivative action may only be brought if it is shown that one of the four exceptions to the rule in *Foss* v. *Harbottle* (6) applies and that the fraud on the minority exception applies in the present case, on the assumption that the facts and matters set out in the petition are proven at trial. In particular he submits that:

    (a) It is sufficient for these purposes that the shareholder bringing the claim (and the term "minority shareholder" in this context) includes a person who, like Top Jet in respect of Sino Jet, holds 50% of the issued share capital of the company concerned. He cites as authority for this proposition the judgment of Davies, J. in *Barrett* v. *Duckett* (2) ([1995] 1 BCLC 73, at paras. 79–80 (Ch. D.); reversed on other grounds, [1995] 1 BCLC 243 (C.A.)) where he said that "Mrs Barrett is not, strictly speaking, a minority shareholder since she has 50 shares, as does Mr. Duckett [being the only other shareholder]. Nevertheless she is, in my view, a minority shareholder for the purposes of the exceptions to *Foss v Harbottle.*"

    (b) It is necessary for the shareholder to establish conduct which constitutes a fraud on the minority. In the present case, the failure by the Sino Jet directors appointed by Skyblueocean (acting as directed by Mr. Kraus and possibly his sister, and for the benefit of Jet Midwest and Mr. Kraus and his sister) to authorize and cause Sino Jet to enforce its rights and commence proceedings against Jet Midwest is sufficient in the circumstances to satisfy this requirement.

42

(c) It is also necessary for the shareholder to establish that the wrongdoers are in control of the company. In the present case the wrongdoers are identified, it appears, as Mr. Kraus (and his sister). It is said that they have (negative) control of the Sino Jet board (since Mr. Kraus is a director and controls the other Sino Jet directors appointed by Skyblueocean) and of Sino Jet (since Mr. Kraus and his sister control Skyblueocean whose consent is required to the commencement of proceedings by Sino Jet against Jet Midwest). Mr. McKie noted that in *Prudential Assur.* (11) the Court of Appeal recognized that the term control ([1982] Ch. at 219)—

> "embraces a broad spectrum extending from an overall absolute majority of votes at one end, to a majority of votes at the other end made up of those likely to be cast by the delinquent himself plus those voting with him as a result of influence or apathy."

(d) A claim by a company for breach of a contract made between the company and a third party may be brought derivatively (so that there is no basis in principle for denying Top Jet the right to bring Sino Jet's claim for breach of the consignment agreement derivatively against Jet Midwest).

(e) It was also unnecessary for the shareholder to show that it had made a demand or request to the company's board or other shareholders to commence the relevant proceedings where it could show that such a demand or request would be futile and would not be acted on, and this was such a case.

34   I accept that a 50 per cent shareholder may bring a derivative claim. The principle applies whenever a shareholder is not able to persuade or cause the normal organs of the company to commence proceedings in respect of a wrong done to it. The essential question is whether the company is being prevented from pursuing a claim which the company legitimately has (see Knox, J. in *Smith* v. *Croft (No. 2)* (14)).

35   As regards the conduct which satisfies the fraud requirement, Mr. McKie submitted that the term "fraud" is attributed a wide meaning which embraces both fraud in a strict sense and, short of fraud, a breach of duty which confers a benefit on the directors or third parties. He relied on the statements of the principle in:

(a) *Daniels* v. *Daniels* (3) as follows ([1978] Ch. at 413–414, *per* Templeman, J.):

> "The authorities which deal with simple fraud on the one hand and gross negligence on the other do not cover the situation which arises where, without fraud, the directors and majority shareholders are guilty of a breach of duty which they owe to the company, and that breach of duty not only harms the company but benefits the directors. In that case it seems to me that different considerations apply. If

43

minority shareholders can sue if there is fraud, I see no reason why they cannot sue where the action of the majority and the directors, though without fraud, confers some benefit on those directors and majority shareholders themselves. It would seem to me quite monstrous—particularly as fraud is so hard to plead and difficult to prove—if the confines of the exception to *Foss v. Harbottle* . . . were drawn so narrowly that directors could make a profit out of their negligence . . . *The principle which may be gleaned from Alexander v. Automatic Telephone Co.* . . . *(directors benefiting themselves), from Cook v. Deeks* . . . *(directors diverting business in their own favour) and from dicta in Pavlides v. Jensen* . . . *(directors appropriating assets of the company) is that a minority shareholder who has no other remedy may sue where directors use their powers, intentionally or unintentionally, fraudulently or negligently, in a manner which benefits themselves at the expense of the company.*" [Emphasis added.]

