UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXPOINT DIVERSIFIED REAL ESTATE TRUST,<br><br>Plaintiff,<br><br>-against-<br><br>ACIS CAPITAL MANAGEMENT, L.P., U.S. BANK, N.A., JOSHUA N. TERRY, AND BRIGADE CAPITAL MANAGEMENT, L.P.,<br><br>Defendants,<br><br>-and-<br><br>HIGHLAND CLO FUNDING LTD,<br><br>Intervenor-Defendant. | 1:21-cv-04384-GHW |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIGHLAND CLO FUNDING LTD.'s MOTION TO DISMISS

KASOWITZ BENSON TORRES LLP

1633 Broadway
New York, New York 10019
Tel.: (212) 506-1700
Fax: (212) 506-1800

PACHULSKI STANG ZIEHL & JONES LLP

780 Third Avenue, 34th Floor
New York, New York 10017
Tel.: (212) 561-7700
Fax: (212) 561-7777

*Attorneys for Highland CLO Funding, Ltd.*

**TABLE OF CONTENTS**

                                                                                            **Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

    I.    THE NO-ACTION CLAUSE BARS ANY CLAIMS AGAINST THE RIA DEFENDANTS ......................................................................................................... 2

        A.    NexPoint's Article III Arguments Have No Bearing On The No-Action Clause ............................................................................................ 2

        B.    There Is No Safe Harbor From The No-Action Clause For NexPoint's Claims ............................................................................................ 3

        C.    NexPoint Is Not Excused From Complying With The No-Action Clause Simply Because It Asserted (Meritless) Claims Against U.S. Bank .......... 4

        D.    NexPoint Cannot Preclude HCLOF From Moving To Dismiss The Complaint ................................................................................................. 4

    II.    NEXPOINT'S CLAIMS AGAINST U.S. BANK ARE ALSO BARRED ............ 5

        A.    NexPoint Has Failed To Allege That An Event Of Default Has Occurred Or Been Declared ...................................................................................... 6

        B.    No Amendment Can Cure NexPoint's Abject Failure And Inability To Plead Or Declare An Event Of Default ....................................................... 7

    III.    NEXPOINT SHOULD BEAR THE FEES AND EXPENSES OF THIS ACTION ................................................................................................... 8

CONCLUSION ...................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*,
   165 F. Supp. 3d 80 (S.D.N.Y. 2016)..........................................................................................4

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992)........................................................................................................4

*Ellington Credit Fund, Ltd. v. Select Portfolio Serv.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011).........................................................................................4

*Fed. Housing Fin. Agency v. Novation Cos., Inc.*,
   No. 650693/2013, 2017 WL 6025527 (Sup. Ct. N.Y. Cty. Nov. 30, 2017) ................................4

*Feldbaum v. McCrory Corp.*,
   Civ. A. 11866, 1992 WL 119095 (Del. Ch. June 2, 1992) .........................................................2

*GLC Securityholder LLC v. Goldman, Sachs & Co.*,
   74 A.D.3d 611 (1st Dep't 2010) .................................................................................................5

*Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Pelella*,
   350 F.3d 73 (2d Cir. 2003)..........................................................................................................5

*Quadrant Structured Prods. Co. v. Vertin*,
   23 N.Y.3d 549 (N.Y. 2014) ........................................................................................................3

*STS Partners Fund, LP v. Deutsche Bank Sec., Inc.*,
   149 A.D.3d 667 (1st Dep't 2017) ...............................................................................................3

*Waxman v. Cliffs Nat. Res. Inc.*,
   222 F. Supp. 3d 281 (S.D.N.Y. 2016).........................................................................................4

Intervenor-Defendant HCLOF respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint with prejudice.[1]

## PRELIMINARY STATEMENT

HCLOF intervened in this case to facilitate the release of $18 million of trust funds held back by Acis and U.S. Bank to defend against NexPoint's meritless claims. NexPoint's jumbled opposition to the dismissal motions confirms that its claims should be dismissed with prejudice.

Dismissal is required under the plain and unambiguous Indenture provisions that NexPoint agreed to when it invested in the Notes. The no-action clause bars NexPoint's claims against the RIA Defendants because NexPoint indisputably holds less than the 25% of the Notes needed to bring an action. And the Event of Default provision bars NexPoint's claims against U.S. Bank because no Event of Default has been declared and NexPoint indisputably lacks the 51% of the Notes needed to declare one.

NexPoint has no credible response. Instead, NexPoint tries to relitigate HCLOF's intervention, but that issue was decided months ago. The Court granted HCLOF's intervention on December 7, 2021 and permitted HCLOF to brief these dismissal motions on January 4, 2022.

