UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEXPOINT DIVERSIFIED REAL ESTATE TRUST,<br><br>       Plaintiff,<br><br>    v.<br><br>ACIS CAPITAL MANAGEMENT, L.P., U.S. BANK, N.A., JOSHUA N. TERRY, BRIGADE CAPITAL MANAGEMENT, L.P.,<br><br>       Defendants. | Case No. 1:21-cv-04384-GHW |

## ACIS CAPITAL MANAGEMENT, L.P.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND FOR ATTORNEYS' FEES AND COSTS

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Jonathan E. Pickhardt
Blair A. Adams
Misha Boutilier
51 Madison Ave., 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Fax: 212-849-7100
jonathanpickhardt@quinnemanuel.com
blairadams@quinnemanuel.com
mishaboutilier@quinnemanuel.com

*Attorneys for Acis Capital Management, L.P.*

TABLE OF CONTENTS

| | | Page |
|---|---|---|
| PRELIMINARY STATEMENT | | 1 |
| ARGUMENT | | 1 |
| I. | NEXPOINT LACKS A PRIVATE RIGHT OF ACTION TO PURSUE ITS IAA CLAIM | 1 |
| II. | NEXPOINT'S REMAINING CLAIMS MUST BE DISMISSED AS DERIVATIVE | 5 |
| III. | NEXPOINT'S REMAINING CLAIMS ARE BARRED FOR ADDITIONAL REASONS | 8 |
| | A.   The No-Action Clause Bars NexPoint's Claims | 8 |
| | B.   NexPoint's Remaining Tort Claims Must Be Dismissed As Duplicative | 9 |
| | C.   The Economic Loss Rule Bars The Negligence And Conversion Claims | 10 |
| IV. | LEAVE TO AMEND SHOULD BE DENIED | 10 |
| V. | THE DEFENDANTS ARE ENTITLED TO FEE SHIFTING | 10 |
| CONCLUSION | | 10 |

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013) .................................................................................................. 7

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
   455 F.3d 195 (3d Cir. 2006) .................................................................................................. 5

*Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n*,
   165 F. Supp. 3d 80 (S.D.N.Y. 2016) ..................................................................................... 9

*Cruden v. Bank of N.Y.*,
   957 F.2d 961 (2d Cir. 1992) .................................................................................................. 9

*Davis v. Scottish. Re Grp. Ltd.*,
   160 A.D.3d 114 (1st Dep't 2018) ....................................................................................... 6, 7

*DeBlasio v. Merrill Lynch & Co.*,
   2009 U.S. Dist. LEXIS 64848 (S.D.N.Y. July 27, 2009) ...................................................... 4

*Ellington Credit Fund, Ltd. v. Select Portf'o Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ................................................................................ 8, 9

*In re Evergreen Mutual Funds Fee Litig.*,
   423 F. Supp. 2d 249 (S.D.N.Y. 2006) ................................................................................... 4

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   2020 WL 5518146 (S.D.N.Y. Sept. 14, 2020) ...................................................................... 8

*GPIF-I Equity Co., Ltd. v. HDG Mansur Investment Services, Inc.*,
   2014 WL 1612004 (S.D.N.Y. Apr. 21, 2014) ....................................................................... 4

*Halebian v. Berv*,
   590 F.3d 195 (2d Cir. 2009) .................................................................................................. 6

*Halpert Enters., Inc. v. Harrison*,
   362 F. Supp. 2d 426 (S.D.N.Y. 2005) ................................................................................... 6

*House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*,
   2014 WL 1383703 (S.D.N.Y. Mar. 31, 2014) ....................................................................... 8

*KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*,
   2020 WL 7251172 (S.D.N.Y. June 29, 2020) ....................................................................... 4

*Kahn v. Kohlberg, Kravis, Roberts & Co.*
　970 F.2d 1030 (2d Cir. 1992)......................................................................................................... 4

*King Cty., Wash. v. IKB Deutsche Industriebank AG,*
　863 F. Supp. 2d 288 (S.D.N.Y. 2012) ........................................................................................ 10

