**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NEXPOINT DIVERSIFIED REAL ESTATE TRUST, <br><br>  Plaintiff, <br><br> -against- <br><br> ACIS CAPITAL MANAGEMENT, L.P., U.S. BANK, N.A., JOSHUA N. TERRY, BRIGADE CAPITAL MANAGEMENT, LP <br><br>  Defendants. | 1:21-cv-04384-GHW (JLC) |

**JOINDER AND REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**BRIGADE CAPITAL MANAGEMENT, LP'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

LATHAM & WATKINS LLP
Jason C. Hegt
Alexis Kellert Godfrey
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1200

*Attorneys for Defendant Brigade Capital*
*Management LP*

March 10, 2022

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ................................................................................................................1

I.     NEXPOINT FAILS TO STATE A CLAIM AGAINST BRIGADE...................................1

      A.     NexPoint Cannot State A Claim Under The Investment Advisers Act
           Against Brigade ...........................................................................................1

      B.     NexPoint's Claim For Breach Of Fiduciary Duty Against Brigade Fails ..............5

      C.     NexPoint Fails To State A Claim For Negligence Against Brigade.......................8

II.    NEXPOINT SHOULD NOT BE GRANTED LEAVE TO AMEND...............................9

CONCLUSION................................................................................................................9

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Brass v. Am. Film Tech., Inc.*,
   987 F.2d 142 (2d Cir. 1993).....................................................................................5

*Bullmore v. Ernst & Young Cayman Islands*,
   45 A.D.3d 461 (App. Div. 1st Dept. 2007)...........................................................7, 9

*Clark v. Nevis Capital Mgmt, LLC*,
   2005 WL 488641 (S.D.N.Y. Mar. 2, 2005) .........................................................1, 2

*Cobalt Partners, L.P. v. GSC Capital Corp.*,
   97 A.D. 3d 35 (App. Div. 1st Dept. 2012)................................................................7

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
   2020 WL 5518146 (S.D.N.Y. Sept. 14, 2020)..........................................................6

*In re Fyre Festival Litig.*,
   399 F. Supp. 3d 203 (S.D.N.Y. 2019)......................................................................8

*Kassover v. UBS AG*,
   619 F. Supp. 2d 28 (S.D.N.Y. 2008)........................................................................4

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
   19 N.Y.3d 584 (2012) ...............................................................................................6

*Omega Overseas Partners Ltd. v. Griffith*,
   2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014).............................................................4

*PetEdge, Inc. v. Garg*,
   234 F. Supp. 3d 477 (S.D.N.Y. 2017).......................................................................5

*Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*,
   444 U.S. 11 (1979)....................................................................................................4

*U.S. SEC v. Ahmed*,
   308 F. Supp. 3d 628 (D. Conn. 2018)........................................................................3

*Zhang v. Han*,
   2022 WL 62154 (S.D.N.Y. Jan. 5, 2022) .................................................................9

*Zohar CDO 2003-1, Ltd. v. Patriarch Patrners, LLC*,
   2021 WL 4460547 (S.D.N.Y. Sep. 29, 2021)...........................................................8

*In re Zohar III Corp.*,
  2021 WL 3124298 (D. Del. July 23, 2021) .................................................................6

## STATUTES

15 U.S.C.
  § 80b-1 *et seq.*...............................................................................................................1
  § 80b-8(d)........................................................................................................................2

## PRELIMINARY STATEMENT

With briefing now closed, there is no dispute that (i) Brigade was not a party to the Portfolio Management Agreement or the Indenture on which NexPoint bases its claims, (ii) Brigade never served as NexPoint's investment adviser and (iii) Brigade's only role was that it was retained by Acis Capital Management, L.P. to provide "back- and middle-office functions" to Acis, who acted as portfolio manager to ACIS CLO 2014-6, Ltd.  SAC ¶¶ 37-39, 47-48.  Rather than address these points that are dispositive of its claims against Brigade as a matter of law, NexPoint instead offers a tangled web of circular arguments across multiple briefs, premised mostly on either out-of-date or out-of-circuit authority and (in many instances) on absolutely nothing at all.  The claims against Brigade lack any legal basis and should be dismissed with prejudice.

