**MANDATE**

# UNITED STATES COURT OF APPEALS
## FOR THE
## SECOND CIRCUIT

1:21-cv-04384-GHW

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of September, two thousand twenty-three.

Before:   José A. Cabranes,
          Joseph F. Bianco,
          Sarah A. L. Merriam,
              *Circuit Judges.*

_____

NexPoint Diversified Real Estate Trust,

    Plaintiff - Appellant,

v.

Acis Capital Management, L.P., Joshua N. Terry, Brigade Capital Management, LP,

    Defendants - Appellees,

Highland CLO Funding, Ltd.,

    Intervenor-Defendant-Appellee,

and

U.S. Bank, N.A.,

    Defendant.

_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/28/2023__

**JUDGMENT**

Docket No. 22-1912

The appeal in the above captioned case from a judgment of the United States District Court for the Southern District of New York was argued on the district court's record and the parties' briefs.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the judgment of the district court is AFFIRMED.

For the Court:
Catherine O'Hagan Wolfe,
Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

MANDATE ISSUED ON 09/28/2023

Case 1:21-cv-04384-GHW   Document 125-20   Filed 09/28/23   Page 2 of 17
Case 22-1912, Document 119-6, 09/12/2023, 3579428, Page2 of 17

22-1912
*NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P.*

# United States Court of Appeals
# For the Second Circuit

August Term 2022

Argued: April 25, 2023

Decided: September 7, 2023

No. 22-1912

---

NEXPOINT DIVERSIFIED REAL ESTATE TRUST,

*Plaintiff-Appellant*,[*]

v.

ACIS CAPITAL MANAGEMENT, L.P., JOSHUA N. TERRY,
BRIGADE CAPITAL MANAGEMENT, LP,

*Defendants-Appellees*,

HIGHLAND CLO FUNDING, LTD.,

*Intervenor-Defendant-Appellee*,

and

U.S. BANK, N.A.,

*Defendant*.

---

Appeal from the United States District Court
for the Southern District of New York
No. 21CV04384, Gregory H. Woods, *Judge*.

---

Before:    CABRANES, BIANCO, and MERRIAM, *Circuit Judges*.

Plaintiff-appellant NexPoint Diversified Real Estate Trust ("NexPoint"), a noteholder in a collateralized loan obligation, appeals from the dismissal by the District Court (Gregory H. Woods, J.) of its claim under §215(b) of the Investment Advisers Act of 1940 ("IAA"), 15 U.S.C. §80b-15(b). Section 215(b) provides a cause of action for

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

rescission of contracts (1) that were made in violation of the IAA or (2) the performance of which involves the violation of the IAA. We hold that, under §215(b), a contract's performance involves the violation of the IAA only if performing a contractual duty requires conduct prohibited by the IAA. No such unlawful conduct is required by the contracts NexPoint seeks to rescind, and therefore we **AFFIRM** the judgment of the District Court.

      AFFIRMED.

> MAZIN A. SBAITI (Griffin S. Rubin, *on the brief*), Sbaiti & Company PLLC, Dallas, TX, *for Plaintiff-Appellant NexPoint Diversified Real Estate Trust*.
>
> BLAIR A. ADAMS (Jonathan E. Pickhardt, William B. Adams, *on the brief*), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, *for Defendants-Appellees Acis Capital Management, L.P. and Joshua N. Terry*.
>
> SAMIR DEGER-SEN (Jason C. Hegt, Alexis K. Godfrey, *on the brief*), Latham & Watkins LLP, New York, NY, *for Defendant-Appellee Brigade Capital Management, LP*.
>
> Uri A. Itkin (Jennifer E. Poon, *on the brief*), Akin Gump Strauss Hauer & Feld LLP, New York, NY, *for Intervenor-Defendant-Appellee Highland CLO Funding, Ltd*.

SARAH A. L. MERRIAM, *Circuit Judge*:

      Plaintiff-appellant NexPoint Diversified Real Estate Trust ("NexPoint"), a noteholder in a collateralized loan obligation ("CLO"), appeals from the dismissal by the District Court (Gregory H. Woods, J.) of its claim under §215(b) of the Investment Advisers Act of 1940 ("IAA"), 15 U.S.C. §80b-15(b). Section 215(b) provides a cause of action for rescission of contracts (1) that were made in violation of the IAA or (2) the performance of which involves the violation of the IAA. We hold that, under §215(b), a contract's performance involves the violation of the IAA only if performing a contractual

2

duty requires conduct prohibited by the IAA. No such unlawful conduct is required by the contracts NexPoint seeks to rescind, and therefore we **AFFIRM** the judgment of the District Court.