(b) *Estmanco (Kilner House) Ltd.* v. *G.L.C.* (5) as follows ([1982] 1 W.L.R. at 12, *per* Megarry, V.-C.):

"Apart from the benefit to themselves at the company's expense, *the essence of the matter seems to be an abuse or misuse of power. 'Fraud' in the phrase 'fraud on a minority' seems to be being used as comprising not only fraud at common law but also fraud in the wider equitable sense of that term, as in the equitable concept of a fraud on a power.*

   Now of course *Daniels v. Daniels* . . . was a case on acts by directors as such, rather than by shareholders, and I do not forget this. At the same time it seems to me to be useful as preventing 'fraud' from being read too narrowly. Suppose, too, the decision to sell the land had been made not by the husband and wife qua directors, but by a resolution of the company carried by their votes: could it then be said that the minority could not sue? Is this exception from the rule in *Foss v. Harbottle* open to easy evasion by directors who hold the majority of votes in general meeting if they take care to reach their decisions not by voting as directors but by voting as shareholders? I think not." [Emphasis added.]

36   Mr. McKie submitted that in the present case the conduct constituting the fraud was that of Mr. Kraus and the other Sino Jet directors appointed by Skyblueocean and that Top Jet had asserted in the petition that there had been a breach of duty by these directors. He referred to and relied on the facts and matters set out in the petition, in particular, paras. 66 and 67 ("a majority in favour of bringing proceedings cannot be obtained because three of the six members of the board (Mr. Kraus, Mr. Woolley and Ms. Lumley) have an interest in shielding Jet Midwest and therefore have a

44

conflict of interest; have turned a blind eye to Jet Midwest's failure to perform its obligations under the consignment agreement and would block Sino Jet from enforcing the consignment agreement"), and para. 82 ("Skyblueocean can prevent Sino Jet from enforcing its rights only by misusing its de facto control of Sino Jet and by causing the directors it has appointed and controls to breach their fiduciary duties to the Sino Jet shareholders as a whole for the benefit of Jet Midwest and at Sino Jet's expense.")

37   Assuming these asserted facts to be true, and assuming that Sino Jet has or is likely to have a good claim against Jet Midwest, the Sino Jet directors appointed by Skyblueocean appear to be in breach of their fiduciary duty by failing to take action to protect the interests of Sino Jet and all its shareholders by enforcing its rights against Jet Midwest. They are improperly putting the interests of one of the shareholders and of Mr. Kraus and his sister ahead of those of Sino Jet as a company and all its shareholders.

38   In such circumstances, a claim could have been brought derivatively against Mr. Kraus and the other Sino Jet directors appointed by Skyblueocean. Such a claim could have been brought in this jurisdiction. It is not clear why this was not done. Instead, the derivative action has been brought against a third party that is neither a director nor a shareholder. Mr. McKie accepted that there are difficulties with and limitations on derivative claims against third parties. He cited passages from the report prepared by the Law Commission of England & Wales entitled *Shareholder Remedies* (published on October 24th, 1997) in connection with the proposed reform of the law relating to derivative actions which discussed these limitations both in the context of the reforms proposed by the Law Commission and the old common law. The following passages are of particular relevance (para. 6.27, at 81; paras. 6.31–6.37, at 82–84):

"6.27   The second concern raised by respondents was that there may be some situations where it should be possible to bring a derivative action which would fall outside the new procedure. *This may be because there is **no** breach of duty by directors (even on the widest possible meaning of 'duty'), or it may be because the cause of action does not **arise out** of the breach of duty.*"

"6.31   So far as the second situation is concerned, one respondent gave the following example. *A profitable company is a victim of a tort by a third party, and the board, although otherwise committed to the well-being of the company, have ulterior motives of their own for not wishing to enforce the remedy for the tort. Although the board would in those circumstances be in breach of duty, their breach would not have given rise to the claim.*

45

6.32   We accept that in this type of situation an individual shareholder would have no right to bring a derivative action against the third party tortfeasor under our proposals. (There would of course be a potential claim for damages against the directors themselves, although this may give rise to difficulties of causation or quantification, and it is possible that the directors may not have sufficient funds to meet the claim). However, we do not consider that this is an issue which needs to be addressed for two main reasons.