NexPoint also asserts that nothing in the Indenture permits HCLOF to stand in the way of NexPoint's meritless claims. NexPoint has it exactly backwards. Nothing in the Indenture permits *NexPoint* to maintain this suit against the RIA Defendants and U.S. Bank. In fact, the Indenture explicitly bars NexPoint from maintaining this suit and leaves NexPoint open to liability for violating the Indenture — here, by asserting its meritless claims and causing needless waste of trust funds.

---

[1] Capitalized terms used but not defined herein have the meaning given in HCLOF's opening brief, ECF No. 79. In light of NSOF's name change to NexPoint Diversified Real Estate Trust, ECF No. 106, NSOF is referred to herein simply as "NexPoint."

1

Lastly, NexPoint does not dispute that this Court has subject matter jurisdiction to resolve this entire suit.  To the contrary, NexPoint *insists* on subject matter jurisdiction here.  This Court should therefore exercise its jurisdiction to dispose of NexPoint's claims once and for all.

## ARGUMENT

**I.     THE NO-ACTION CLAUSE BARS ANY CLAIMS AGAINST THE RIA DEFENDANTS**

The no-action clause bars Noteholder claims against third parties, where no Event of Default has been declared and the Noteholder holds less than 25% of the Notes.  *See* Indenture § 5.8.  Here, NexPoint does not (and cannot) dispute that it holds just 13% of the Notes, and no Event of Default has been declared or could be declared by NexPoint.  This binding contract provision requires dismissal of NexPoint's claims against the RIA Defendants.

**A.     NexPoint's Article III Arguments Have No Bearing On The No-Action Clause**

NexPoint contends that the no-action clause has no bearing on its Article III standing. *See* ECF No. 96 at 3-4.  NexPoint confuses the issues.  Regardless of whether NexPoint has Article III standing, its claims are still subject to dismissal under the no-action clause.  NexPoint agreed to be bound by the no-action clause (as well as all other provisions in the Indenture) when it invested in the Notes.  And by doing so, NexPoint agreed that it could not bring claims unless it complied with the no-action clause.  *See Feldbaum v. McCrory Corp.*, Civ. A. 11866, 1992 WL 119095, at *7 (Del. Ch. June 2, 1992) ("in consenting to no-action clauses by purchasing bonds, plaintiffs waive their rights to bring claims . . . unless they first comply with the procedures set forth in the clause").  The requirements embedded in the no-action clause protect Noteholders from the needless waste of trust funds associated with unpopular minority suits. Here, those requirements protect HCLOF from NexPoint's meritless claims.

### B. There Is No Safe Harbor From The No-Action Clause For NexPoint's Claims

NexPoint also argues that the no-action clause bars only claims arising out of the Indenture but not, according to NexPoint, its "noncontractual" claims. ECF No. 97 at 24-26 (citing *Quadrant Structured Prods. Co. v. Vertin*, 23 N.Y.3d 549 (N.Y. 2014)). That does not mean any of NexPoint's claims survive. ECF No. 79 at 11. *Quadrant* only saves claims that are "independent" of the indenture; it requires dismissal of *all* claims involving rights "arising out of the indenture agreement." *Quadrant*, 23 N.Y.3d at 559-61.

Here, none of NexPoint's contractual and supposedly "noncontractual" claims against the RIA Defendants are independent of the Indenture; every single one involves rights arising out of the Indenture. NexPoint nominally disputes this, but its protestations are half-hearted to say the least. NexPoint utterly fails to provide any explanation for *how* its claims actually arise "from outside of the Indenture." *See* ECF No. 97 at 24-25. None do. Even assuming *arguendo* that NexPoint's claims for violations of the Advisors Act, breach of fiduciary duty, negligence, and conversion are valid, all of these claims arise from the same exact alleged violations of the Indenture (or PMA, which was assigned to the trustee for the benefit of Noteholders and is part of the Trust corpus under the Indenture). Namely, the claims arise from NexPoint's allegations that the RIA Defendants purportedly failed to manage the CLO collateral in accordance with various collateral quality tests set forth in the Indenture and the duty of care set forth in the PMA. *See, e.g.*, SAC ¶¶ 78-80, 99, 111-15, 119-20, 174.

NexPoint cannot avoid dismissal of its claims simply by calling its alleged violations by a different name or recasting them under different legal theories. *See STS Partners Fund, LP v. Deutsche Bank Sec., Inc.*, 149 A.D.3d 667, 668 (1st Dep't 2017) (affirming dismissal of certificateholder claims for tortious interference, unjust enrichment, and aiding and abetting breach of fiduciary duty "based on the no-action clause" because, just like here, those "claims all

3

arise out of the trust agreements"); *Fed. Housing Fin. Agency v. Novation Cos., Inc.*, No. 650693/2013, 2017 WL 6025527, at *2 (Sup. Ct. N.Y. Cty. Nov. 30, 2017) (no-action clause barred certificateholder claims for breach of a related agreement assigned to the trustee for the benefit of the noteholders).