*N. Shipping Funds I, LLC v. Icon Cap. Corp.,*
　921 F. Supp. 2d 94 (S.D.N.Y. 2013) ............................................................................................ 9

*Nantong Sanhai Garment Co. v. Fab Mill Inc.,*
　2022 WL 540756 (S.D.N.Y. Feb. 23, 2022) .............................................................................. 10

*Nat'l Credit Union Admin Bd. v. U.S. Bank Nat'l Ass'n,*
　439 F. Supp. 3d 275 (S.D.N.Y. 2020) ........................................................................................ 10

*Norman v. Salomon Smith Barney, Inc.,*
　350 F. Supp. 2d 382 (S.D.N.Y. 2004) .......................................................................................... 4

*Occidental Life Ins. Co. of N.C. v. Pat Ryan & Assocs., Inc.,*
　496 F.2d 1255 (4th Cir. 1974) ..................................................................................................... 5

*Oddo Asset Mgmt. v. Barclays,*
　19 N.Y.3d 584 (2012) .................................................................................................................. 8

*Off Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford,*
　544 F. Supp. 3d 405 (S.D.N.Y. 2021) ........................................................................................ 10

*Omega Overseas Partners, Ltd. v. Griffith,*
　2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) ....................................................................... 3, 4, 5

*Oxford Univ. Bank v. Lansuppe Feeder, LLC,*
　933 F.3d 99 (2d Cir. 2019) ........................................................................................................... 5

*Penades v. Republic of Ecuador,*
　2016 WL 5793412 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 690 F. App'x 733 (2d Cir. 2017) ........... 9

*Quadrant Structured Prod. Co. v. Vertin,*
　23 N.Y.3d 549 (2014) .................................................................................................................. 9

*Matter of R. H. Macy & Co. (Nat'l Sleep Prod.),*
　39 N.Y.2d 268 (1976) .................................................................................................................. 2

*Rapillo v. Fingerhut,*
　2016 U.S. Dist. LEXIS 202573 (S.D.N.Y. Sept. 14, 2016)......................................................... 4

*Renren, Inc. v. XXX,*
　67 Misc. 3d 1219(A) (N.Y. Sup. Ct. 2020), *aff'd*, 192 A.D.3d 539 (1st Dep't 2021) ............... 7

*St. Clair-Hibbard v. Am. Fin. Tr., Inc.*,
  812 F. App'x 36 (2d Cir. 2020) .................................................................................................. 6

*STM Invest S.A.R.L. v. 3P Equity Partners, LLC*,
  2019 U.S. Dist. LEXIS 100340 (C.D. Cal. June 14, 2019) ....................................................... 2

*Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.*,
  964 F. Supp. 783 (S.D.N.Y. 1997) ............................................................................................. 8

*Tobia v. United Grp. Of Cos., Inc.*,
  2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016) .......................................................................... 4

*Top Jet Enter. Ltd. v. Sino Jet Holding Ltd.*,
  2018 (1) CILR 18 [Dkt. 103-7] .................................................................................................. 7

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*,
  444 U.S. 11 (1979) ........................................................................................................ 2, 3, 5, 8

*Welch v. TD Ameritrade Holding Corp.*,
  2009 U.S. Dist. LEXIS 65584 (S.D.N.Y. July 27, 2009) .......................................................... 4

*Wellington International Commerce Corp. v. Retelny*,
  727 F. Supp. 843 (S.D.N.Y. 1989) ............................................................................................. 4

*Winn v. Schafer*,
  499 F. Supp. 2d 390 (S.D.N.Y. 2007) ........................................................................................ 6

*In re Zohar III Corp.*,
  2021 WL 3124298 (D. Del. July 23, 2021) ............................................................................... 8

*Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*,
  2021 WL 4460547 (S.D.N.Y. Sept. 29, 2021) ................................................................... 5, 7, 9

### Rules / Statutes

15 U.S.C. § 78cc(b) ........................................................................................................................ 5

15 U.S.C. § 80a-1 *et seq.* .............................................................................................................. 5