## ARGUMENT[1]

### I.   NEXPOINT FAILS TO STATE A CLAIM AGAINST BRIGADE[2]

#### A.   NexPoint Cannot State A Claim Under The Investment Advisers Act Against Brigade

NexPoint cannot bring a private right of action against Brigade for violations of the IAA, 15 U.S.C. § 80b-1 *et seq.*

*First*, Brigade is not even a party to the Portfolio Management Agreement ("PMA") that NexPoint makes the subject of this claim.  That should be the end of the inquiry.  *See Clark v.*

---

[1] NexPoint purports to incorporate various sub-sections of the Factual Background (Section III) of its Response to Acis's Motion to Dismiss ("Acis Opp."), ECF No. 103, into its Response to Brigade's Motion to Dismiss ("Opp."), ECF No. 93.  *See, e.g.*, Opp. at n. 35, 37, 45, 47, 50. Brigade assumes for purposes of this Reply that these cross-references were in error and that NexPoint intended to incorporate the Argument and Authorities (Section IV) sub-sections instead.

[2] Brigade again joins the threshold arguments that: (1) NexPoint's claims are derivative, and dismissal is warranted because NexPoint has not (and cannot) plead compliance with any of the procedural requirements to assert derivative standing, and (2) NexPoint's claims against Brigade are barred by the "no action" clause in the Indenture.  *See* Acis Reply, ECF No. 109, at 5-8 (regarding derivative standing), 8-9 (regarding "no action" clause); HCLOF Reply, ECF No. 108, at 2-4 (regarding "no action" clause).

*Nevis Capital Mgmt, LLC*, 2005 WL 488641, at *13 (S.D.N.Y. Mar. 2, 2005); *see also* Brigade's Opening Brief ("Op. Br.") at 4-5, ECF No. 89.   NexPoint actually concedes that Brigade is not a party to the PMA, but then argues—*citing to nothing*—that NexPoint nevertheless can sue Brigade because Brigade "is certainly a third party who acquired rights [under the PMA]—specifically, to the compensation it charged."   Opp. at 12-13.   That is wrong on the facts and the law.   The SAC does not (and cannot) allege that the PMA governed Brigade's compensation.   In fact, it admits the opposite: Brigade was retained and paid *by Acis*.   *See* SAC ¶ 52.   And as a matter of law, NexPoint has not pointed to a single case in which a court permitted one non-party to an agreement (like NexPoint) to sue another non-party to that agreement (like Brigade) under the IAA based on a contract to which neither of them are parties.

   *Second*, NexPoint argues that in the absence of any discernable direct relationship between Brigade and NexPoint, one can be invented from thin air.   Citing to nothing (again), NexPoint argues that "the same duties that apply to Acis as an investment adviser to Acis CLO-6—which are owed directly to the Plaintiff as an investor—apply just as much to Brigade."   Opp. at 9.   Even if Acis could somehow be considered to have fiduciary duties to NexPoint despite only serving as the adviser to the Acis CLOs, NexPoint cites not a single case explaining how this transitive theory of fiduciary duties creates fiduciary duties that Acis's third-party professionals (like Brigade) owe not only to Acis, but then also to the Acis CLOs and all the way to the CLOs' investors like NexPoint.[3]   This is a bridge too far, and the absence of legal authority confirms that NexPoint comes nowhere close to pleading an IAA claim against Brigade.

---

[3] NexPoint's citation to 15 U.S.C. § 80b-8(d) misses the point.   Although this provision makes it unlawful for an investment adviser to undertake actions through a third-party that the adviser could not undertake himself (*i.e.*, acting as an adviser but through an alter ego that is beyond the reach of the IAA), this provision has never been interpreted to mean that every person who performs

*Third*, NexPoint attempts to sidestep this issue with the hope that the Court will permit it to pursue these novel claims against Brigade if NexPoint simply declares enough times that Brigade was an "investment adviser" under the IAA, *see* Opp. at 1, 6, 9, 11, 13-15.  The problem with this approach is that the SAC does not plead that Brigade served as an investment adviser *at all*, much less that Brigade served as *NexPoint's investment adviser*.  NexPoint's citation to *U.S. SEC v. Ahmed*, Opp. at 9, is unavailing because there the court explained that the definition of "investment adviser" only reaches persons who (i) receive compensation for investing funds of *their clients*; or (ii) who advise their customers by *exercising control over* what purchases and sales are made with their clients' funds.  308 F. Supp. 3d 628, 653 (D. Conn. 2018).  The SAC alleges that Brigade's role as sub-adviser to Acis was to provide assistance with specific tasks and makes clear Acis would retain control and direction over the overall investment approach.  *See* SAC ¶¶ 48-50 (alleging "Terry effectively approves all trading activity for the Acis CLOs"; Mr. Terry "exercises complete dominion over [Acis] and its activities" with respect to managing the CLOs); *see also* Op. Br. at 3.  Moreover, NexPoint concedes that Brigade was paid by Acis.[4] SAC ¶ 52.  In other words, if Brigade had any "client" it was Acis, not the Acis CLOs—and certainly not NexPoint.  This is yet another independent reason to dismiss Count 1 against Brigade.