## I. BACKGROUND[1]

NexPoint holds $7.5 million in subordinated notes issued by Acis CLO-2015-6 Ltd. (the "Issuer"), as part of a CLO. A CLO is a structured financial transaction in which a special purpose vehicle issues notes to fund the purchase of debt instruments, which are then pooled and conveyed to a trust to serve as collateral and to generate cash flows for the notes. The Issuer acquired the CLO collateral and conveyed it to a trust under an indenture between the Issuer and U.S. Bank National Association, as Trustee (the "Indenture"). Defendant-appellee Acis Capital Management, L.P. ("Acis") was engaged as the CLO's portfolio manager pursuant to a Portfolio Management Agreement between the Issuer and Acis (the "PMA").[2] Under the PMA, Acis agreed "to supervise and direct the investment and reinvestment" of the collateral and to "comply with all the terms and conditions of the Indenture." App'x at 750. Defendant-appellee Joshua N. Terry is the

---

[1] These facts are drawn from the allegations of the Second Amended Complaint and from the PMA and the Indenture (defined infra). We conclude that these documents are incorporated by reference into the Second Amended Complaint, which cites them extensively by page number and section, and all parties on appeal appear to have proceeded under that assumption. See Trump v. Vance, 977 F.3d 198, 210 n.8 (2d Cir. 2020). Accordingly, we may properly consider them on appeal from a Rule 12(b)(6) dismissal. See Vengalattore v. Cornell Univ., 36 F.4th 87, 102 (2d Cir. 2022).

[2] The Issuer then conveyed its rights under the PMA, along with the collateral, to the Trustee. See App'x at 423. The Issuer thereafter had no further involvement relevant to this claim in the CLO. Additionally, although the Issuer's name contains the word "Acis," all references to "Acis" herein refer to Acis Capital Management, L.P.

3

sole member of Acis, and defendant-appellee Brigade Capital Management, LP ("Brigade") was engaged as a subadvisor to assist Acis with its asset management duties and to provide back- and middle-office functions.

NexPoint claims that Acis, Terry, and Brigade (together, the "Advisers") maximized their own profits at the expense of the CLO, in violation of fiduciary duties imposed by §206 of the IAA. The Advisers allegedly: (1) selected collateral with distant maturity dates in order to generate fees over a longer period of time, see App'x at 123–25, 134; (2) selected overly risky collateral, see App'x at 125–26; (3) engaged in trades that were poorly timed in light of market conditions, see App'x at 126; and (4) otherwise caused the CLO to incur unexplained and exorbitant expenses, see App'x at 108.

NexPoint alleges that, in addition to breaching fiduciary duties, this conduct also breached the PMA and the Indenture. Most pertinent here, the Indenture requires that any purchases of additional collateral satisfy certain "collateral quality tests" intended to ensure the creditworthiness of the CLO's assets. App'x at 119, ¶54; see also App'x at 613–15. One such test -- weighted average life ("WAL") -- measures the "average maturity of debt instruments in the CLO." App'x at 115, ¶35. NexPoint claims that after the CLO registered a failing WAL score, the Advisers bought collateral "that did not improve the WAL, thereby violating the terms of the relevant indenture." App'x at 124, ¶88. The Advisers also allegedly bought nineteen loans with low credit ratings in a single day, "likely in a scheme to circumvent the requisite WAL thresholds." App'x at 125, ¶96.

Another such test -- weighted average rating factor ("WARF") -- "demonstrates the credit quality of a CLO's entire portfolio." App'x at 115, ¶34. NexPoint alleges that

4

the Advisers bought overpriced, low-quality assets, causing the CLO's assets to be "well short of the required WARF," and violating the Advisers' duties to "seek best execution" under the PMA and the Indenture. App'x at 126, ¶¶102, 107–08.

NexPoint further alleges that the Advisers caused the CLO to "incur astronomic, unprecedented expenses," including by classifying their own expenses as expenses of the CLO, in violation of the PMA. App'x at 120, ¶61; see also App'x at 134, ¶147; App'x at 762 (PMA providing for reimbursement only of certain "reasonable costs and expenses" incurred by Acis on behalf of the Issuer).