6.33   *First, we are not aware of any cases under the current law where a derivative action has been successfully brought in circumstances such as those described in paragraph 6.31.*

6.34   Secondly, (and more importantly) it is consistent with the proper plaintiff principle which we endorsed in the consultation paper and which received virtually unanimous support on consultation. *The decision on whether to sue a third party (ie someone who is not a director and where the claim is not closely connected with a breach of duty by a director) is clearly one for the board. If the directors breach their duty in deciding not to pursue the claim then (subject to the leave of the court) a derivative claim can be brought against them. To allow shareholders to have involvement in whether claims should be brought against third parties in our view goes too far in encouraging excessive shareholder interference with management decisions.* This is particularly important as we are proposing that derivative actions are to be available in respect of breaches of directors' duties of skill and care. A line has to be drawn somewhere and we consider that this is both a logical and clearly identifiable place in which to draw the line.

6.35   *There may be situations where the line is not quite so easy to draw. For example, a company may have a claim in negligence against an auditor who fails to spot that the directors have misappropriated corporate assets. The factual background to the claim against the auditor is the breach of duty by the directors, but the auditor has neither participated in the fraud nor received corporate assets. Our view is that it is not appropriate for a derivative action to be brought against the auditor in these circumstances, and we do not consider that it would be possible to bring such an action under the terms of our draft bill. The cause of action against the auditor does not arise as a result of the directors' act, but rather their act is merely the setting against which the auditor's (separate) default operates.*

. . .

6.37   We therefore consider that the new procedure should only be available for claims in respect of breaches of duty by a director

46

(including claims against third parties as a result of such breaches), and that for these purposes director should include a shadow director." [Emphasis added; footnotes omitted.]

39   It seems to me right that where a third party has a liability to the company (whether in contract or tort) but the third party has neither participated in the conduct constituting the fraud on the minority nor received corporate assets then it would not be possible for a claim against them to be brought derivatively. The fraud whose existence justifies the derivative action (and an exception being made to the principle that only the company can bring a claim for wrongs done to it) must give rise to the third party's liability. The third party must be a party or accessory to or closely associated with the conduct which gives rise to the fraud on the minority. If there were no, or an insufficiently close, relationship between Jet Midwest and Mr. Kraus (and the Sino Jet directors appointed by Skyblueocean), such that Jet Midwest could be treated as an independent third party, it is likely that the claim for breach of contract or for an account of sums owed in relation to the sale of Sino Jet's equipment could not be brought derivatively (since Jet Midwest's breach of the consignment agreement would be independent of the wrongful conduct which justifies and permits Top Jet as a minority shareholder, rather than the company's board, having control of litigation to enforce the company's rights). But Mr. McKie submits that this difficulty does not arise here because Top Jet's case is based on its assertion that Jet Midwest is to be treated as controlled by Mr. Kraus (and his sister), the wrongdoers. Jet Midwest is therefore to be treated as an insider and either as having participated in the conduct constituting the fraud on the minority or as being so closely connected with the wrongdoers as to justify the claim for breach of the consignment agreement being subject to a derivative claim (Jet Midwest might also be said to have received Sino Jet's assets in so far as it has an obligation to account for proceeds of sale that belong to Sino Jet).

40   The petition avers and asserts, by reference to certain specified documents, the following:

(a) That Skyblueocean owns 50 per cent of the shares in Sino Jet and has appointed and controls the three Sino Jet directors it has appointed (para. 33).

(b) That Mr. Kraus is the sole director of Skyblueocean (para. 36) and one of the two members of Skyblueocean (para. 37). The other member is Jet Midwest Group LLC ("JMG").

(c) That Mr. Kraus is the founder and Mr. Kraus and his sister are the two members of JMG (paras. 41–42). Mr. Kraus is also the CEO of JMG (para. 43).

47

(d) That the three directors of Jet Midwest are Mr. Kraus, his sister Karen Kraus and their brother Patrick Kraus. Jet Midwest was founded by Mr. Kraus who manages its affairs (paras. 50–51).

(e) That Jet Midwest was administratively dissolved when it entered into the consignment agreement and that under Missouri law when a company is administratively dissolved any director who conducts any business except that appropriate to wind up and liquidate its business and affairs is personally liable for any obligation incurred (paras. 48–49).