### C. NexPoint Is Not Excused From Complying With The No-Action Clause Simply Because It Asserted (Meritless) Claims Against U.S. Bank

NexPoint argues that it need not comply with the no-action clause because it has asserted claims against U.S. Bank, the trustee. ECF No. 97 at 23. This argument tries to create an exception that would swallow the rule. While claims against trustees may be unaffected by no-action clauses, trying to save claims against third parties by asserting a claim against the trustee is a bridge too far. Doing so would render the no-action clause meaningless. No case supports NexPoint's position, and in fact, as Acis explained in its opening brief, the cases are to the contrary. *See* ECF No. 84 at 18; *accord Ellington Credit Fund, Ltd. v. Select Portfolio Serv.*, 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011) (there is no absurdity in "asking [a trustee] to sue a third party, even when the investor alleges wrongdoing by the trustee"); *Waxman v. Cliffs Nat. Res. Inc.*, 222 F. Supp. 3d 281, 292-93 (S.D.N.Y. 2016) (rejecting argument that compliance with no-action clause was excused as absurd with respect to claims against issuer).[2]

### D. NexPoint Cannot Preclude HCLOF From Moving To Dismiss The Complaint

The Court granted HCLOF's intervention as of right back in December (notably, with NexPoint's consent), and in January permitted HCLOF to brief the dismissal of the Complaint along with the other Defendants. ECF Nos. 48, 49, 65. Now, however, NexPoint asserts that

---

[2] The cases cited by NexPoint concern claims against trustees, not third parties. *See Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992) (no-action clauses do not bar claims against trustee because "it would be absurd . . . to ask the Trustee to sue itself"); *Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*, 165 F. Supp. 3d 80, 93, 98-99 (S.D.N.Y. 2016) (same).

4

"nothing in the Indenture gives a lone equity holder the right to impede or dismiss another equity holder's lawsuit" and implies that HCLOF had to comply with the no-action clause in order to move to dismiss NexPoint's claims.  ECF No. 96 at 5.  Neither the Indenture nor the law support this position.

The no-action clause only bars "*institut[ing]* any Proceeding."  Indenture § 5.8 (emphasis added).  Here, HCLOF has not instituted any proceeding but is moving to dismiss the proceeding that NexPoint improperly instituted.  Nothing precludes HCLOF from protecting itself in this manner.  *Cf. GLC Securityholder LLC v. Goldman, Sachs & Co.*, 74 A.D.3d 611, 612 (1st Dep't 2010) (no-action clause only bars commencing an action); *see also Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Pelella*, 350 F.3d 73, 82 (2d Cir. 2003) ("[A] defendant does not 'institute' an action when he asserts a counterclaim.").

Moreover, the Indenture permits HCLOF to assert *affirmative* claims against NexPoint.  Section 13.2 of the Indenture sets forth the standard of conduct applicable to Noteholders.  While that provision generally immunizes Noteholders from liability to others, it has an explicit carve-out for any "Holder's taking . . . an action . . . in bad faith or in violation of the express terms of this Indenture."  Indenture § 13.2.

In other words, the Indenture actually permits HCLOF not only to participate in this proceeding but also to assert *affirmative* claims against NexPoint for its disregard of the no-action clause and other Indenture provisions, including for recovery of attorneys' fees and expenses (which HCLOF reserves the right to pursue to the fullest permitted extent).

## II. NEXPOINT'S CLAIMS AGAINST U.S. BANK ARE ALSO BARRED

The Indenture bars all of NexPoint's claims against U.S. Bank because no Event of Default was declared (nor could one have been declared by NexPoint), and NexPoint pleads no

5

violations of U.S. Bank's ministerial duties. Indeed, NexPoint concedes the latter deficiency by surrendering the "pursui[t] [of] its claims for breach of the Trust Indenture Act or negligence against U.S. Bank." ECF No. 92 at 10. NexPoint's remaining claim against U.S. Bank for breach of fiduciary duty should also be dismissed as a matter of law.

### A. NexPoint Has Failed To Allege That An Event Of Default Has Occurred Or Been Declared

NexPoint admits that U.S. Bank's fiduciary duties are only triggered upon an Event of Default. *See id.* at 5. The fundamental problem for NexPoint here is that it has failed to allege that an Event of Default has occurred or been declared, nor can it make such allegations.