15 U.S.C. § 80a-35(a) .................................................................................................................... 8

15 U.S.C. § 80b-6 ............................................................................................................. 1, 2, 3, 5, 7

15 U.S.C. § 80b-15 ........................................................................................................................ 5

15 U.S.C. § 80b-15(b) ..................................................................................................... 2, 3, 4, 5, 6

Fed. R. Civ. P. 23.1 ....................................................................................................................... 6

**Other Authorities**

Black's Law Dictionary (4th ed)) ................................................................................................ 2

Defendant ACM[1] respectfully submits this reply memorandum of law in support of its motion to dismiss Plaintiff NexPoint's Second Amended Complaint (the "SAC").

## PRELIMINARY STATEMENT

NexPoint's opposition (Dkt. 103, "Opp.") has no answer for the numerous fatal flaws in the SAC. NexPoint's effort to manufacture a non-existent private right of action under the IAA runs headlong into the plain language of the statute and prevailing law. Its remaining common law claims belong to Acis CLO 6, not to individual noteholders, and NexPoint's effort to circumvent the bar on derivative actions under Cayman Islands law using the Indenture's New York choice of law provision cannot be squared with Second Circuit precedent. But even if NexPoint could establish derivative standing, it has no excuse for its noncompliance with the plain language of the Indenture's no-action clause. NexPoint's assertion that the no-action clause is inapplicable because NexPoint is also suing the trustee, or cannot be raised on a motion to dismiss, is irreconcilable with uniformly contrary precedent. The numerous holes in NexPoint's opposition confirm that it filed the SAC without appropriate consideration of its pleading burden. The SAC should be dismissed with prejudice, and NexPoint should be ordered to cover the fees incurred defending against this meritless lawsuit, as authorized by the express terms of the Indenture.

## ARGUMENT

### I. NEXPOINT LACKS A PRIVATE RIGHT OF ACTION TO PURSUE ITS IAA CLAIM

After seven pages arguing that it has pled conduct violating Section 206 of the IAA, *see* Opp. at 5-12—an issue not relevant to ACM's standing challenge—NexPoint finally turns to addressing the absence of a private right of action under Section 206 of the IAA starting at page

---

[1] Capitalized terms not defined herein have the meaning assigned to them in Acis Capital Management, L.P.'s Memorandum of Law In Support Of Its Motion To Dismiss (Dkt. 84).

13 of its brief. There, NexPoint contends that Section 215(b) of the IAA grants a sweeping right to invalidate any advisory contract anytime an investment advisor commits an IAA violation "related to" that contract (including under Section 206), even where the contract was formed lawfully and does not require unlawful performance. Opp. 13-19. NexPoint's interpretation cannot be squared with Section 215(b)'s plain text, this Circuit's precedent, or the Supreme Court's ruling in *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11 (1979).

*First*, NexPoint misconstrues (Opp. at 14) Section 215(b) as permitting rescission of any contract "related to" a violation of the IAA, regardless of whether that violation arose from performance of that contract. But Section 215(b) is clear that it permits rescission of a contract only where the contract's "***performance*** … involves" IAA violations. 15 U.S.C. § 80b-15(b) (emphasis added). The reference to "performance" means "(t)he fulfillment or accomplishment of a … contract or other obligation according to its terms." *Matter of R. H. Macy & Co. (Nat'l Sleep Prod.)*, 39 N.Y.2d 268, 271 (1976) (quoting Black's Law Dictionary (4th ed)). Performance necessarily contemplates conduct that complies with a contract's terms; otherwise the party engaging in that conduct is violating a contract, not performing it. Here, NexPoint alleges that the same conduct underlying its IAA claim breached ACM's contractual obligations under the Indenture and PMA. *See* SAC ¶¶ 165, 171-74, 187-88. That conduct is thus not "performance" under the those contracts or any other contract, and cannot anchor a Section 215(b) claim.