_____

services for an investment adviser assumes the same obligations and responsibilities as the financial advisers themselves.  Tellingly, NexPoint again cites no case adopting its novel reading of this provision.

[4] NexPoint's argument that "Brigade was compensated for its role as an investment advisor to the Acis CLOs and as such was an 'investment advisor' under the Advisers Act" is circular.  Opp. at 9.  It merely alleges what it sets out to prove and ignores that the SAC fails to plead any facts establishing either that Brigade was compensated "as an investment advisor to the Acis CLOs" (rather than Acis) or that it acted an investment adviser—much less that it advised anyone other than Acis.  And, again, even if Brigade served as the investment adviser to Acis, the relevant question here is whether Brigade served as an investment adviser to NexPoint.  As these legal gymnastics make clear, the answer to that question is clearly "no."

*See Kassover v. UBS AG*, 619 F. Supp. 2d 28, 32 (S.D.N.Y. 2008) (dismissing IAA claim for plaintiff's failure to establish that an investment adviser relationship existed).

*Fourth*, even if the Court were inclined to accept NexPoint's invitation to fashion a novel claim where Brigade could be sued under the IAA based on an agreement to which it is not a party, NexPoint's IAA claims fail for the independent reason that the IAA does not create the claim NexPoint contends.  In its Second Amended Complaint, NexPoint claimed that Acis, its owner and President (Mr. Joshua Terry) and Brigade violated Section 206 of the IAA, which regulates certain conduct by financial advisers.  *See* SAC ¶¶ 133, 134 n.12, 135, 137, 141, 142.  Implicitly acknowledging that there is no private right of action under Section 206, NexPoint switches to Section 215(b) of the IAA even though this provision is mentioned nowhere in the SAC.  But the law in this Circuit is clear:  to state a claim under Section 215(b)'s narrow private right of action, NexPoint must allege that the PMA was made illegally or requires illegal performance.  *Omega Overseas Partners Ltd. v. Griffith*, 2014 WL 3907082, at *3 (S.D.N.Y. Aug. 7, 2014).  NexPoint calls this reading "too myopic," (Opp. at 12), and characterizes *Omega* as an "outlier," (Acis Opp. at 17), yet NexPoint cannot point to any more recent case law that disturbs its holding.  To the contrary, *Omega* distinguishes much of the case law on which NexPoint relies,  *see Omega Overseas*, 2014 WL 3907082, at *7-9, and even NexPoint admits that other courts in this district have since followed the *Omega* decision, Acis Opp. at 18.  Simply put, there is no support in this Circuit for the notion that Section 215(b) creates a roving private right of action for purported violations of the IAA (whether under Section 206 or otherwise) because to do so would stand in direct contradiction of the Supreme Court's ruling in *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979), which held that Section 215(b) creates a limited private remedy to void an investment advisers contract.  *See* Acis Reply at 1-5.

**B.      NexPoint's Claim For Breach Of Fiduciary Duty Against Brigade Fails**

The parties generally agree on the basic principle that to survive dismissal NexPoint must plead the existence of a fiduciary duty and a breach of that duty.  *See* Opp. at 10.  NexPoint largely skips the first question and argues that it "ha[d] pleaded the facts necessary to enforce its rights for Brigade's breaches of its fiduciary obligations that arise under the [IAA], which are sufficient to state a claim for breach of fiduciary duty under New York law."  Opp. at 10-11.  In other words, NexPoint appears to be arguing that in the context of a claim for a breach of fiduciary duty under New York law, the IAA can supplant New York law on the question of whether a fiduciary relationship exists at all and, if so, to whom the duties are owed.  This argument is flawed on several levels.