NexPoint brought suit against Acis, Terry, Brigade, and U.S. Bank asserting various state-law causes of action and a claim under §215(b) of the IAA seeking rescission of (i) "agreements between Acis and any third party in any transaction in violation of" the IAA, and (ii) the Advisers' rights under the PMA and the Indenture. App'x at 135, ¶157. Highland CLO Funding, Ltd. ("Highland"), the "supermajority holder" of the outstanding CLO notes, intervened as a defendant. Highland Br. at 5. Defendants then filed jointly a motion to dismiss, which the District Court granted. The District Court concluded that NexPoint failed to state a claim under §215(b) because it did not allege that any contract "was illegally made or requires illegal performance." NexPoint Diversified Real Est. Tr. v. Acis Cap. Mgmt., L.P., 620 F. Supp. 3d 36, 46 (S.D.N.Y. 2022). Having dismissed the IAA claim, the District Court declined to exercise supplemental jurisdiction over the state-law claims. NexPoint appeals, arguing that the District Court erred in limiting §215(b)'s application to contracts that require illegal performance, as opposed to lawful contracts performed in an unlawful manner.

5

## II. DISCUSSION

We review a district court's dismissal pursuant to Rule 12(b)(6) de novo, assessing "the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in [plaintiff's] favor." Syeed v. Bloomberg L.P., 58 F.4th 64, 67 (2d Cir. 2023).

The IAA is "the last in a series of Acts designed to eliminate certain abuses in the securities industry . . . which were found to have contributed to the stock market crash of 1929 and the depression of the 1930's." Sec. & Exch. Comm'n v. Cap. Gains Rsch. Bureau, Inc., 375 U.S. 180, 186 (1963). It generally governs the conduct of investment advisers and vests regulatory and enforcement authority in the Securities and Exchange Commission ("SEC"). Two sections of the IAA are relevant here. The first, §206,[3] is a broad antifraud provision which makes it unlawful for any investment adviser to, inter alia, "employ any device, scheme, or artifice to defraud any client or prospective client;" or "engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client." 15 U.S.C. §§80b-6(1), (2). The second, §215(b), provides:

> Every contract made in violation of any provision of this subchapter and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of [the IAA], or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person

---

[3] References to Sections 206 and 215 reflect the numbering used in the IAA rather than in the U.S. Code. See Investment Advisers Act of 1940, Pub. L. No. 76-768, tit. II, 54 Stat. 847, codified at 15 U.S.C. §80b-6 (IAA §206) and 15 U.S.C. §80b-15 (IAA §215).

6

> who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

15 U.S.C. §80b-15(b).

The IAA "nowhere expressly provides for a private cause of action." Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 14 (1979) ("TAMA"). In TAMA, the Supreme Court considered whether either §206 or §215(b) provides an implied private right of action. See id. at 16–17. The Court concluded that §215(b) does imply a private right of action. Specifically, the Court observed that the use of the term "void" indicates that Congress "intended that the customary legal incidents of voidness would follow, including the availability of a suit for rescission . . . and for restitution." Id. at 19.

The Court viewed §206 "quite differently," finding: "Congress expressly provided both judicial and administrative means for enforcing compliance with §206," including criminal liability and both civil and administrative enforcement by the SEC. Id. at 19–20. This made it "highly improbable that Congress absentmindedly forgot to mention an intended private action." Id. at 20 (citation and quotation marks omitted). Further, the Court explained, Congress had expressly authorized claims for damages in the securities laws enacted shortly before the IAA, which "strongly suggest[ed] that Congress was simply unwilling to impose any potential monetary liability on a private suitor." Id. at 21. Accordingly, the IAA provides "a limited private remedy [in §215] . . . to void an investment advisers contract," but it "confers no other private causes of action, legal or equitable." Id. at 24.

Here, NexPoint alleges that the Advisers engaged in self-dealing conduct while

7

managing the CLO's collateral, and that this "performance" of the PMA and the Indenture "involve[d] the violation of" the IAA -- specifically, §206. App'x at 135, ¶156. NexPoint does not contend that any provision of the PMA or the Indenture <u>requires</u> anything unlawful. To the contrary, it alleges that most of the Advisers' conduct <u>breached</u> their obligations under the PMA or the Indenture.[4] NexPoint argues that it is nonetheless entitled to rescission under §215(b) because the alleged misconduct occurred in the course of the Advisers' performance of their general portfolio-management activities. The question before us is whether this claim is within the scope of the cause of action Congress authorized when it "declared in §215 that certain contracts are void." <u>TAMA</u>, 444 U.S. at 19. Like the District Court, we conclude that it is not.