41    Accordingly, Mr. McKie submits that, assuming these facts are proved at trial, Top Jet will and does satisfy the test set out by Templeman, J. in *Daniels* v. *Daniels* (3) (as set out above) ([1978] Ch. at 414) namely that it "is . . . a minority shareholder who has no other remedy [and it] may sue where directors use their powers, intentionally or unintentionally, fraudulently or negligently, in a manner which benefits themselves at the expense of the company." The Sino Jet directors appointed by Skyblueocean, including Mr. Kraus, are abusing their position by failing to take steps to cause Sino Jet to enforce its rights against Jet Midwest, to the detriment of Sino Jet (and Top Jet as its only independent shareholder). Their failure to act or to consent to the action against Jet Midwest involves a breach of duty and a use or reliance on their powers as directors within the principle summarized above. Mr. Kraus has so acted in order to benefit himself and his sister. The other two Sino Jet directors appointed by Skyblueocean are acting on the instructions of and so as to benefit Mr. Kraus (and his sister). The benefit to Jet Midwest, of being relieved of or not being required to discharge its liabilities, is to be treated as a benefit received by Mr. Kraus (and his sister) for these purposes because Mr. Kraus either alone or with his close relatives controls and has a substantial financial interest in Jet Midwest.

42    Furthermore, Mr. McKie submits that because of the identity of financial interests among, and the common control exercised by Mr. Kraus and his sister over, Skyblueocean, Jet Midwest and the three Sino Jet directors appointed by Skyblueocean, Top Jet has satisfied the requirement that the wrongdoers must be in control of the company. The board of Sino Jet is in effect under the (negative) control of Mr. Kraus and his sister and they are the beneficiaries of the financial benefits that flow to Jet Midwest by being let off the hook from its liabilities under the consignment agreement.

43    In support of his argument that Top Jet does not need to show that a formal request or demand has been made to the Sino Jet board or Skyblueocean to consent to the action against Jet Midwest, Mr. McKie relies on the judgment of Jessel, M.R. in *Russell* v. *Wakefield Waterworks Co.* (13) as follows (L.R. 20 Eq. at 482):

48

"It is not necessary that the corporation should absolutely refuse by vote at the general meeting, if it can be shewn either that the wrong-doer had command of the majority of the votes, so that it would be absurd to call the meeting; or if it can be shewn that there has been a general meeting substantially approving of what has been done; or if it can be shewn from the acts of the corporation as a corporation, distinguished from the mere acts of the directors of it, that they have approved of what has been done, and have allowed a long time to elapse without interfering, so that they do not intend and are not willing to sue. In all those cases the same doctrine applies, and the individual corporator may maintain the suit."

44   I am prepared to accept, for the purposes of this application, that based on the facts and matters in the petition (and on the assumption that the facts stated and averred are proved at trial) Top Jet has a right under Cayman law to bring and continue the Missouri proceedings derivatively on behalf of Sino Jet. The petition alleges:

(a) That Mr. Kraus (and his sister) control Skyblueocean, Jet Midwest and the other two Sino Jet directors appointed by Skyblueocean.

(b) A breach of duty by the Sino Jet directors appointed by Skyblueocean including Mr. Kraus by turning a blind eye to Jet Midwest's failure to perform its obligations under the consignment agreement and acting, or failing to act, with a view to promoting the interests of Mr. Kraus (and his sister) rather than those of Sino Jet.

(c) That by reason of the control of Skyblueocean and the Sino Jet directors appointed by Skyblueocean Mr. Kraus (and his sister) can prevent Sino Jet taking action to enforce Jet Midwest's obligations.

(d) That Mr. Kraus (and his sister) are aware of Sino Jet's claims against Jet Midwest and because of the control they exercise over Skyblueocean and the other Sino Jet directors appointed by Skyblueocean any request or demand to consent to the action against Jet Midwest would be refused (and that Mr. Kraus and the other Sino Jet directors appointed by Skyblueocean, and Skyblueocean, have had ample opportunity to give such consent).

(e) That Jet Midwest, being controlled by Mr. Kraus (and his sister), is closely connected with those whose conduct justifies Top Jet being permitted to bring a derivative claim and such that the benefits obtained by Jet Midwest in not having to discharge its obligations to Sino Jet can be treated as benefits received by Mr. Kraus (and his sister).