Unable to dispute the absence of any such allegations, NexPoint urges that U.S. Bank "is alleged to have known the facts constituted a default, and could not just turn a blind eye because someone did not send a 'notice of default' letter." *Id.* at 6. But NexPoint pleads no facts that would give rise to an Event of Default that U.S. Bank should have known about; nor could NexPoint do so:

*First*, NexPoint complains about the RIA Defendants' actions, but there is no Event of Default that arises from the Portfolio Manager's actions, let alone from the actions of the Portfolio Manager's agents or employees. *See generally* Indenture § 5.1.

*Second*, NexPoint complains about the failure of various "collateral quality tests," but the Indenture unambiguously provides that "any failure to meet any Concentration Limitation, Collateral Quality Test, Interest Reinvestment Test, or Coverage Test is *not* an Event of Default." *Id.* § 5.1(d) (emphasis added).

Unable to address these deficiencies, NexPoint introduces a letter for the first time in this case, which it and other entities apparently sent to U.S. Bank in August 2019 with respect to this and other CDOs. Even if considered, this letter does not and cannot save NexPoint's claims.

6

None of the allegations in the letter constitute an Event of Default under the Indenture (because the trustee's actions do not trigger Events of Default, *see generally id.* § 5.1), and NexPoint fails to allege that the senders held a "Majority of the Controlling Class of the Notes" in this deal, as required by the Indenture. *See id.* § 5.1(d). Indeed, NexPoint has not even alleged (nor could it) that the Subordinated Notes were the Controlling Class in August 2019, when the letter was sent.

### B. No Amendment Can Cure NexPoint's Abject Failure And Inability To Plead Or Declare An Event Of Default

NexPoint should not be permitted to amend the Complaint for a third time. No amendment can cure the above-described deficiencies. NexPoint does not dispute that it holds only 13% of the Notes, nor — crucially — that HCLOF, as the holder of over 87% of the Notes, is the sole Noteholder with the right to declare and waive any Event of Default. *See id.* §§ 5.1(d), 5.14.

Section 5.14 of the Indenture authorizes HCLOF, as the supermajority Noteholder of the Controlling Class, to waive Defaults "on behalf of the Holders of *all* the Notes." *Id.* § 5.14 (emphasis added). In fact, HCLOF's waiver right covers not only Events of Default, but also any "past Default and its consequences." *Id*. This is an even broader right than simply waiving Events of Default because a "Default" is defined to include any existing Events of Default, as well as "any occurrence that is, or with notice or the lapse of time or both would become, an Event of Default." *Id.* § 1.1 (Default) at p. 19. In other words, HCLOF can waive any violations that could *potentially* turn into an Event of Default.

This means that NexPoint cannot declare and enforce an Event of Default as a matter of law. Even if NexPoint tried to recast its meritless allegations as an Event of Default in an amendment, HCLOF can waive, and hereby affirmatively waives, on behalf of all Noteholders any Default and its consequences that could in any way arise out of the violations alleged by

7

NexPoint.  By the express terms of Section 5.14, HCLOF's waiver is binding on NexPoint.  *See id.* § 5.14.

Put simply, NexPoint cannot dispute that an Event of Default has not been declared, nor, as a minority Noteholder, could it ever actually declare an Event of Default.  Nor can it dispute that even if it did allege some violation that constituted an Event of Default, such Event of Default can be and has been waived by HCLOF, as the supermajority Noteholder, with binding effect on NexPoint.  These deficiencies are dispositive of NexPoint's claim against U.S. Bank as a matter of law, and they cannot be cured by any amendment.

### III. NEXPOINT SHOULD BEAR THE FEES AND EXPENSES OF THIS ACTION

NexPoint did not object to HCLOF's request that the Court permit the parties to brief shifting to NexPoint all liability for the trust funds and HCLOF's expenses wasted on defending against this meritless suit.  Accordingly, the Court should permit HCLOF to move for an order requiring the costs and expenses incurred by all Defendants to be paid out of the 13% share of trust funds that otherwise would be distributed to NexPoint.

### CONCLUSION

For the reasons set forth above and in HCLOF's opening brief, the Court should dismiss the Complaint with prejudice and grant such further relief as the Court deems just and proper.

Dated:  New York, New York
　　　　March 10, 2022

Respectfully submitted,

KASOWITZ BENSON TORRES LLP

By:  */s/ Uri A. Itkin*
　　　Uri A. Itkin
　　　Jill L. Forster
　　　Andrew W. Breland

1633 Broadway
New York, New York 10019
Tel.:  (212) 506-1700

8

PACHULSKI STANG ZIEHL & JONES LLP

John A. Morris
Gregory V. Demo

780 Third Avenue, 34th Floor
New York, New York 10017
Tel.:  (212) 561-7700

*Attorneys for Highland CLO Funding, Ltd.*

9