*Second*, NexPoint seeks (Opp. at 15-16) to bolster its overbroad reading of Section 215(b) by claiming a narrower reading would make Section 215(b)'s first sentence "duplicative" because "a contract that 'requires' one to violate the IAA is void when made," making the rest of the sentence "unnecessary." Opp. at 15. This superfluidity argument, derived from a non-precedential California preliminary injunction decision, *see STM Invest S.A.R.L. v. 3P Equity Partners, LLC*,

2

2019 U.S. Dist. LEXIS 100340, at *7 (C.D. Cal. June 14, 2019), does not withstand scrutiny. As Judge Sullivan observed in *Omega*, "circumstances surrounding a contract's performance" such as failure to register "can make the performance required illegal even if the contract's terms are … innocuous." *Omega Overseas Partners, Ltd. v. Griffith*, 2014 WL 3907082, at *4 n.5 (S.D.N.Y. Aug. 7, 2014). Post-formation SEC rules could also cause a lawfully formed contract to require unlawful performance. 15 U.S.C. § 80b-15(b) (covering violations of "any [IAA] rule"). Because a contract need not be "made in violation" of the IAA for its performance to "involve" an IAA violation, ACM's interpretation of Section 215(b) does not render any of its terms superfluous.

*Third*, NexPoint attempts (Opp. at 14-15) to circumvent the narrow scope of Section 215(b) through an appeal to the "remedial purpose of the" IAA. But *TAMA* rejected this same argument. There, the Supreme Court refused to imply a private right of action under Section 206 based on its remedial purpose, finding that "Congress expressly provided both judicial and administrative means for enforcing compliance with § 206," rendering a private remedy unnecessary. *TAMA*, 444 U.S. at 20; *Omega*, 2014 WL 3907082, at *8 ("[T]he IAA provides for both civil enforcement by the [SEC] and criminal enforcement by the [DOJ]. Hence, the statute's purpose can be achieved without any private suits … to rescind contracts based on subsequent illegal performance."). Instead, *TAMA* "favors [a] narrower interpretation" because its facts concerned "illegal[] … terms and … require[ments]" and it described Section 215(b) as voiding "'contracts whose formation or performance *would violate* the Act.'" *Omega*, 2014 WL 3907082, at *7 (quoting *TAMA*, 444 U.S. at 16-17 (emphasis added)). It is equally unnecessary here to bootstrap a private remedy for Section 206 violations to the narrow set of rescission claims that Section 215(b)'s text covers.

*Fourth*, NexPoint stretches (Opp. at 16-18) to claim support from prevailing Second Circuit authority, and portrays *Omega* as an "outlier" decision. Even a cursory review of the case law

shows otherwise. NexPoint admits, as it must, that subsequent cases followed *Omega*. Opp. at 18; *see KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, 2020 WL 7251172, at *10 (S.D.N.Y. June 29, 2020); *Tobia v. United Grp. Of Cos., Inc.*, 2016 WL 5417824, at *20 (N.D.N.Y. Sept. 22, 2016). NexPoint attempts to counter this recent authority (Opp. at 16) with the Second Circuit's pre-*Omega* decision in *Kahn v. Kohlberg, Kravis, Roberts & Co*. But *Kahn* simply held that "[a] § 215 claim may be premised upon a violation of any provision of the IAA." 970 F.2d 1030, 1036 (2d Cir. 1992). That holding is consistent with the holding of *Omega* that Section 215(b) only authorizes rescission of contracts made illegally or that require illegal performance. *Tobia*, 2016 WL 5417824, at *20 (applying *Kahn* and *Omega*). NexPoint next string-cites other pre-*Omega* cases,[2] but *Omega* correctly found that these cases are not "persuasive" because they do not address whether subsequent misconduct voids contracts,[3] or, in one case, did so with "no analysis."[4] *Omega*, 2014 WL 3907082, at *7-8. Finally, NexPoint's claim (Opp. at 17-18) that Judge Sullivan's prior decisions dismissing IAA claims contradict *Omega* is incorrect.[5]

While NexPoint portrays (Opp. at 16) the Second Circuit as undecided on the question, the Court of Appeals has followed the *Omega* approach in interpreting the corollary provision in the

---

[2] The only post-*Omega* case NexPoint cited dismissed IAA claims since there was no advisory contract. *Rapillo v. Fingerhut*, 2016 U.S. Dist. LEXIS 202573, at *25-8 (S.D.N.Y. Sept. 14, 2016).