*First,* although NexPoint alleges that courts in Texas, New Mexico and Pennsylvania have decided to adopt the standard set forth in the IAA when determining whether conduct constitutes a breach of fiduciary duties in those states, Acis Opp. at 19-20, none of those courts has said that the IAA operates to create a fiduciary relationship between two parties where one does not otherwise exist under state law.  In making this argument, NexPoint appears to ignore the fact that New York courts have articulated clear principles for when a fiduciary relationship exists and to whom fiduciary duties are owed.  Under New York law, a fiduciary relationship "arises when one has reposed trust or confidence in the integrity or fidelity of another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another."  *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 497-98 (S.D.N.Y. 2017) (Woods, J.).  This standard appears throughout the cases NexPoint cites, *see* Acis Opp. at 20, n. 26 (citing *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 151 (2d Cir. 1993) (declining to find fiduciary relationship where sophisticated parties engaged in an arms-length transaction)), but NexPoint does not—

because it cannot—plead any factual allegations about its non-existent relationship with Brigade that would satisfy this standard.  NexPoint's fiduciary duty claims fail for this reason alone.

*Second*, NexPoint attempts to sidestep the applicable legal standard and argues that the "[a]dvisors of pooled investment vehicles owe their fiduciary duties *directly* to investors," Opp. at 1 (emphasis in original).  NexPoint cites nothing for this proposition other than referring to its argument that "Acis owes statutory duties under the IAA to NexPoint as an investor in the CLO," *id*. at 11 (citing Acis Opp. at 9), and then asserting without citation to case law that this must also extend to Acis's outside professional service providers like Brigade.  As an initial matter, NexPoint's citation to the standards that apply when the Securities and Exchange Commission pursues enforcement actions under the IAA is not relevant.  The law in New York is to the contrary.[5]  Moreover, NexPoint's claim about whether advisers to pooled vehicles owe duties to the investors in those vehicles is irrelevant to Brigade because NexPoint has not pled that Brigade was an adviser to the Acis CLO.  *See supra* Section I.A.; Op. Br. at 4-5.

*Third,* NexPoint's argument that investment advisers with discretionary trading authority owe fiduciary duties to investors, *see* Opp. at 11, is likewise a non-sequitur.  Again, NexPoint has not pled that Brigade had "discretionary trading authority."  To the contrary, it alleged that Mr. Terry "approves all trading activity for the Acis CLOs."  SAC ¶ 50.  And even where a financial professional does have discretionary trading authority, this only creates a fiduciary

---

[5] *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012) (finding "no factual basis to create fiduciary duties running from the [collateral] managers [of two investment funds] to the mezzanine noteholders"); *In re Zohar III Corp.*, 2021 WL 3124298, at *15 (D. Del. July 23, 2021) (breach of fiduciary duty allegations brought by CLO investor against former collateral manager did not "support a conclusion that a higher trust arose between the sophisticated and commercial parties"); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 2020 WL 5518146, at *52 (S.D.N.Y. Sept. 14, 2020) (CDO collateral manager owed "fiduciary duty to [CDO issuer] Pyxis," but "did not owe fiduciary duties to the underlying investors").

relationship between the financial adviser and his client—not an attenuated sub-adviser like Brigade. *See Cobalt Partners, L.P. v. GSC Capital Corp.*, 97 A.D. 3d 35, 36, 43 (App. Div. 1st Dept. 2012) ("[*Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463 (App. Div. 1st Dept. 2007), cited in Opp. at 15] does not stand for the proposition that a manager for an entity like a hedge fund or, as here, a REIT, has any duties to the individual investors in the funds it manages. Moreover, even if an investment advisor to an entity like the Fund could ever be held liable for breach of fiduciary duty or fraud to the *investors* of that entity, Group was *not* the Fund's investment advisor; GSCP was.") (emphasis in original).

*Fourth*, NexPoint is incorrect when it states that Brigade does not "contest that the acts NexPoint complains of amount to violations of the Advisers Act, or constitute a breach of fiduciary duty." Opp. at 10. As Brigade made clear in its opening brief, NexPoint does not (and cannot) plead any conduct suggesting that Brigade breached any fiduciary duties. Op. Br. at 7-8. The litany of alleged "breaches" in the SAC were not even specific to Brigade. *See* Opp. at 10, n. 38-42 (reciting allegations purportedly perpetrated by the "RIA Defendants"). And the SAC itself describes Brigade's role as mostly ministerial. SAC ¶ 48 (Brigade was retained to provide "back- and middle-office functions, including, but not limited to accounting, payments, operations, technology, and finance"). Brigade did precisely what it was retained to do. Even if the Court were able to discern the existence of a fiduciary duty between Brigade and NexPoint, the handful of allegations about Brigade in the SAC are an afterthought that come nowhere close to pleading a breach of fiduciary duty.