We begin with the text of the statute, "exhausting 'all the textual and structural clues' bearing on its meaning and construing each word 'in its context and in light of the terms surrounding it.'" <u>United States v. Bedi</u>, 15 F.4th 222, 226 (2d Cir. 2021) (footnotes omitted). Section 215 is entitled "Validity of contracts." 15 U.S.C. §80b-15. Subsection 215(b) -- entitled "Rights affected by invalidity" -- discusses two categories of invalid contracts: first, contracts "made in violation of any provision of" the IAA; and second, contracts "the performance of which involves the violation of, or the continuance of any relationship or practice in violation of" the IAA. <u>Id.</u> §80b-15(b). The statute then provides that such invalid contracts "shall be void . . . as regards the rights of any person who, in violation of" the IAA "shall have made or engaged in the performance of any such

---

[4] NexPoint also alleges "a scheme to circumvent" certain contractual requirements. App'x at 125, ¶96.

8

contract." Id.

In NexPoint's view, because Congress used the term "involves" rather than "requires," Congress did not intend to limit rescission to contracts that effectively require a violation of the IAA. For support, NexPoint cites relatively broad definitions of the word "involve" -- such as "to relate closely"[5] -- but these definitions do not appear to have been contemporary to the enactment of the IAA. See Perrin v. United States, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). Rather, the most useful contemporary definition of the term was "to contain by implication; to require, as implied elements, antecedent conditions, effect, etc." Involve, Webster's New International Dictionary of the English Language (2d ed. 1934) (emphasis added).

Of course, the word "involves" "does not appear in isolation" in the statute. L.S. v. Webloyalty.com, Inc., 954 F.3d 110, 115 (2d Cir. 2020); see also Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 415 (2005) ("Statutory language has meaning only in context[.]"). It is part of the phrase "every contract . . . the performance of which involves the violation of" the IAA. 15 U.S.C. §80b-15(b) (emphasis added). We must give effect to each word in that sentence. See Duncan v. Walker, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute." (citation and quotation marks omitted)). At the time

---

[5] See Boim v. Quranic Literacy Inst., 291 F.3d 1000, 1009–10 (7th Cir. 2002) (citing Involve, Webster's Ninth New Collegiate Dictionary (1983)).

9

of the statute's enactment, the term "performance" meant "[t]he fulfillment or accomplishment of a promise, contract, or other obligation according to its terms." Performance, Black's Law Dictionary (3d ed. 1933) (emphasis added); see also Perform, Webster's New International Dictionary of the English Language (2d ed. 1934) ("To carry out or into full execution; esp. some action ordered or prompted by another or previously promised; to put into complete effect; to fulfill[.]"). Giving effect to each word in this section, it provides, simply, that rescission is available only where the performance of the contract -- that is, fulfilling the contract according to its terms -- involves the violation of the IAA.

The surrounding structure of the statute confirms this reading. Like §215(b), §215(a) speaks to contractual terms; it prohibits waivers of compliance with the IAA. See 15 U.S.C. §80b-15(a) ("Any condition, stipulation, or provision binding any person to waive compliance with any provision of this subchapter or with any rule, regulation, or order thereunder shall be void.").[6] Read as a whole, §215 -- again, entitled "Validity of contracts" -- is a statute centered on contracts, not the conduct of parties to contracts. This stands in stark contrast to §206, the substantive provision NexPoint alleges the Advisers violated, which "establishes 'federal fiduciary standards' to govern the conduct of investment advisers." TAMA, 444 U.S. at 17 (emphasis added) (citation omitted).

---

[6] NexPoint's argument that the District Court's interpretation of §215(b) renders §215(a) surplusage is without merit. Section 215(a) is plainly drafted as an anti-waiver provision that prohibits parties from contracting around compliance with the IAA. It does not "address[] the circumstance in which a provision facially violates the IAA." Appellant's Br. at 30.