45   Based on the facts and matters asserted in the petition this seems to me to be a case that falls within the principle establishing and policy behind the exceptions to the rule in *Foss* v. *Harbottle* (6). If Top Jet were not permitted to bring the Missouri proceedings derivatively, Sino Jet

49

would be unable to recover what is owed to it by Jet Midwest because of the control exercised and abuse of power by Mr. Kraus (and his sister) and thereby a wrong done to Sino Jet would go unremedied. In deciding whether to allow a shareholder to bring a derivative action on behalf of a company, the court must determine whether the shareholder is bringing the action in good faith for the benefit of the company for a wrong done to the company for which no other remedy is available. This test seems to me to be satisfied in the present case based on the matters relied on and averred in the petition.

46   Therefore Top Jet is entitled to and I am prepared to make a declaration that if the facts and matters set out in the petition are proven at trial, then Top Jet is entitled under Cayman law to bring the Missouri proceedings against Jet Midwest derivatively on Sino Jet's behalf. It seems to me that a single declaration in these terms is preferable to the two declarations sought in paras. 1A(a)–(b) of the re-amended originating summons.

47   I have considered whether it is right to make these declarations in the form sought at this stage in the Missouri proceedings and without sight of all of the evidence to be filed in the Missouri proceedings and without taking into account the evidence to be filed by Jet Midwest. I do consider that making a declaration based only on the outline facts pleaded in the petition and without having the chance to consider the evidence in support of and opposition to the petition is not entirely satisfactory. But in the absence of an application by Jet Midwest requesting that I defer a decision until such evidence is available and filed in these proceedings or seeking to oppose the relief sought by Top Jet, I am prepared nonetheless to make the declaration in the form I have set out above. Top Jet must accept of course that it may well be argued that a declaration made in these circumstances is of limited use and effect (what happens if only some of the facts and matters relied on are proved and established in the Missouri proceedings, for example?). Furthermore, it may be open to Jet Midwest (or others) to make a further application subsequently once all the evidence is available inviting the court to revisit the position based on further and fuller evidence. I do not express a view on whether such a further application would be possible or permitted (and am not encouraging one) but it seems to me to be right to mention the possibility (Lightman, J. in his judgment in *Fraser* v. *Oystertec plc* (7), above, does suggest, in the different context of the position in English law at the relevant time, that the court exercises continuing supervision over derivative claims and at least in the case of leave to continue derivative actions the court's view may need to be reviewed at different stages of the action).

48   As regards the declaration sought in para. 1A(c) of the re-amended originating summons (that if, as a matter of Missouri law, Cayman Islands law governs the question, Top Jet had standing to commence and to

50

continue the Missouri proceedings), I consider that it is undesirable to make a declaration which depends on and refers to the position under Missouri law before that position is established. Accordingly I shall not make the declaration set out in that paragraph.

**The indemnity costs issue**

49   In para. 2 of the re-amended originating summons, Top Jet sought an order pursuant to GCR O.15, r.12A(2) that it be indemnified out of Sino Jet's assets in respect of its costs incurred and to be incurred in the Missouri proceedings and these proceedings. In para. 2A(c) of the re-amended originating summons Top Jet sought in the alternative an order that, if appointed as a representative of Sino Jet pursuant to GCR O.15, r.12(1), it be indemnified out of Sino Jet's assets in respect of its costs incurred and to be incurred in the Missouri proceedings and these proceedings. Top Jet did not, however, in para. 1A of the re-amended originating summons, deal with or seek a declaration or other order requiring Sino Jet to indemnify it in respect of such costs.

50   In his written submissions for the hearing of the re-amended originating summons on December 8th, Mr. McKie stated that Top Jet proposed that issues of costs be addressed following the court's determination of whether to grant the declarations sought regarding derivative standing. As a result, Mr. McKie made no submissions on the costs issue in his written submissions or in his oral submissions at that hearing. In the circumstances, I propose to say nothing further regarding costs, and to invite Mr. McKie to notify the court and the other parties of what further orders, if any, he seeks and to provide written submissions explaining what is sought and the basis for such further relief.

***Order accordingly.***

Attorneys: *Maples & Calder* for the plaintiff.

———————————————————