[3] *Omega* rejected reliance on *GPIF–I Equity Co., Ltd. v. HDG Mansur Investment Services, Inc.*, 2014 WL 1612004 (S.D.N.Y. Apr. 21, 2014), *Norman v. Salomon Smith Barney, Inc.*, 350 F. Supp. 2d 382 (S.D.N.Y. 2004), and *Wellington International Commerce Corp. v. Retelny*, 727 F. Supp. 843 (S.D.N.Y. 1989). *Omega*, 2014 WL 3907082, at *7; *see* Opp. at 16-17.

[4] *See In re Evergreen Mutual Funds Fee Litig.*, 423 F. Supp. 2d 249 (S.D.N.Y. 2006). Like *Evergreen*, NexPoint's out-of-state cases, *see* Opp. 17, all pre-dating *Omega*, also give no analysis for assuming that subsequent misconduct voids contracts under Section 215 of the IAA.

[5] *See Welch v. TD Ameritrade Holding Corp.*, 2009 U.S. Dist. LEXIS 65584, at *14 (S.D.N.Y. July 27, 2009) (dismissing IAA claim for failing to allege advisory contract and seeking unavailable remedies); *DeBlasio v. Merrill Lynch & Co.*, 2009 U.S. Dist. LEXIS 64848, at *50 (S.D.N.Y. July 27, 2009) (same).

IAA's "companion legislation," the ICA. *See Oxford Univ. Bank v. Lansuppe Feeder, LLC*, 933 F.3d 99, 106 (2d Cir. 2019). There, CDO noteholders sought rescission of an indenture agreement based on the CDO issuer's alleged sale of notes to Non-Qualified Purchasers, which resulted in a registration violation under the ICA. *Id.* at 102. The Second Circuit rejected this claim as a matter of law because "[n]either the terms of the Indenture … nor its performance violate the ICA." *Id.* at 109. The Second Circuit's logic applies equally to Section 215(b) of the IAA.[6]

*Fifth*, NexPoint attempts (Opp. at 17-19) to undermine the weight of *Omega* by attacking its reasoning. NexPoint challenges *Omega*'s use of the canon of construction that Congress legislates against the backdrop of the common law, arguing that the canon does not apply because the IAA shows a contrary statutory purpose. Opp. at 18. But the Supreme Court already rejected the suggestion that Congress passed the IAA with the purpose of providing a private remedy for Section 206 fiduciary breaches. *TAMA*, 444 U.S. at 20. NexPoint points to no other clearly articulated legislative purpose that departs from the common law. NexPoint also faults *Omega* for considering Section 215's title, "Invalidity of Contracts," without first finding ambiguity. Opp. at 19 n.25. But NexPoint concedes the title's relevance by arguing that Section 215(b) is ambiguous, Opp. at 14, and Section 215(b)'s plain text dispels NexPoint's overbroad reading. *See supra* at 2.

## II. NEXPOINT'S REMAINING CLAIMS MUST BE DISMISSED AS DERIVATIVE

NexPoint does not dispute that its claims seek to recover for harm suffered by Acis CLO 6, rendering them derivative under Cayman Islands law. *See* Opp. at 22-23; *Zohar CDO 2003-1 Ltd. v. Patriarch Partners, LLC*, 2021 WL 4460547, at *11 (S.D.N.Y. Sept. 29, 2021) (claims are

---

[6] NexPoint also ignores district court cases interpreting the analogous Securities Exchange Act provision, Section 29(b), in the same manner. *See Omega*, 2014 WL 3907082, at *4 (collecting cases). The Court of Appeals for the Third and Fourth Circuits have reached the same conclusion. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 206 (3d Cir. 2006); *Occidental Life Ins. Co. of N.C. v. Pat Ryan & Assocs., Inc.*, 496 F.2d 1255, 1266 (4th Cir. 1974).