*Fifth*, to the extent the Court entertains NexPoint's arguments regarding an unpled cause of action for aiding and abetting breach of fiduciary duty by Acis, this claim should be dismissed for the reasons stated in Brigade's moving papers. *See* Op. Br. at 7, n.9. To prevail on this claim,

NexPoint would need to allege that Brigade "knowingly induced or participated" in Acis's breach of fiduciary duties, but the SAC barely describes Brigade's work, much less what Brigade supposedly knew about how Acis performed its functions as portfolio manager and how it allegedly breached certain fiduciary duties. *See Zohar CDO 2003-1, Ltd. v. Patriarch Patrners, LLC*, 2021 WL 4460547, at *20 (S.D.N.Y. Sep. 29, 2021).

      **C.**    **NexPoint Fails To State A Claim For Negligence Against Brigade**

To state a claim for negligence under New York law, NexPoint must allege that the defendant owed the plaintiff a cognizable duty of care, the defendant breached that duty, and plaintiff suffered damages as a proximate result of that breach. *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 220 (S.D.N.Y. 2019). NexPoint misapprehends Brigade's argument as to why the SAC fails to plead a claim for negligence. Opp. at 14. Brigade did not argue that the claim fails "because Brigade doesn't have a contractual relationship with NexPoint." *Id.* The parties agree that Brigade and NexPoint had no contractual relationship. Accordingly, under New York law, NexPoint must plead the existence of *some other extra-contractual relationship* with Brigade that would impose a duty of care. Op. Br. at 8. NexPoint pleads no such relationship.

*First*, because NexPoint has not pled facts to support that Brigade owed it any duty of care, it again falls back on the argument that the IAA simply imposes one, *see* Opp. at 15. Again, NexPoint identifies no case in which a New York court jettisoned the traditional New York law analysis for when a duty of care is owed and concluded that one was imposed into a commercial relationship by the IAA. *Second*, NexPoint argues that because an investment adviser qualifies as a professional, and professionals owe duties of care under New York law, "an investment advisor *may be* subject to tort liability under a theory of negligence for failing to act with 'due care' in discharging its advisory functions," Opp. at *Id.* (emphasis added). Again, this misses the point. In certain instances, professionals are subject to a duty of care, but that duty extends only to persons

who have some kind of relationship with the professional—and NexPoint alleges nothing of the sort here. *See Bullmore v. Ernst & Young Cayman Islands*, 45 A.D.3d 461, 463-64 (App. Div. 1st Dept. 2007) (declining to extend liability to the investment adviser's accountants).[6]

## II.     NEXPOINT SHOULD NOT BE GRANTED LEAVE TO AMEND

NexPoint seeks yet another bite at the apple "to the extent that the Court identifies pleading deficiencies." Opp. at 15. But the law is clear that "[a] plaintiff need not be given leave to amend if it fails to specify . . . how amendment would cure the pleading deficiencies in its complaint." *Zhang v. Han*, 2022 WL 62154, at *4 (S.D.N.Y. Jan. 5, 2022) (Woods, J.). NexPoint does not do so here: it neither identifies the substance of its contemplated amendment as to Brigade nor presents any argument for why further amendment would not be futile. Instead, NexPoint argues that it should be allowed to amend because its prior amendments were limited to "remov[ing] pleadings." *Id.* The fact that NexPoint elected only to remove allegations (rather than add allegations) even though it amended its complaint twice *after* receiving Defendants' pre-motion letters outlining the flaws in its claims is irrelevant. The Court is not obligated to offer limitless attempts to cure pleading deficiencies, particularly when NexPoint has offered no indication that it is able to do so.

## <u>CONCLUSION</u>

The SAC fails to state any claim against Brigade as a matter of law. It should be dismissed with prejudice.

---

[6] Since NexPoint does not claim anywhere in its Opposition that it has pled a claim for gross negligence, Brigade accepts that omission as a waiver of its ability to do so. *See* Op. Br. at 9, n. 11.

Dated:  March 10, 2022                   Respectfully submitted,
        New York, New York

                                         /s/ Jason C. Hegt
                                         LATHAM & WATKINS LLP
                                         Jason C. Hegt
                                         Alexis Kellert Godfrey
                                         1271 Avenue of the Americas
                                         New York, NY 10020
                                         (212) 906-1200
                                         Jason.Hegt@lw.com
                                         Alexis.Godfrey@lw.com

                                         *Attorneys for Defendant Brigade Capital
                                         Management, LP*