10

As such, permitting claims under §215(b) based solely on conduct not required by the contract would create what Judge Sullivan described as "a backdoor to the private right of action that the Supreme Court refused to find under §206." Omega Overseas Partners, Ltd. v. Griffith, No. 13CV04202(RJS), 2014 WL 3907082, at *2 (S.D.N.Y. Aug. 7, 2014). The Supreme Court concluded in TAMA that Congress did not intend §206 to be enforced through private litigation. This holding would have little practical significance if plaintiffs could sue under §215 for any violation of §206, with the only difference being in the nature of the remedy (rescission and restitution under §215 as opposed to damages).

NexPoint extracts a single phrase from our decision in Kahn v. Kohlberg, Kravis, Roberts & Co., 970 F.2d 1030 (2d Cir. 1992), to argue that it may base its §215 claim on the Advisers' alleged §206 violations. Kahn does not support NexPoint's position. There, in the context of analyzing the statute of limitations for a §215 claim, this Court noted: "A §215 claim may be premised upon a violation of any provision of the IAA." Id. at 1036. This simple declaration is drawn directly from the statutory language, which allows claims to be predicated on a "violation of any provision of" the IAA. 15 U.S.C. §80b-15(b). Kahn merely acknowledges that if fulfilling a contractual obligation according to the contract's terms involves violating the IAA (whether §206 or some other provision), a §215 claim is available. Kahn did not authorize a freestanding §206 claim untethered to the making or performance of a contract, nor could it have done so, in light of TAMA. In fact, both Kahn and TAMA describe §215(b) as providing for rescission of contracts whose performance "would violate" the IAA. See Kahn, 970 F.2d at 1033 ("Section 215

11

of the IAA provides that contracts whose formation or performance would violate the act are void."); TAMA, 444 U.S. at 16–17 (Section 215 "provides that contracts whose formation or performance would violate the Act" are void.). One cannot determine whether a contract's performance "would" violate the IAA without looking at the contract's terms.

Our contract-centric reading of §215 is in harmony with the way this Court and others have interpreted similar provisions in other statutes. For instance, in Oxford University Bank v. Lansuppe Feeder, LLC, 933 F.3d 99 (2d Cir. 2019), this Court considered whether a nearly identical "Validity of contracts" provision in the IAA's companion statute, the Investment Company Act of 1940 ("ICA"), 15 U.S.C. §80a-46, provides a private right of action. Section 47(b) of the ICA reads, in relevant part: "A contract that is made, or whose performance involves, a violation of this subchapter, or of any rule, regulation, or order thereunder, is unenforceable by either party[.]" Id. §80a-46(b)(1). In recognizing a cause of action for rescission under §47(b), this Court repeatedly described §47(b) as applying to illegal contracts, rather than to legal contracts performed in an illegal manner. See Oxford, 933 F.3d at 105 ("[A] party to an illegal contract may seek relief in court on the basis of the illegality of the contract." (emphasis added)); id. at 106 ("[C]ontracts that violate the ICA are unenforceable by parties to the contract."); id. at 109 ("ICA §47(b)(2) creates an implied private right of action for a party to a contract that violates the ICA to seek rescission of that violative contract."). In concluding that the intervenors failed to state a claim under §47(b), the Oxford Court noted that they had "not identified any provision of the [contract] whose performance

12

would violate the ICA." Id. NexPoint dismisses this language as dicta, but we think it reflects a commonsense interpretation of statutory language that is as applicable to §215(b) as it is to the ICA.

Most district courts in this Circuit have similarly interpreted §29(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78cc(b),[7] "which tracks §215(b) nearly word for word," to authorize rescission only when performance of the contract itself is unlawful, not merely when the conduct of a party to the contract is unlawful. Omega, 2014 WL 3907082, at *4 (collecting cases); see also Zerman v. Jacobs, 510 F. Supp. 132, 135 (S.D.N.Y.), aff'd, 672 F.2d 901 (2d Cir. 1981) ("[U]nder §29(b) of the Exchange Act, only unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts." (footnote omitted)). These courts generally adopt Judge Friendly's reasoning:

> Although the majority does not reach the issue, . . . §29(b) does not provide a pat legislative formula for solving every case in which a contract and a violation concur. Rather it was a legislative direction to apply common-law principles of illegal bargain, enacted at a time when it seemed much more likely than it might now that courts would fail to do this without explicit legislative instruction.

Pearlstein v. Scudder & German, 429 F.2d 1136, 1149 (2d Cir. 1970) (Friendly, J.,

---

[7] Section 29(b) reads, in relevant part:

> Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract . . . heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void[.]