5

derivative where "loss is merely a reflection of the [company's] loss"). NexPoint's argument that Cayman Islands law does not apply, or that the *Foss* exceptions do apply, are unavailing.

*First*, NexPoint attempts (Opp. at 21-22) to evade the application of Cayman Islands law by invoking the Indenture's New York choice of law clause. But derivative standing is a "threshold issue" that "choice of law provisions can[not] govern." *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 812 F. App'x 36, 39 n.1 (2d Cir. 2020) (internal quotations omitted). Instead, "under New York choice of law rules, Cayman Islands law applies" to determine derivative standing since ACIS CLO 6 is incorporated there. *Winn v. Schafer*, 499 F. Supp. 2d 390, 393 (S.D.N.Y. 2007).[7]

Moreover, even if New York law applied, NexPoint's claims must be dismissed for noncompliance with Fed. R. Civ. P. 23.1's particularity rule, which applies because NexPoint admits New York law requires demand. *Halebian v. Berv*, 590 F.3d 195, 204 (2d Cir. 2009); Opp. at 22. NexPoint's demand futility claim is "conclusory" and devoid of "specific factual allegations." *Halpert Enters., Inc. v. Harrison*, 362 F. Supp. 2d 426, 429-30 (S.D.N.Y. 2005)

*Second*, NexPoint invokes (Opp. at 22-23) two exceptions to Cayman Islands law's prohibition of derivative actions: personal rights and fraud on the minority. Neither applies. NexPoint claims (Opp. at 22) that statutory rights afforded to it under Sections 206 and 215(b) of the IAA satisfy the personal rights exception. But the IAA affords NexPoint no personal right because NexPoint lacks a private right of action under the IAA. *See supra* at 1-5; Mot. at 15. NexPoint also purports (Opp. at 22-23) to assert the fraud on the minority exception, but it has not even attempted to satisfy one of its two required elements—that ACM "controlled a majority of the stock with voting rights." *Davis v. Scottish. Re Grp. Ltd.*, 160 A.D.3d 114, 116 (1st Dep't

---

[7] The same result follows even if the choice of law clause applied because it does not oust New York choice of law rules. *See* Indenture § 14.9 [Dkt. 85-1].

2018). NexPoint's SAC and opposition are devoid of any allegations that ACM "own[s] a majority of [ACIS CLO 6's] voting shares or ha[s] acquired de facto control of those voting shares." *Id*. NexPoint's own case holds that failure is dispositive. *Top Jet Enter. Ltd. v. Sino Jet Holding Ltd.*, 2018 (1) CILR 18, 43 [Dkt. 103-7] ("[i]t is also necessary for the shareholder to establish that the wrongdoers are in control of the company"); *Zohar*, 2021 WL 4460547, at *13 (exception not met because collateral manager did not control majority of CLO voting shares); *Davis*, 160 A.D.3d at 116-17.[8]

*Third*, NexPoint asserts (Opp. 19-21) that its breach of fiduciary duty claim is direct, not derivative, because regulations promulgated under Section 206 of the IAA prohibit deceptive business practices targeting investors in pooled investment vehicles. Those regulations, according to NexPoint, create actionable fiduciary duties running directly from ACM to Acis CLO 6's investors. This theory suffers from a number of fatal flaws—most notably that it is completely inconsistent with the definition of derivative claims under Cayman Islands law. Regardless of whether ACM owes direct duties to investors in Acis CLO 6, the misconduct alleged in the SAC—ACM's purported failure to comply with collateral tests and seek reimbursement of only qualifying expenses—involves duties running to Acis CLO 6. Any resulting harm suffered by NexPoint is thus derivative because it reflects Acis CLO 6's injury. *Zohar*, 2021 WL 4460547, at *11-12.