15 U.S.C. §78cc(b).

13

dissenting). The Fourth Circuit has expressly endorsed this position. See Occidental Life Ins. Co. v. Pat Ryan & Assocs., Inc., 496 F.2d 1255, 1266 (4th Cir. 1974) ("Section 29(b) merely makes explicit that which is implicit, i.e., the recognition of the doctrine of illegal bargains in the application of the securities laws."). The Third Circuit has taken a similar approach. See Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 206 (3d Cir. 2006) ("If an agreement cannot be performed without violating the securities laws, that agreement is subject to rescission under Section 29(b).").

  The First and Fifth Circuits have framed the §29(b) question slightly differently, but our approach is not inconsistent with theirs. See EdgePoint Cap. Holdings, LLC v. Apothecare Pharmacy, LLC, 6 F.4th 50 (1st Cir. 2021); Reg'l Props., Inc. v. Fin. & Real Est. Consulting Co., 678 F.2d 552 (5th Cir. 1982). Those courts have held that there is no requirement under §29(b) that the contract's "performance 'necessarily' required a violation of the Exchange Act." EdgePoint, 6 F.4th at 59; see also Reg'l Props., 678 F.2d at 561 ("That these contracts, under different circumstances, could have been performed without violating the Act is immaterial."). We hold that §215(b) likewise does not impose a requirement of facial or ex ante illegality.

  The decisions in EdgePoint and Regional Properties involved similar factual situations. In each, a party was contractually required to solicit securities sales on behalf of others -- conduct that is completely lawful when performed by a broker registered with the SEC. See 15 U.S.C. §78o(a)(1) ("It shall be unlawful for any broker or dealer . . . to induce or attempt to induce the purchase or sale of[] any security . . . unless such broker or dealer is registered in accordance with [the Exchange Act]."). Accordingly, the

14

contracts were not <u>facially</u> illegal. However, the brokers in those cases were <u>not</u> registered with the SEC, and therefore doing what the contracts demanded of them -- "market[ing] . . . limited partnership interests"[8] and "attempt[ing] to sell 'all or part of the Company'"[9] -- required a violation of the Exchange Act. In other words, the terms of those contracts required a party to engage in conduct that was unlawful in light of the circumstances presented; the source of that unlawfulness (the brokers' failure to register with the SEC) was simply extrinsic to the contracts. See <u>Omega</u>, 2014 WL 3907082, at *4 n.5 ("[T]he circumstances surrounding a contract's performance can make the performance required illegal even if the contract's terms are themselves innocuous.").

Finally, we reject NexPoint's argument that the District Court (and <u>Omega</u>, on which it largely relied) misapprehended the common law doctrine of illegal bargains at the time of the IAA's enactment. Of the three cases[10] NexPoint cites in support of its argument, only one predates the IAA, and none discusses voidability or rescission. In our view, <u>TAMA</u> and opinions interpreting the IAA's companion statutes make it unnecessary to examine pre-IAA common law authorities in any detail.

### III. CONCLUSION

In sum, the text and structure of the IAA, interpreted with the benefit of <u>TAMA</u>, <u>Oxford</u>, and other precedent, make clear that a contract's performance "involves" the

---

[8] <u>Reg'l Props.</u>, 678 F.2d at 555.

[9] <u>EdgePoint</u>, 6 F.4th at 59.

[10] <u>McConnell v. Commonwealth Pictures Corp.</u>, 166 N.E.2d 494 (N.Y. 1960); <u>Tocci v. Lembo</u>, 92 N.E.2d 254 (Ma. 1950); <u>Old Dominion Transp. Co. v. Hamilton</u>, 131 S.E. 850 (Va. 1926).

15

violation of the IAA only if performing a contractual duty requires a party to engage in conduct prohibited by the IAA. As discussed, a party seeking rescission need not show that it is <u>impossible</u> to perform under the contract legally. This is not a hypothetical inquiry. Rather, whether a contract requires a party to engage in prohibited conduct should be assessed under the circumstances <u>as they actually exist</u> when performance is due. It is entirely possible, for example, that post-formation factual or legal developments could make conduct required under a contract unlawful.

NexPoint does not seek rescission of any contract requiring a party to engage in conduct prohibited by the IAA. Accordingly, for the reasons stated above, we **AFFIRM** the judgment of the District Court.[11]

---

[11] In light of this holding, we do not reach the parties' arguments regarding privity, contractual standing, and the types of contracts to which §215 applies.