Furthermore, there is no basis to import any IAA protections available to investors in pooled investment vehicles into New York fiduciary duty law. *See Belmont v. MB Inv. Partners,*

---

[8] NexPoint's claim that Cayman Islands law recognizes an independent "demand-futility exception" is wrong. Opp. at 22-23. *Renren, Inc. v. XXX* confirms that the demand futility language from the case NexPoint cites restates the fraud on the minority exception's control requirement, which NexPoint has not met. 67 Misc. 3d 1219(A), at *24 (N.Y. Sup. Ct. 2020) ("control" shown when "'a shareholder is not able to … cause the normal organs of the company'" to sue (quoting *Top Jet Enter. Ltd.,* 2018 (1) CILR at 43)), *aff'd*, 192 A.D.3d 539 (1st Dep't 2021).

*Inc.*, 708 F.3d 470, 502 (3d Cir. 2013) (*TAMA* "call[s] into serious question whether a limitation in federal law can be circumvented by hanging the label 'state law' on an otherwise forbidden federal claim"). NexPoint admits that no New York court has done so.[9] *See* Opp. 20 n.26. And such an expansion of New York law fiduciary duties would radically depart from closely analogous past precedent. *See Oddo Asset Mgmt. v. Barclays*, 19 N.Y.3d 584, 593 (2012) (finding "no factual basis to create fiduciary duties running from the [collateral] managers [of two investment funds] to the mezzanine noteholders"); *In re Zohar III Corp.*, 2021 WL 3124298, at *15 (D. Del. July 23, 2021) (breach of fiduciary duty allegations brought by CLO investor against former collateral manager did not "support a conclusion that a higher trust arose between the sophisticated and commercial parties"); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 5518146, at *52 (S.D.N.Y. Sept. 14, 2020) (CDO collateral manager owed "fiduciary duty to [CDO issuer] Pyxis," but "did not owe fiduciary duties to the underlying investors").

### III. NEXPOINT'S REMAINING CLAIMS ARE BARRED FOR ADDITIONAL REASONS

#### A. The No-Action Clause Bars NexPoint's Claims

NexPoint admits its "noncompliance" with the no action clause. SAC ¶ 243. NexPoint's non-compliance is not excused (Opp. at 23-26) because it sued the Trustee. *Ellington Credit Fund, Ltd. v. Select Portf'o Servicing, Inc.*, 837 F. Supp. 2d 162, 186 (S.D.N.Y. 2011) (rejecting identical argument because "there is an important difference between asking the trustee to sue itself … and asking it to sue a third party, even when the investor alleges wrongdoing by the trustee" (quotations omitted)); *House of Eur. Funding I, Ltd. v. Wells Fargo Bank, N.A.*, 2014 WL 1383703, at *13-14, *17-18 (S.D.N.Y. Mar. 31, 2014) (no-action clause barred claims against collateral manager

---

[9] *Strougo ex rel. Brazil Fund v. Scudder, Stevens & Clark, Inc.* held that 15 U.S.C. § 80a-35(a) imposed "fiduciary duties … as stringent as … common law," 964 F. Supp. 783, 799 (S.D.N.Y. 1997), not that violations were "actionable under New York fiduciary-duty law," Opp. at 20.

but not against trustee); *Cruden v. Bank of N.Y.*, 957 F.2d 961, 968 (2d Cir. 1992) (no-action clause barred claims against issuer in action also suing trustee).[10]  And NexPoint's claim (Opp. at 24) that resolving the no-action clause defense is premature is incorrect.  No-action clauses impose a "condition[] precedent" required "before initiating suit," and are routinely enforced at the motion to dismiss phase.  *Penades v. Republic of Ecuador*, 2016 WL 5793412, at *3 (S.D.N.Y. Sept. 30, 2016), *aff'd* 690 F. App'x 733 (2d Cir. 2017); *Ellington*, 837 F. Supp. 2d at 186-7.

NexPoint's argument (Opp. at 24) that its claims fall outside the scope of the no-action clause fare no better.  ACM's claims are all rooted in either alleged breaches of Indenture-based investment criteria or the alleged charging of contractually-forbidden expenses.  *See* SAC ¶¶ 184-88, 221, 229, 231.  Such claims must be characterized as claims "with respect to th[e] Indenture" that fall within the no-action clause's plain text.  Indenture § 5.8 [Dkt. 85-1].  None of those claims relate to "independent common-law … rights" under the securities like those found outside the no-action clause's scope in *Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 559 (2014).

**B.    NexPoint's Remaining Tort Claims Must Be Dismissed As Duplicative**

NexPoint's assertion (Opp. at 26) that its breach of fiduciary duty, negligence, and conversion claims are not duplicative of its breach of contract claims under the independent duty rule is unavailing.  Assuming *arguendo* that an independent duty exists, the tort claims are still duplicative because they are based "on allegations of fiduciary wrongdoing … expressly raised in plaintiff's breach of contract claim." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (quotations omitted); *see Zohar*, 2021 WL 4460547, at *15

---

[10] *Blackrock Core Bond Portfolio v. U.S. Bank Nat'l Ass'n* does not assist NexPoint.  Opp. at 33. *Blackrock* held that a no-action clause's other conditions were unenforceable as to claims against the trustee because the "demand requirement did not apply" to them, 165 F. Supp. 3d 80, 98 (S.D.N.Y. 2016), but here demand is required for claims against ACM, so the clause stands.

9

("conversion cannot be predicated on a mere breach of contract" (quotation omitted)), and each tort claim is based on ACM's alleged contract breaches.[11]  *See* SAC ¶¶ 165, 171-74, 221, 229-31.

### C. The Economic Loss Rule Bars The Negligence And Conversion Claims

NexPoint argues (Opp. at 28) that the economic loss rule is inapplicable because it is limited to products liability and does not cover an advisor's professional duties.  But NexPoint's own case finds the opposite—that the rule "applie[s] broadly" outside of products liability and bars structured product noteholders from recovering economic losses against fund managers.  *King Cty., Wash. v. IKB Deutsche Industriebank AG*, 863 F. Supp. 2d 288, 302-3 (S.D.N.Y. 2012); *see Nat'l Credit Union Admin Bd. v. U.S. Bank Nat'l Ass'n*, 439 F. Supp. 3d 275, 283 (S.D.N.Y. 2020) (rule barred investment losses claim).  Those are the exact circumstances here, so the rule applies.

### IV. LEAVE TO AMEND SHOULD BE DENIED

Leave to amend should be denied because NexPoint knows the "legal obstructions," Opp. at 29, to its claims but "fail[ed] to specify" any "facts that would cure" them.  *Off Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 419 (S.D.N.Y. 2021) (quotation omitted).

### V. THE DEFENDANTS ARE ENTITLED TO FEE SHIFTING

Fee-shifting under Section 5.15 of the Indenture is available because NexPoint "instituted" the suit when it did not hold any Notes in the Controlling Class.  Indenture § 5.15 [Dkt. 85-1].  It is irrelevant that NexPoint's Notes later became the Controlling Class because Section 5.15 is triggered by NexPoint's holdings when the action was "instituted."  *Id*.  Fee-shifting is warranted because NexPoint brought meritless claims to oppress Mr. Dondero's perceived enemies.

### CONCLUSION

For the reasons stated above, NexPoint's Complaint should be dismissed with prejudice.

---

[11]  "Specific property" is a conversion element, not a duplicativeness defense.  *Contra* Opp. at 26; *Nantong Sanhai Garment Co. v. Fab Mill Inc.*, 2022 WL 540756, at *4 (S.D.N.Y. Feb. 23, 2022).

Dated: March 10, 2022          **QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By:    */s/ Jonathan E. Pickhardt*
Jonathan E. Pickhardt
Blair A. Adams
Misha Boutilier
51 Madison Ave., 22nd Floor
New York, New York 10010
Tel: 212-849-7000
Fax: 212-849-7100
jonathanpickhardt@quinnemanuel.com
blairadams@quinnemanuel.com
mishaboutilier@quinnemanuel.com

*Attorneys for Defendant Acis Capital Management, L.P.*